**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**
**www.flnb.uscourts.gov**

In re:                                             CASE NO.: 24-10056-KKS
                                                   CASE NO.: 24-10057-KKS
**CELEBRATION POINTE HOLDINGS, LLC**                CASE NO.: 24-10058-KKS
**CELEBRATION POINTE HOLDINGS II, LLC**
**SHD-CELEBRATION POINTE, LLC**                     CHAPTER 11

        **Debtors.**                               *Joint Administration under*
                                                   *Case No. 24-10056-KKS*

_____/


**JOINT AMENDED PLAN OF REORGANIZATION**
**FOR CELEBRATION POINTE HOLDINGS, LLC, et al.**


COUNSEL FOR THE DEBTORS

R. SCOTT SHUKER, ESQ.
MARIANE L. DORRIS, ESQ.
LAUREN L. STRICKER, ESQ.
SHUKER & DORRIS, P.A.
121 S. ORANGE AVENUE, SUITE 1120
ORLANDO, FLORIDA 32801


September 6, 2024

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**
**www.flnb.uscourts.gov**

In re:

| | |
|---|---|
| CELEBRATION POINTE HOLDINGS, LLC | Case No. 24-10056-KKS |
| CELEBRATION POINTE HOLDINGS II, LLC | Case No. 24-10057-KKS |
| SHD-CELEBRATION POINTE, LLC | Case No. 24-10058-KKS |
| | Chapter 11 |
| | *Jointly Administered under* |
| Debtors. | Case No. 24-10056-KKS |

_____ /

**JOINT AMENDED PLAN OF REORGANIZATION FOR**
**CELEBRATION POINTE HOLDINGS, LLC, et al.**

**Celebration Pointe Holdings, LLC** ("CPH"), **Celebration Pointe Holdings II, LLC** ("CPH2"), and **SHD-Celebration Pointe, LLC** ("SHD") (hereinafter referred to collectively as the "Debtors" or "Reorganized Debtors"– where appropriate), by and through their undersigned counsel, hereby propose the following amended plan of reorganization pursuant to chapter 11 of Title 11 of the United States Code.

## I.   ARTICLE I - INTRODUCTION

All Claims held against the Debtors shall be classified and treated pursuant to the terms of the Plan. The Plan contains thirty two (32) separate classes of Claims and Interests. The Effective Date is defined more specifically in the Plan, but generally means the fifteenth (15th) day after entry of the Confirmation Order, provided said order is not stayed as of the fifteenth (15th) day.

All Claims held against the Debtors shall be classified and treated pursuant to the terms of the Plan. The Plan contains thirty two (32) separate classes of Claims and Interests. The Plan provides for payment of Allowed Secured Claims in Classes 1 through 29, with the exception of

2

Class 17, in full, over time and under the terms as outlined in Article V below. The Allowed Class 17 Claim shall receive a discounted payment on the Effective Date in full satisfaction of its Allowed Claim. The Allowed Unsecured Claims of Insiders in Class 31 shall not receive periodic payments, but the Allowed Claims will accrue interest at the Prime Rate and will be due at maturity in 10 years from the Effective Date. Allowed General Unsecured Claims[1] in Class 30 shall be paid over time from a *pro rata* distribution of the *Cash Flow* Note over a period of 60 months. In addition, the Plan further provides that the respective Holders of Allowed Administrative Claims and Holders of Allowed Priority Claims will be paid in full on the Effective Date. Holders of Allowed Priority Tax Claims will be paid in full by quarterly payments made over five (5) years. The Allowed Interests in Class 32 will be held as set forth in Article V herein.

The Plan is premised on a Plan Support Agreement ("PSA") between the primary interest holders of Debtors, Mr. Svein Dyrkolbotn ("Dyrkolbotn") and Ms. Patti Shively ("Shively"). Under the PSA, Dyrkolbotn and Shively are agreeing to defer payment on Claims, and, most importantly, make member loans or contributions to cover operating deficits such that Reorganized Debtors can make all payments required on the Effective Date and Plan Payments due over time as set forth below (the "PSA Contributions"). Although Debtors and the SPEs generate cash for operations and debt service, there is currently insufficient cash flow to meet the payments required under the Plan and the PSA Contributions are integral to the success of the Plan and the Reorganized Debtors. Without the PSA Contributions, the Debtors would be forced to liquidate. In return for the PSA Contributions the Plan provides for Conditional Injunctions protecting the

---

[1] "Allowed General Unsecured Claim" is defined in the Plan, but for clarity here, it means an Allowed General Unsecured Claim (as defined in the Plan) but which excludes Claims of Insiders and Affiliates (defined below and in the Plan).

parties to the PSA and each SPE so long as respective Plan Payments are current. Debtors believe the Plan provides the best means currently available for their emergence from chapter 11 and the best recoveries possible for Holders of Claims and Interests, and thus strongly recommend Creditors vote to accept the Plan.

II.    **ARTICLE II – DEFINITIONS**

For the purpose of the Plan, the following terms will have the meanings set forth below:

1.    **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in sections 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtors' Estate, including management fees, or commissions for service, compensation for legal and other services and reimbursement of expenses awarded under sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Estate under chapter 123 of Title 28, United States Code.

2.    **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.    **Affiliates** means collectively, including but not limited to, SHD Real Estate LLC, SHD Vue Investments LLC, Viking Student Housing Partners LLC, GNV RE Fund 3 LLC, SDPS Real Estate Investments II LLC, CP City Place Partners LLC, Viking Property Management LLC, Viking Companies LLC, Viking Construction Company of Florida LLC, SHD Management LLC, SDPS Real Estate Investments  LLC, SDPS Real Estate Investments IV LLC, Svein Dyrkolbotn and/or related entities, Patricia A. Shively and Patricia Ann Shively Trust.

4.    **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4

5.    **Allowed Amount** shall mean the amount of an Allowed Claim.

6.    **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code section 501 of the Bankruptcy Code and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Bankruptcy Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code section 1111(a) of the Bankruptcy Code by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtors with the Bankruptcy Court pursuant to section 521(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtors within any applicable period of limitation fixed by the Plan, by Bankruptcy Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Bankruptcy Rule 3018(a). Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

7.    **Allowed General Unsecured Claims** means a General Unsecured Claim to the extent such General Unsecured Claim is or becomes an Allowed Claim, but which excludes Claims by the Affiliates.

8.    **Allowed General Secured Claims** means a General Secured Claim to the extent such General Secured Claim is or becomes an Allowed Claim.

9.    **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or any Final Order of the Bankruptcy Court.

10.    **Allowed Priority Tax Claim** means a Priority Claim pursuant to section 507(a)(8) of the Bankruptcy Code, to the extent such Priority Claim is or becomes an Allowed Claim.

11.    **Allowed Secured Claim** means a Secured Claim to the extent provided under section 506 of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided herein.

12.    **Assets** means each and every item of Property of the Debtors' Estate and every interest of the Debtors as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtors, and includes without limitation:  (a) all real and personal property and Cash; (b) all rights, privileges, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts

owed to the Debtors, contract rights, or other rights, including without limitation rights to payment, contribution or distribution, whether due prior or subsequent to the Petition Date; and (d) all Executory Contracts, and other contracts, agreements, licenses, and leases.

13.     **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

14.     **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

15.     **Bankruptcy Cases** means the Debtors' bankruptcy cases that are pending before the United States Bankruptcy Court for the Northern District of Florida, Gainesville Division, pursuant to chapter 11 of the Bankruptcy Code (Case Nos. 24-bk-10056-KKS, Case Nos. 24-bk-10057-KKS, and Case Nos. 24-bk-10058-KKS).

16.     **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., including any amendments thereto, in effect during the Bankruptcy Case.

17.     **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Northern District of Florida, Gainesville Division, in which the Bankruptcy Cases are pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

18.     **Bankruptcy Rules** means the Federal Bankruptcy Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case, and as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

19.    **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

20.    **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

21.    **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

22.    **Cash Flow Note** means the note issued to Holders of Allowed Claims in Class 30.

23.    **Claim** means "claim" as defined in section 101(5) of the Bankruptcy Code.

24.    **Class or Classes** means any Class into which Claims or Interests are classified pursuant to the Plan.

25.    **Class 1 Claim, Class 2 Claim, Class 3 Claim,** *etc*., shall mean the specific Class into which Claims or Interests are classified pursuant to Article III of the Plan.

26.    **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

27.    **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

28.    **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

29.    **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

30.    **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

31. **Creditor** means "creditor" as defined in section 101(1) of the Bankruptcy Code.

32. **Debtors** means Celebration Pointe Holdings, LLC, Celebration Pointe Holdings II, LLC, and SHD-Celebration Pointe, LLC.

33. **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

34. **Disbursing Agent** means the Reorganized Debtors.

35. **Disclosure Statement** means the Disclosure Statement filed by the Debtors describing the Plan and approved for distribution by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, together with any amendments or modifications thereto.

36. **Disputed Claim** means every Claim, or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

37. **Distribution** means a distribution to the Holders of Allowed Claims.

38. **Effective Date** means the date fifteen (15) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided*, *however*, that the Effective Date shall not occur until the Debtors file the notice called for under the Plan with the Bankruptcy Court, and such notice shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the fifteenth (15th) day after the entry of the Confirmation Order provided that the notice called for under the Plan has been filed by the Debtors.

39. **Equity Interests** or **Interests** means any and all issued or authorized membership interests, common stock, stock options and warrants in the Debtors.

40.     **Estate** means the bankruptcy estates of the Debtors created under section 541 of the Bankruptcy Code.

41.     **Executory Contract** means every unexpired lease to which the Debtors are a party, and every other contract that is subject to being assumed or rejected by the Debtors under section 365 of the Bankruptcy Code, pursuant to the Plan or pursuant to separate motion.

42.     **Final Decree** means the Bankruptcy Court's final decree pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Case after the Estate has been fully administered.

43.     **Final Distribution** means the final Distribution to the Holders of Allowed Claims after all Causes of Action have been liquidated and converted to Cash or abandoned.

44.     **Final Distribution Date** shall mean the date as soon as practicable after the last to occur of: (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Causes of Action have been liquidated and converted to Cash or abandoned.

45.     **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

46.     **General Unsecured Claims** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim, but which excludes Claims by the Affiliates.

47.     **General Secured Claims** means a Claim secured by a possessory Lien or setoff right against a Debtors' Asset(s), creditor's respective possessory Lien or setoff right in the Debtors' Assets, including without limitation, security deposits, contractual rebates/refunds, or similar, or any part thereof, to the extent of the value of any interest in such Assets securing such

Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with section 553 of the Bankruptcy Code, in either case as determined pursuant to section 506(a) of the Bankruptcy Code.

48.    **Holder** means the holder of a Claim or Interest, as applicable.

49.    **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of section 1124 of the Bankruptcy Code.

50.    **Insider** means "insider" as defined in section 101(31) of the Bankruptcy Code.

51.    **Interest** means an issued or authorized outstanding membership interest, a warrant or warrants for the issuance of such membership interests, or any other equity instruments in the Debtors.

52.    **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of like kind affecting any asset or property of the Debtors, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtors or any other party with standing to bring such a challenge.

53.    **Liquidation Analysis** means Debtors' chapter 7 liquidation analysis which will be filed and served at least ten (10) days prior to the hearing to approve the Disclosure Statement.

54.    **Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

55.    **Person** means "person" as defined in section 101(41) of the Bankruptcy Code.

56.    **Personal Property** means all tangible personal property of the Debtors.

57.    **Petition Date** means March 14, 2024, the date on which the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

58.    **Plan** means this Amended Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

59.    **Plan Payments** means payments made by the Debtors pursuant to the terms of the Plan.

60.    **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

61.    **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under section 507 of the Bankruptcy Code.

62.    **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

63.    **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of section 507 of the Bankruptcy Code.

64.    ***Pro Rata*** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

65.    **Professional** means: (i) any professional retained by the Debtors in the Bankruptcy Cases pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to section 1129(a)(4) of the Bankruptcy Code.

66. **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to sections 328, 330, 331, or 503(b) of the Bankruptcy Code of Professionals (i) employed pursuant to an order of the Bankruptcy Court under sections 327 or 328 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code or by other Final Order.

67. **Projections** means the Debtors' financial projections which will be filed and served at least ten (10) days prior to the hearing to approve the Disclosure Statement.

68. **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

69. **Property of the Estate** means "property of the estate" as defined in section 541 of the Bankruptcy Code.

70. **Property Tax Administrative Claim** means every Claim of any state or local governmental unit that is an Administrative Claim for unpaid property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date. Allowed Property Tax Administrative Claims will be classified and paid under the Plan as the Plan provides for Administrative Claims.

71. **PSA Contributions** means the funds contributed on the Effective Date and over time pursuant to the PSA.

72. **Reorganized Debtors** refers to the Debtors upon the Effective Date of the Plan.

73. **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtors with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code.

74.    **Secured Claim** means a Claim secured by a Lien against a Debtors' Asset(s), or any part thereof, to the extent of the value of any interest in such Assets securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with section 553 of the Bankruptcy Code, in either case as determined pursuant to section 506(a) of the Bankruptcy Code.

75.    **Secured Tax Claim** means a Claim secured by a statutory lien on Assets for unpaid taxes on such Assets.

76.    **Security Interest** means "security interest" as defined in section 101(51) of the Bankruptcy Code.

77.    **SPE** refers to the special purpose entities owned in whole or in part by Debtors.

78.    **Unclaimed Property** shall mean any cash, or any other property of the Debtors unclaimed for a period of six (6) months after any Distribution or, in the event that the Distribution was made on the Final Distribution Date, six (6) months after the Final Distribution Date.

79.    **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of section 1124 of the Bankruptcy Code.

80.    **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

81.    **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. seq*. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Northern District of Florida, Tallahassee, Florida.

### III.    ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS

####     A.    Summary of Classes in the Plan

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claim of U.S. Bank Trust Company, N.A. (CPH). | Impaired | Entitled to vote |
| 2 | Secured Claim of U.S. Bank Trust Company, N.A. (CPH2). | Impaired | Entitled to vote |
| 3 | Secured Claim of Mainstreet Community Bank (Loan # 4350782) | Impaired | Entitled to vote |
| 4 | Secured Claim of Mainstreet Community Bank (Loan # 4385527) | Impaired | Entitled to vote |
| 5 | Secured Claim of Mainstreet Community Bank (Loan # 4376560) | Impaired | Entitled to vote |
| 6 | Secured Claim of Vystar Credit Union (CPH Claim No. 22) | Impaired | Entitled to vote |
| 7 | Secured Claim of Vystar Credit Union (CPH Claim No. 6 and CPH2 Claim No. 5) | Impaired | Entitled to vote |
| 8 | Secured Claim of Vystar Credit Union (CPH Claim No. 7) | Impaired | Entitled to vote |
| 9 | Secured Claim of Vystar Credit Union (CPH Claim No. 8 and SHD Claim No.3) | Impaired | Entitled to vote |
| 10 | Secured Claim of Vystar Credit Union (CPH2 Claim No. 6) | Impaired | Entitled to vote |
| 11 | Secured Claim of Synartis Income Fund, LLC & Catalyst Synartis CP Master 4A-2023, LLC (CPH Claim No. 33 and CPH2 Claim 12) | Impaired | Entitled to vote |
| 12 | Secured Claim of Synartis Capital Management LLC (CPH Claim No. 30) | Impaired | Entitled to vote |
| 13 | Secured Claim of Synartis Capital Management LLC (CPH Claim No. 32) | Impaired | Entitled to vote |
| 14 | Secured Claim of Catalyst Income Fund 2022-1A, LLC (CPH Claim No. 26) | Impaired | Entitled to vote |

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 15 | Secured Claim of Catalyst Synartis MF B Series Condo 3A-2023, LLC (CPH Claim No. 27) | Impaired | Entitled to vote |
| 16 | Secured Claim of Catalyst Synartis MF B Series MF 2A-2022, LLC (CPH Claim No. 28) | Impaired | Entitled to vote |
| 17 | Secured Claim of ARCISCAP-Celebration Pointe Investment (B.V.I.) Limited (CPH Claim 15, 20, 21 and 23) | Impaired | Entitled to vote |
| 18 | Secured Claim of Iceberg Real Estate Investments, LLC (CPH Claim 34, CPH2 Claim 13, and SHD Claim 6) | Impaired | Entitled to vote |
| 19 | Secured Claim of James B. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust JBE dated December 28, 2009 and Neil R. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust NRE II dated December 28, 2009 (SHD Claim 1 and 2) | Impaired | Entitled to vote |
| 20 | Secured Claim of Jon Guven and J&R Investments, LLC | Impaired | Entitled to vote |
| 21 | Secured Claim of Kenneth R. McGurn & Linda C. McGurn | Impaired | Entitled to vote |
| 22 | Secured Claim of Gainesville PropCo LLC (CPH2 Claim 8) | Impaired | Entitled to vote |
| 23 | Secured Claim of Gainesville PropCo LLC (CPH Claim 25 and CPH2 Claim 9) | Impaired | Entitled to vote |
| 24 | Secured Claim of FDOT's State Infrastructure Bank (CPH Claim 46 and 47) | Impaired | Entitled to vote |
| 25 | Secured Claim of Florida Credit Union | Impaired | Entitled to vote |
| 26 | Secured Claim of Barwick Banking Company | Impaired | Entitled to vote |
| 27 | Secured Claim of Johnson Controls Security Solution | Impaired | Entitled to vote |
| 28 | Secured Claim of Arcis Real Estate Secured Fund II, L.P. (CPH Claim 44) | Impaired | Entitled to vote |

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 29 | Secured Claim of State Board of Administration of Florida | Impaired | Entitled to vote |
| 30 | General Unsecured Claims | Impaired | Entitled to vote |
| 31 | Insider and Affiliate Unsecured Claims | Impaired | Entitled to vote |
| 32 | Equity Interests | Impaired | Entitled to vote |

All Claims treated under Article V of the Plan are divided into the Classes set forth immediately below, which shall be mutually exclusive.

**B.      Secured Claims (including guaranty Claims secured directly by SPE assets).**

1.      Class 1 – Secured Claim of U.S. Bank Trust Company, N.A. (CPH Claim 24)

Class 1 consists of the Allowed Secured Claim of U.S. Bank Trust Company, N.A. ("U.S. Bank") based on various prepetition loan and bond documents with the forming the basis of several bond series issued by the CDD. The Claim as to Class 1 was filed in the amount of $8,357,742.83. The Class 1 Claim is secured by substantially all the real property owned by Debtors and each SPE.  Class 1 is Impaired.

2.      Class 2 – Secured Claim of U.S. Bank Trust Company, N.A. (CPH2 Claim 7)

Class 2 consists of the Allowed Secured Claim of U.S. Bank based on various prepetition loan and bond documents with the forming the basis of several bond series issued by the CDD. The Claim as to Class 2 was filed in the amount of $4,318,914.46. The Class 2 Claim is secured by substantially all the real property owned by Debtors and each SPE.  Class 2 is Impaired.

3.      Class 3 – Secured Claim of Mainstreet Community Bank (Loan #4350782/CPH Claim 2 and CPH2 Claim 3)

Class 3 consists of the Allowed Secured Claim of Mainstreet Community Bank ("Mainstreet") based on various loan documents including a note, mortgage and guaranties all

related to the SPE which owns the real property leased to Bass Pro Shops. The Claims as to Class 3 were filed in the amount of $6,278,919.21 and are secured by a mortgage on the SPE which owns the real property leased to Bass Pro Shops.  Class 3 is Impaired.

4.      Class 4 – Secured Claim of Mainstreet Community Bank (Loan #4385527/CPH Claim 17 and CPH Claim 2)

Class 4 consists of the Allowed Secured Claim of Mainstreet based on various loan documents. The Class 4 Claim as to Class 4 was filed in the amount of $6,904,867.19.  Class 4 is Impaired.

5.      Class 5 – Secured Claim of Mainstreet Community Bank (Loan #4376560/CPH Claim 19)

Class 5 consists of the Allowed Secured Claim of Mainstreet based on various loan documents including a note and mortgage which is secured by the SPE which owns Spurrier's Gridiron Grille. The Claim related to Class 5 was filed in the amount of $530,090.17.  Class 5 is Impaired.

6.      Class 6 – Secured Claim of Vystar Credit Union (CPH Claim 22)

Class 6 consists of the Allowed Secured Claim of Vystar Credit Union ("Vystar") based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as the 5001 Office Building. The Claim related to Class 6 was filed in the amount of $14,663,991.90.  Class 6 is Impaired.

7.      Class 7 – Secured Claim of Vystar Credit Union (CPH Claim 6 and CPH2 Claim 5)

Class 7 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property leased to Regal Cinemas. The Claim related to Class 7 was filed in the amount of $8,911,077.32. Class 7 is Impaired.

       8.       <u>Class 8 – Secured Claim of Vystar Credit Union (CPH Claim 7)</u>

Class 8 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property leased to Millers Ale House. The Claim related to Class 8 was filed in the amount of $3,336,613.78. Class 8 is Impaired.

       9.       <u>Class 9 – Secured Claim of Vystar Credit Union (CPH Claim 8 and SHD Claim 3)</u>

Class 9 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as City Walk Phase 1. The Claim related to Class 9 was filed in the amount of $16,138,837.46.  Class 9 is Impaired.

      10.     <u>Class 10 – Secured Claim of Vystar Credit Union (CPH2 Claim 6)</u>

Class 10 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as the Shops at Celebration. The Claim related to Class 10 was filed in the amount of $5,520,563.40.  Class 10 is Impaired.

      11.     <u>Class 11 – Secured Claim of Synartis Income Fund, LLC & Catalyst Synartis CP Master 4A-2023, LLC (CPH Claim 33 and CPH2 Claim 15)</u>

Class 11 consists of the Allowed Secured Claim of Synartis Income Fund, LLC & Catalyst Synartis CP Master 4A-2023, LLC ("SIF") based on various loan documents. The Claim related to Class 11 was filed in the amount of $12,100,000.00.  Class 11 is Impaired.

12.    Class 12 – Secured Claim of Synartis Capital Management LLC (CPH Claim 30)

Class 12 consists of the Allowed Secured Claim of Synartis Capital Management LLC ("Synartis Capital") based on various loan documents. The Claim related to Class 12 was filed in the amount of $2,500,000.  Class 12 is Impaired.

13.    Class 13 – Secured Claim of Synartis Capital Management LLC (CPH Claim 32)

Class 13 consists of the Allowed Secured Claim of Synartis Capital based on various loan documents. The Claim related to Class 13 was filed in the amount of $6,890, 778. Class 13 is Impaired.

14.    Class 14 – Secured Claim of Capital Income Fund 2022-1A, LLC (CPH Claim 26)

Class 14 consists of the Allowed Secured Claim of Capital Income Fund 2022-1A, LLC ("Capital Income") based on various loan documents. The Claim related to Class 14 was filed in the amount of $2,380,000.  Class 14 is Impaired.

15.    Class 15 – Secured Claim of Catalyst Synartis MF B Series Condo 3A-2023, LLC (CPH Claim 27)

Class 15 consists of the Allowed Secured Claim of Catalyst Synartis MF B Series Condo 3A-2023, LLC ("Catalyst Synartis Condo") based on various loan documents. The Claim related to Class 15 was filed in the amount of $4,935,000.  Class 15 is Impaired.

16.    Class 16 – Secured Claim of Catalyst Synartis MF B Series MF 2A-2022, LLC (CPH Claim 28)

Class 16 consists of the Allowed Secured Claim of Catalyst Synartis MF B Series MF 2A-2022, LLC ("Catalyst Synartis B Series") based on various loan documents. The Claim related to Class 16 was filed in the amount of $5,300,000.  Class 16 is Impaired.

17.    Class 17 – Secured Claim of ARCISCAP Celebration Pointe Investment (B.V.I.) Limited (CPH Claim 15, 20, 21 and 23)

Class 17 consists of the Allowed Secured Claim of ARCISCAP Celebration Pointe Investment (B.V.I.) Limited ("ARCISCAP") based on various loan documents.  The Claim related to Class 17 were filed in the amount of $44,054,216.55.  Class 17 is Impaired.

18.    Class 18 – Secured Claim of Iceberg Real Estate Investments, LLC (CPH Claim 34, CPH2 Claim 13, and SHD Claim 6)

Class 18 consists of the Allowed Secured Claim of Iceberg Real Estate Investments, LLC ("Iceberg") based on alleged obligations owed by Debtors arising from certain SPE investments. The Claims related to Class 18 were filed in the amount of $1,050,000.  Class 18 is Impaired.

19.    Class 19 – Secured Claim of James B. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trustee JBE dated December 28, 2009, and Neil R. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust NRE II dated December 28, 2009 (SHD Claim 1 and SHD Claim 2)

Class 19 consists of the Allowed Secured Claims of James B. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust JBE dated December 28, 2009, and Neil R. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust NRE II dated December 28, 2009 (collectively, the "Euliano Trusts") based on promissory notes and pledges executed by SHD. The Claims related to Class 19 were filed in the total amount of $1,084,420.08.  Class 19 is Impaired

20.    Class 20 – Secured Claim of Jon Guven and J&R Investments, LLC (CPH Claim 13)

Class 20 consists of the Allowed Secured Claims of Jon Guven and J&R Investments, LLC (collectively, "J&R") based on various loan documents including a note and pledge agreements. The Claim related to Class 20 was filed in the amount of $6,500,000.  Class 20 is Impaired.

21.     <u>Class 21 – Secured Claim of Kenneth R. McGurn and Linda C. McGurn</u>

Class 21 consists of the Allowed Secured Claims of Kenneth R. McGurn and Linda C. McGurn (collectively, "McGurn") based on various loan documents and pledges. The Class 21 Claim is in the amount of $8,400,000.  Class 21 is Impaired.

22.     <u>Class 22 – Secured Claim of Gainesville PropCo LLC (CPH2 Claim 8)</u>

Class 22 consists of the Allowed Secured Claim of Gainesville PropCo LLC ("Gainesville PropCo") based on a prepetition escrow and purchase agreement. The Claim related to Class 22 were filed in the amount of $400,224.13.  Class 22 is Impaired.

23.     <u>Class 23 – Secured Claim of Gainesville PropCo LLC (CPH Claim 25 and CPH2 Claim 9)</u>

Class 23 consists of the Allowed Secured Claims of Gainesville PropCo based on a prepetition escrow and purchase agreement. The Claims related to Class 23 were filed in the amount of $372,529.88.  Class 23 is Impaired.

24.     <u>Class 24 – Secured Claim of FDOT's State Infrastructure Bank (CPH Claim 46 and 47)</u>

Class 24 consists of the Allowed Secured Claims of FDOT's State Infrastructure Bank ("SIB") based on various loan documents including a credit agreement, security agreement, mortgages, and pledges. The amount of the Class 24 Claim is scheduled as secured in the amount of $21,762,578.  Class 24 is Impaired.

25.     <u>Class 25 – Secured Claim of Florida Credit Union (CPH Claim 10)</u>

Class 25 consists of the Allowed Secured Claim of Florida Credit Union ("FCU") based on various loan documents including a note and mortgage secured by the SPE that owns the real property where the Hotel Indigo is located. The Claim related to Class 25 was filed in the amount of $17,512,084.66.  Class 25 is Impaired.

26.     <u>Class 26 – Secured Claim of Barwick Banking Company</u>

Class 26 consists of the Allowed Secured Claim of Barwick Banking Company ("Barwick") based on various loan documents including a note and security agreement. The loan relates to an obligation secured by a deposit account which serves as a backup for a letter of credit issued by Barwick in favor of the SIB.  Class 26 is Impaired.

27.     <u>Class 27 – Secured Claim of Johnson Controls Security Solution</u>

Class 27 consists of the Allowed Secured Claim of Johnson Controls Security Solution ("Johnson Controls") based on a lien on certain equipment owned by Debtors.  Debtors scheduled the Class 27 Claim in the amount of $131,924.  Class 27 is Impaired.

28.     <u>Class 28 – Secured Claim of Arcis Real Estate Secured Fund II, L.P. (CPH Claim 44)</u>

Class 28 consists of the Allowed Secured Claim of Arcis Real Estate Secured Fund II, L.P. based on various loan documents.  The Claim related to Class 28 was filed in the amount of $853,228.76.  Claim 28 is Impaired.

29.     <u>Class 29 – Secured Claim of State Board of Administration of Florida</u>

Class 29 consists of the Allowed Secured Claim of State Board of Administration of Florida (collectively, "SBAF") and relates to an escrow account maintained by SBAF as collateral for the Class 24 Claim.  Class 29 is Impaired.

**C.      Unsecured Claims**

1.      <u>Class 30 – General Allowed Unsecured Claims</u>

Class 30 consists of all Allowed General Unsecured Claims (as defined above and in the Plan) against the Debtors in an approximate amount of $1,500,000.00.  Class 30 is Impaired.

29.     <u>Class 31 – Allowed Insiders and Affiliates' Claims</u>

Class 31 consists of the Allowed Claims of Insiders and Affiliates.  Class 31 is Impaired.

**D.     Equity Interests**

1.     <u>Class 32 – Equity Ownership Interests</u>

Class 32 consists of any and all ownership interests currently issued or authorized in the Debtors.  Class 32 is Impaired.

## IV.   **ARTICLE IV – ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS, U.S. TRUSTEE FEES AND CLASSIFICATION AND TREATMENT OF UNIMPAIRED CLAIMS**

**A.     Administrative Expense Claims**

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the Holder of the Claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Administrative Claims shall be paid from the Debtors funds available, operational revenue, and the New Value. Debtors estimates Administrative Claims to be approximately $1,000,000, after deducting pre-petition and post-petition retainers. Pursuant to the Consensual Plan Terms, nothing herein restricts the right of any party to object to any Administrative Claims.

**B.     Priority Claims**

1.     <u>Allowed Priority (Non-Real Estate) Tax Claims</u>

Except to the extent that the Holder and the Debtors has agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payments equal to the Allowed

Amount of such Claim. Allowed Priority Tax Claims will be paid based on a five (5) year amortization with final payment due on or before 5 years from the Petition Date. Each Allowed Priority Tax Claim will accrue interest at five percent (5.00%); the payments will be made quarterly. Payments will commence on the later of the Effective Date or on such dates as a respective Priority Claim becomes Allowed. The source of payments for Allowed Priority Tax Claims will be from the operational revenue of the Reorganized Debtors. The current amount of such claims is zero.

2.      Allowed Priority Claims (Non-Tax)

Except to the extent that the Holder and the Debtors have agreed or may agree to different treatment, in full satisfaction of each Priority Claim (non-tax), exclusive of Priority Tax Claims under 11 U.S.C. § 507(a)(8), each Holder of an Allowed Priority Claim shall receive payment of such Claim in full on the Effective Date. Payment will be made on the Effective Date or the date on which such Priority Claim becomes Allowed. The source of payments for Priority Claims (non-tax) will be from the Debtors funds available, operational revenue, and the PSA contributions. The filed amount of such claims is $127,949.36.

**C.      United States Trustee Fees**

All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course from cash on hand or the New Value.

**V.      ARTICLE V – TREATMENT OF CLAIMS AND INTERESTS**

There are thirty one (31) Classes of Claims that are Impaired, zero (0) Classes of Claims that are Unimpaired, and one (1) Class of Interests that is Impaired. Treatment for these classes is as follows:

A.     **Secured Claims**

1.     <u>Class 1 – Secured Claim of U.S. Bank Trust Company, N.A. (CPH Claim 24)</u>

Class 1 consists of the Allowed Secured Claim of U.S. Bank based on various prepetition loan and bond documents which form the basis of several bond series issued by the CDD. The Claim as to Class 1 was filed in the amount of $8,357,742.83. The Class 1 Claim is secured by substantially all the real property owned by Debtors and each SPE.

In full satisfaction of the Allowed Class 1 Claim, the Class Holder shall retain its Liens and:

(i)     prior to the Effective Date, Reorganized Debtors shall transfer to the District (a) fee title to real property underlying any District-owned improvements including but not limited to Garage PG-1, common areas, stormwater management ponds, roadways; and (b) any public infrastructure improvements funded using Bond proceeds or intended for public use; and

(ii)     on the Effective Date, Reorganized Debtors shall (a) remit to U.S. Bank monies in the amount necessary to replenish the Debt Service Reserve Fund[2] and each Series Account established thereunder to the Debt Service Reserve Requirement for each Series of Bonds and fund outstanding fees and expenses of U.S. Bank; (b) remit to U.S. Bank amounts necessary to pay debt service due on the Bonds on November 1, 2024, if unpaid as of the Effective Date; (c) remit to U.S. Bank a to-be-determined amount to pay down or escrow Special Assessments attributable to certain parcels on which U.S. Bank has a priority lien; (d) remit to U.S. Bank monies equal to Transportation Revenues received by or credited Debtors or purchasers of property therefrom in lieu of payment based on the allocable share to third parties as an offset of Special Assessments; and (e) acknowledge and consent to a to-be-determined re-allocation of Special Assessments attributable to true-up payments currently due and any payments due resulting from the loss in development density (the re-allocation to occur prior to the Effective Date but the re-allocation being contingent until if and when the Effective Date is reached).

---

[2] For purposes of U.S. Bank's claim, capitalized terms in this section that are not otherwise defined in this Disclosure Statement shall have the meaning ascribed the term in that certain Master Trust Indenture dated as of December 1, 2014, as amended for each Series of Bonds.

The Bonds and related financing documents will not otherwise be modified and Special Assessments certified for collection after the Effective Date shall be paid on or before the date due.

The Allowed Class 1 Claim shall be paid from the Debtors' operational revenue and the PSA Contributions. Class 1 is Impaired.

2.    <u>Class 2 – Secured Claim of U.S. Bank Trust Company, N.A. (CPH2 Claim 7</u>

Class 2 consists of the Allowed Secured Claim of U.S. Bank based on various prepetition loan and bond documents which form the basis of several bond series issued by the CDD. The Claim as to Class 2 was filed in the amount of $4,318,914.46. The Class 2 Claim is secured by substantially all the real property owned by Debtors and each SPE.

In full satisfaction of the Allowed Class 2 Claim, the Class Holder shall retain its Liens and:

(i)    prior to the Effective Date, Reorganized Debtors shall transfer to the District (a) fee title to real property underlying any District-owned improvements including but not limited to Garage PG-1, common areas, stormwater management ponds, roadways; and (b) any public infrastructure improvements funded using Bond proceeds or intended for public use; and

(ii)    on the Effective Date, Reorganized Debtors shall (a) remit to U.S. Bank monies in the amount necessary to replenish the Debt Service Reserve Fund3 and each Series Account established thereunder to the Debt Service Reserve Requirement for each Series of Bonds and fund outstanding fees and expenses of U.S. Bank; (b) remit to U.S. Bank amounts necessary to pay debt service due on the Bonds on November 1, 2024, if unpaid as of the Effective Date; (c) remit to U.S. Bank a to-be-determined amount to pay down or escrow Special Assessments attributable to certain parcels on which U.S. Bank has a priority lien; (d) remit to U.S. Bank monies equal to Transportation Revenues received by or credited Debtors or purchasers of property therefrom in lieu of payment based on the

---

3 For purposes of U.S. Bank's claim, capitalized terms in this section that are not otherwise defined in this Disclosure Statement shall have the meaning ascribed the term in that certain Master Trust Indenture dated as of December 1, 2014, as amended for each Series of Bonds.

allocable share to third parties as an offset of Special Assessments; and (e) acknowledge and consent to a to-be-determined re-allocation of Special Assessments attributable to true-up payments currently due and any payments due resulting from the loss in development density (the re-allocation to occur prior to the Effective Date but the re-allocation being contingent until if and when the Effective Date is reached).

The Bonds and related financing documents will not otherwise be modified and Special Assessments certified for collection after the Effective Date shall be paid on or before the date due.

The Allowed Class 2 Claim shall be paid from the Debtors' operational revenue and the PSA Contributions. Class 2 is Impaired.

3.    Class 3 – Secured Claim of Mainstreet Community Bank (Loan #4350782/CPH Claim 2 and CPH2 Claim 3)

Class 3 consists of the Allowed Secured Claim of Mainstreet based on various loan documents including a note, mortgage and guaranties all related to the SPE which owns the real property leased to Bass Pro Shops. The Claims as to Class 3 were filed in the amount of $6,278,919.21 and are secured by a mortgage on the SPE which owns the real property leased to Bass Pro Shops.

In full satisfaction of the Class 3 Claim, the Holder shall retain its Liens and be paid according to the prepetition loan documents (at the non-default interest rate); provided, however maturity shall be extended to October 2034. All outstanding pre-petition late fees will be forgiven upon repayment without further default. All real estate taxes will be paid current. The Allowed Secured Claim shall be paid from the SPE operational revenue (including a direct assignment of rents from Bass Pro Shop) and PSA Contributions. Class 3 is Impaired.

4.      Class 4 – Secured Claim of Mainstreet Community Bank (Loan #4385527/CPH Claim 17 and CPH Claim 2)

Class 4 consists of the Allowed Secured Claim of Mainstreet based on various loan documents. The Class 4 Claim as to Class 4 was filed in the amount of $6,904,867.19.

In full satisfaction of the Allowed Class 4 Claim, the Holder shall be paid interest only, at the non-default contract rate, from October 2024 through September 2025 and, thereafter, the Holder shall receive monthly payments of principal and interest based on a twenty-five (25) year amortization until maturity. Additionally, semi-annual principal payments shall be due starting in April 2026, and every six (6) months thereafter. The first two such payments shall be in the amount of $50,000 each. Thereafter each such payment shall be in the amount of $250,000 each. All outstanding pre-petition late fees will be forgiven upon repayment without further default. Holder shall be given a lien on any net sales or refinancing proceeds from the Bass Pro Shops property. The Class 4 Claim shall mature on October , 2034. The Allowed Class 4 Claim shall be paid from the Debtors' funds available and the PSA Contributions. Class 4 is Impaired.

5.      Class 5 – Secured Claim of Mainstreet Community Bank (Loan #4376560/CPH Claim 19)

Class 5 consists of the Allowed Secured Claim of Mainstreet based on various loan documents including a note and mortgage which is secured by the SPE which owns Spurrier's Gridiron Grille. The Claim related to Class 5 was filed in the amount of $530,090.17.

In full satisfaction of the Allowed Class 5 Claim, the Holder shall be paid interest only, at the non-default contract rate, based on the contractual amount of principal and interest based on the existing amortization. All outstanding pre-petition late fees will be forgiven upon repayment without further default. The Allowed Class 5 Claim shall be paid from operational revenue from the SPE and the PSA Contributions. Class 5 is Impaired.

6.      <u>Class 6 – Secured Claim of Vystar Credit Union (CPH Claim 22)</u>

Class 6 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as the 5001 Office Building. The Claim related to Class 6 was filed in the amount of $14,663,991.90.

In full satisfaction of the Class 6 Claim, the Holder shall retain its Liens and, after a twenty-four (24) month period of interest only payments (at the non-default rate), be paid the contractual amount of principal and interest based on the existing amortization. The maturity date and all other loan terms will not be altered. The Allowed Secured Claim shall be paid from operational revenue of the SPE and the PSA Contributions. Class 6 is Impaired.

7.      <u>Class 7 – Secured Claim of Vystar Credit Union (CPH Claim 6 and CPH2 Claim 5)</u>

Class 7 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property leased to Regal Cinemas. The Claim related to Class 7 was filed in the amount of $8,911,077.32.

In full satisfaction of the Class 7 Claim, the Holder shall retain its Liens and, after a twenty-four (24) month period of interest only payments (at the non-default rate), be paid the contractual amount of principal and interest based on the existing amortization. The maturity date and all other loan terms will not be altered. The Allowed Secured Claim shall be paid from operational revenue of the SPE and the PSA Contributions. Class 7 is Impaired.

8.      <u>Class 8 – Secured Claim of Vystar Credit Union (CPH Claim 7)</u>

Class 8 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property leased to Millers Ale House. The Claim related to Class 8 was filed in the amount of $3,336,613.78.

In full satisfaction of the Class 8 Claim, the Holder shall retain its Liens and, after a twenty-four (24) month period of interest only payments (at the non-default rate), be paid the contractual amount of principal and interest based on the existing amortization. The maturity date and all other loan terms will not be altered. The Allowed Secured Claim shall be paid from operational revenue of the SPE and the PSA Contributions. Class 8 is Impaired.

9.    Class 9 – Secured Claim of Vystar Credit Union (CPH Claim 8 and SHD Claim 3)

Class 9 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as City Walk Phase 1. The Claim related to Class 9 was filed in the amount of $16,138,837.46.

In full satisfaction of the Class 9 Claim, the Holder shall retain its Liens and, after a twenty-four (24) month period of interest only payments (at the non-default rate), be paid the contractual amount of principal and interest based on the existing amortization. The maturity date and all other loan terms will not be altered. The Allowed Secured Claim shall be paid from operational revenue of the SPE and the PSA Contributions. Class 9 is Impaired.

10.    Class 10 – Secured Claim of Vystar Credit Union (CPH2 Claim 6)

Class 10 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as the Shops at Celebration. The Claim related to Class 10 was filed in the amount of $5,520,563.40.

In full satisfaction of the Class 10 Claim, the Holder shall retain its Liens and, after a twenty-four (24) month period of interest only payments (at the non-default rate), be paid the contractual amount of principal and interest based on the existing amortization. The maturity

date and all other loan terms will not be altered. The Allowed Secured Claim shall be paid from operational revenue of the SPE and the PSA Contributions. Class 10 is Impaired.

> 11. <u>Class 11 – Secured Claim of Synartis Income Fund, LLC & Catalyst Synartis CP Master 4A-2023, LLC (CPH Claim 33 and CPH2 Claim 15)</u>

Class 11 consists of the Allowed Secured Claim of SIF based on various loan documents. The Claims related to Class 11 was filed in the amount of $12,100,000.00.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (hereafter, the "Synartis Holders"), the respective Holders will have an Allowed Claim in the amount of $37,808,697 (the "Allowed Synartis Claim"). The Synartis Holders shall each retain their respective liens and the Allowed Synartis Claim shall be paid as follows: (a) $8,000,000 payment on the Effective Date; (b) monthly payments on interest only for 12 months with first interest payment due 30 days after Effective Date; (c) starting in month 13 after the Effective Date, monthly payments based on a thirty (30) year amortization with interest fixed at thirteen percent (13%) which shall be inclusive of any other fees; and (d) maturity with balloon payment due five (5) years from the Effective Date. The default rate will be existing rate plus 3%. To the extent the Debtors and Synartis Holders execute a settlement agreement with additional terms, such terms shall be deemed incorporated into the Plan. The Allowed Synartis Claim will be paid from Debtors' operational revenue and the PSA Contributions. Class 11 is Impaired.

> 12. <u>Class 12 – Secured Claim of Synartis Capital Management LLC (CPH Claim 30)</u>

Class 12 consists of the Allowed Secured Claim of Synartis Capital based on various loan documents. The Claim related to Class 12 was filed in the amount of $2,500,000.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (hereafter, the "Synartis Holders"), the respective Holders will have an Allowed Claim

in the amount of $37,808,697 (the "Allowed Synartis Claim").  The Synartis Holders shall each retain their respective liens and the Allowed Synartis Claim shall be paid as follows: (a) $8,000,000 payment on the  Effective Date; (b) monthly payments on interest only for 12 months with first interest payment due 30 days after Effective Date; (c) starting in month 13 after the Effective Date, monthly payments based on a thirty (30) year amortization with interest fixed at thirteen percent (13%) which shall be inclusive of any other fees;  and (d) maturity with balloon payment due five (5) years from the Effective Date.  The default rate will be existing rate plus 3%.   To the extent the Debtors and Synartis Holders execute a settlement agreement with additional terms, such terms shall be deemed incorporated into the Plan.  The Allowed Synartis Claim will be paid from Debtors' operational revenue and the PSA Contributions.  Class 11 is Impaired.

13. Class 13 – Secured Claim of Synartis Capital Management LLC (CPH Claim 32)

Class 13 consists of the Allowed Secured Claim of Synartis Capital based on various loan documents. The Claim related to Class 13 was filed in the amount of $6,890, 778.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (hereafter, the "Synartis Holders"), the respective Holders will have an Allowed Claim in the amount of $37,808,697 (the "Allowed Synartis Claim").  The Synartis Holders shall each retain their respective liens and the Allowed Synartis Claim shall be paid as follows: (a) $8,000,000 payment on the  Effective Date; (b) monthly payments on interest only for 12 months with first interest payment due 30 days after Effective Date; (c) starting in month 13 after the Effective Date, monthly payments based on a thirty (30) year amortization with interest fixed at thirteen percent (13%) which shall be inclusive of any other fees;  and (d) maturity with balloon payment due five (5) years from the Effective Date.  The default rate will be existing rate plus 3%.   To the extent the Debtors and Synartis Holders execute a settlement agreement with additional terms, such terms

shall be deemed incorporated into the Plan.  The Allowed Synartis Claim will be paid from Debtors' operational revenue and the PSA Contributions.  Class 11 is Impaired.

14.    Class 14 – Secured Claim of Capital Income Fund 2022-1A, LLC (CPH Claim 26)

Class 14 consists of the Allowed Secured Claim of Capital Income based on various loan documents. The Claim related to Class 14 was filed in the amount of $2,380,000.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (hereafter, the "Synartis Holders"), the respective Holders will have an Allowed Claim in the amount of $37,808,697 (the "Allowed Synartis Claim").  The Synartis Holders shall each retain their respective liens and the Allowed Synartis Claim shall be paid as follows: (a) $8,000,000 payment on the  Effective Date; (b) monthly payments on interest only for 12 months with first interest payment due 30 days after Effective Date; (c) starting in month 13 after the Effective Date, monthly payments based on a thirty (30) year amortization with interest fixed at thirteen percent (13%) which shall be inclusive of any other fees;  and (d) maturity with balloon payment due five (5) years from the Effective Date.  The default rate will be existing rate plus 3%.   To the extent the Debtors and Synartis Holders execute a settlement agreement with additional terms, such terms shall be deemed incorporated into the Plan.  The Allowed Synartis Claim will be paid from Debtors' operational revenue and the PSA Contributions.  Class 11 is Impaired.

15.    Class 15 – Secured Claim of Catalyst Synartis MF B Series Condo 3A-2023, LLC (CPH Claim 27)

Class 15 consists of the Allowed Secured Claim of Catalyst Synartis Condo based on various loan documents. The Claim related to Class 15 was filed in the amount of $4,935,000.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (hereafter, the "Synartis Holders"), the respective Holders will have an Allowed Claim

in the amount of $37,808,697 (the "Allowed Synartis Claim"). The Synartis Holders shall each retain their respective liens and the Allowed Synartis Claim shall be paid as follows: (a) $8,000,000 payment on the Effective Date; (b) monthly payments on interest only for 12 months with first interest payment due 30 days after Effective Date; (c) starting in month 13 after the Effective Date, monthly payments based on a thirty (30) year amortization with interest fixed at thirteen percent (13%) which shall be inclusive of any other fees; and (d) maturity with balloon payment due five (5) years from the Effective Date. The default rate will be existing rate plus 3%. To the extent the Debtors and Synartis Holders execute a settlement agreement with additional terms, such terms shall be deemed incorporated into the Plan. The Allowed Synartis Claim will be paid from Debtors' operational revenue and the PSA Contributions. Class 11 is Impaired.

16. Class 16 – Secured Claim of Catalyst Synartis MF B Series MF 2A-2022, LLC (CPH Claim 28)

Class 16 consists of the Allowed Secured Claim of Catalyst Synartis B Series based on various loan documents. The Claim related to Class 16 was filed in the amount of $5,300,000.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (hereafter, the "Synartis Holders"), the respective Holders will have an Allowed Claim in the amount of $37,808,697 (the "Allowed Synartis Claim"). The Synartis Holders shall each retain their respective liens and the Allowed Synartis Claim shall be paid as follows: (a) $8,000,000 payment on the Effective Date; (b) monthly payments on interest only for 12 months with first interest payment due 30 days after Effective Date; (c) starting in month 13 after the Effective Date, monthly payments based on a thirty (30) year amortization with interest fixed at thirteen percent (13%) which shall be inclusive of any other fees; and (d) maturity with balloon payment due five (5) years from the Effective Date. The default rate will be existing rate plus 3%. To the extent the Debtors and Synartis Holders execute a settlement agreement with additional terms, such terms

shall be deemed incorporated into the Plan.  The Allowed Synartis Claim will be paid from Debtors' operational revenue and the PSA Contributions.  Class 11 is Impaired.

17.   Class 17 – Secured Claims of ARCISCAP Celebration Pointe Investment (B.V.I.) Limited (CPH Claim 15, 20, 21 and 23)

Class 17 consists of the Allowed Secured Claims of ARCISCAP based on various loan documents.  The Claims related to Class 17 were filed in the amount of $44,054,216.55.

In full satisfaction of the Class 17 Claims, the Holder shall receive: (a) payment of $19,000,000 on the Effective Date; and (b) an equity interest in the Reorganized CPH equal to 4.98%, non voting.  To the extent the Class 17 Holder and Debtors execute a settlement agreement, the terms of the agreement will be deemed incorporated into the Plan.  The source of payment for Class 17 shall be from the PSA Contributions.  Class 17 is Impaired.

18.   Class 18 – Secured Claim of Iceberg Real Estate Investments, LLC (CPH Claim 34, CPH2 Claim 13, and SHD Claim 6)

Class 18 consists of the Allowed Secured Claim of Iceberg based on alleged obligations owed by Debtors arising from certain SPE investments. The Claims related to Class 18 were filed in the amount of $1,050,000.

In full satisfaction of the Allowed Class 18 Claim, the Holder will receive payments based a 10-year amortization and maturity, paid monthly, with interest at Prime. The Allowed Secured Claim shall be paid from the Debtors' operational revenue and the PSA Contributions. Class 18 is Impaired.

19.     Class 19 – Secured Claim of James B. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trustee JBE dated December 28, 2009, and Neil R. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust NRE II dated December 28, 2009 (SHD Claim 1 and SHD Claim 2)

Class 19 consists of the Allowed Secured Claims of the Euliano Trusts based on promissory notes and pledges executed by SHD. The Claims related to Class 19 were filed in the total amount of $1,168,840.16.

In full satisfaction of the Class 19 Claims, the Euliano claims will be allowed in full (including attorneys' fees of $50,000 plus post petition at 10%) and will be paid as follows: (i) commencing on the Effective Date equal monthly installment payments of principal plus interest at ten percent (10%) amortized and paid over thirty-six (36) months; and (ii) a one-time payment of $100,000.00 on the earlier of the Effective Date or January 15, 2025 (such will reduce the balance owed on the claim). The monthly installment payments are due and payable beginning on the Effective Date, and on the first day of the month for each month thereafter until paid in full. The obligation herein will be owed by each Reorganized Debtor.

The Eulianos' claims are two separate claims, comprised of the James B. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust JBE dated Dec. 28, 2009 ("JBE Trust") claim in the amount of $584,420.08, and the Neil R. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust NRE II dated Dec. 28, 2009 ("NRE Trust") claim in the amount of $584,420.08. The payments described above will be divided equally between the JBE Trust and NRE Trust. Those claims will be paid as indicated above, but the payments will be separated out and payable to each of the JBE Trust and NRE Trust separately.

A a new guarantee will be executed by Dyrkolboltn and Viking Companies, LLC to guarantee payment and performance under the Plan. Notwithstanding the foregoing, Dyrkolboltn, CP City Place Partners LLC, and CP City Place Holdings will continue to be

obligated on the original note and guarantees with effective dates of March 2023, but any collection against them will be abated as set forth below pending performance under the plan.

The Eulianos will abate the state-court litigation currently pending as *James B. Euliano, as Trustee, etc. v. CP City Place Partners, et al.,* case no. 2024-CA-1510 (the "State Court Litigation"). The Eulianos will submit an order to the state court abating the State Court Litigation, and the Defendants will cooperate with obtaining the abatement or take whatever actions reasonably necessary to ensure entry of such an abatement order by the state court. The State Court Litigation will be abated pending (a) confirmation of the Plan; and (b) performance under the Plan. Immediately upon (a) failure to timely confirm the Plan, or (b) a default in payments under the Plan, the Eulianos may lift the abatement ex parte and proceed with the State Court Litigation. In such a situation, the defendants will not oppose lifting the abatement and the resumption of the State Court Litigation. The agreement to abate this State Court Litigation shall expire on January 15, 2025, if the Plan is not confirmed on or before that time.

To the extent the Eulianos are owed additional sums for interest or attorney's fees not paid under the Plan, upon completion of Plan payments (or default), Eulianos may seek to recover those additional sums from the non-debtor guarantors, specifically, Dyrkolbotn, CP City Place Partners LLC, and CP City Place Holdings, LLC.

Notwithstanding anything to the contrary as set forth herein, Svein Dyrkolbotn is obligated on the original guarantee and also on any and all additional obligations that are set forth under the Plan.

The Plan will not be a novation or an accord and satisfaction of the original notes and guarantees. In the event of a default under the Plan, the Eulianos reserve any and all rights to pursue Dyrkolbotn, City Place Partners LLC, CP City Place Holdings, and SHD for any and all

amounts owed pursuant to the original notes and guarantees. In addition, the Eulianos reserve any and all rights to pursue Dyrkolbotn, Debtors, and Viking Companies for any and all amounts owed pursuant to the Plan. The Eulianos recognize, however, that they are not entitled to a double recovery.

Except as modified herein, the terms of the original notes and guarantees remain in full force and effect.

20.    Class 20 – Secured Claim of Jon Guven and J&R Investments, LLC (CPH Claim 13)

Class 20 consists of the Allowed Secured Claims of J&R based on various loan documents including a note and pledge agreements. The Claim related to Class 20 was filed in the amount of $6,500,000.

In full satisfaction of the Class 20 Claim, the Holder shall retain its Liens with the Allowed Claim paid monthly at the Prime Rate with the following payment terms: (i) interest only for thirty six (36) months; (ii) monthly principal and interest based on a thirty (30) year amortization beginning in month thirty seven (37); and (iii) a final maturity date and balloon payment due at the end of 10 years. The Allowed Secured Claim shall be paid from the Debtors' operational revenue and the PSA Contributions. Class 20 is Impaired.

21.    Class 21 – Secured Claim of Kenneth R. McGurn and Linda C. McGurn

Class 21 consists of the Allowed Secured Claims of McGurn based on various loan documents and pledges. The Class 21 Claim is in the amount of $8,400,000.

In full satisfaction of the Class 21 Claim, the Holder will retain its lien and have any past due amounts paid on the Effective Date. Thereafter, the Holder will continue to receive payments pursuant to existing loan documents which call for interest only payments based on a

rate of twelve percent (12%) per annum. The Allowed Secured Claims shall be paid from the Debtors' operations and the PSA Contributions. Class 21 is Impaired.

22.    Class 22 – Secured Claim of Gainesville PropCo LLC (CPH2 Claim 8)

Class 22 consists of the Allowed Secured Claim of Gainesville PropCo based on a prepetition escrow and purchase agreement. The Claim related to Class 22 were filed in the amount of $400,224.13.

In full satisfaction of the Class 22 Claim, the Holder shall retain its lien and contract rights and be paid pursuant to the original contract terms. Class 22 is Impaired.

23.    Class 23 – Secured Claim of Gainesville PropCo LLC (CPH Claim 25 and CPH2 Claim 9)

Class 23 consists of the Allowed Secured Claims of Gainesville PropCo based on a prepetition escrow and purchase agreement. The Claims related to Class 23 were filed in the amount of $372,529.88.

In full satisfaction of the Class 23 Claim, the Holder shall retain its lien and contract rights and be paid pursuant to the original contract terms. Class 23 is Impaired.

24.    Class 24 – Secured Claims of FDOT's State Infrastructure Bank (CPH Claim 46 and 47)

Class 24 consists of the Allowed Secured Claims of SIB based on various loan documents including a credit agreement, security agreement, mortgages, and pledges. The Claims related to Class 24 were filed in the amount of $24,163,491.46.

In full satisfaction of the Class 24 Claim, the Holder shall retain its liens and rights in respect of a letter of credit and be paid as follows: (i) past due interest will be added to the principal balance; (ii) ,monthly payments of interest at the non-default contract rate for 120 months; (iii) interest payments initially made form the SIB's $1,900,000 interest reserve; (iv)

beginning year 11, remaining balance paid monthly based on 20 year amortization; and (v) final payment due at month 360.

The Allowed Secured Claims shall be paid from the Debtors' funds operational revenue and the PSA Contributions. Class 24 is Impaired.

25.    Class 25 – Secured Claim of Florida Credit Union (CPH Claim 10)

Class 25 consists of the Allowed Secured Claim of FCU based on various loan documents including a note and mortgage secured by the SPE that owns the real property where the Hotel Indigo is located. The Claim related to Class 25 was filed in the amount of $17,512,084.66.

In full satisfaction of the Class 25 Claim, the Holder shall retain its lien and continue to be paid pursuant to the existing note and mortgage. Any past due amounts will be paid on the Effective Date. The Allowed Secured Claim shall be paid from the operational revenue from the SPE, which owns the real property, and the PSA Contributions. Class 25 is Impaired.

26.    Class 26 – Secured Claim of Barwick Banking Company

Class 26 consists of the Allowed Secured Claim of Barwick based on various loan documents including a note and security agreement. The loan relates to an obligation secured by a deposit account which serves as a backup for a letter of credit issued by Barwick in favor of the SIB.

In full satisfaction of the Class 26 Claim, the Holder shall retain its lien and continue to be paid interest at the contract terms. The maturity of the loan will be extended to coincide with the maturity of the SIB loan. The Allowed Secured Claim shall be paid from the Debtors' funds available and operational revenue. Class 26 is Impaired.

27.    <u>Class 27 – Secured Claim of Johnson Controls Security Solution</u>

Class 27 consists of the Allowed Secured Claim of Johnson Controls based on a lien on certain equipment owned by Debtors.  Debtors scheduled the Class 27 Claim in the amount of $131,924.

 In full satisfaction of the Class 27 Claim, the Holder will retain its lien and be paid over sixty (60) monthly payments of principal and interest with interest at the Prime Rate. The Allowed Secured Claim shall be paid from the Debtors' operational revenue. Class 27 is Impaired.

28.    <u>Class 28 – Secured Claim of Arcis Real Estate Secured Fund II, L.P. (CPH Claim 44)</u>

Class 28 consists of the Allowed Secured Claim of Arcis Real Estate Secured Fund II, L.P. based on various loan documents.  The Claim related to Class 28 was filed in the amount of $853,228.76.  Claim 28 is Impaired.

In full satisfaction of the Class 28 Claim, the Holder will receive: (a) monthly interest only payments at ten percent (10%) for thirty six (36) months; (b) monthly payment based on a thirty (30) year amortized for eighty four (84) months; and (c) a maturity and final balloon payment due at the end of ten (10) years from Effective Date.

29.    <u>Class 29 – Secured Claim of State Board of Administration of Florida</u>

Class 29 consists of the Allowed Secured Claim of SBAF and relates to an escrow account maintained by SBAF as collateral for the Class 24 Claim.

In full satisfaction of the Class 29 Claim, the Holder shall retain its lien with the escrow funds used pursuant to the treatment set forth for Class 24. Class 29 is Impaired.

B.      **Unsecured Claims.**

1.      <u>Class 29 – General Allowed Unsecured Claims</u>

Class 29 consists of all Allowed General Unsecured Claims (as defined above and in the Plan) against the Debtors in an approximate amount of $1,500,000.00. In full satisfaction of the Allowed Class 29 Claims, Holders of such Claims shall receive a pro rata share of the Cash Flow Note paid quarterly.

In the event of a conversion and liquidation, there would be likely no distribution to Holders of Allowed Class 29 Claims as the debt encumbering assets exceeds the value of such assets. Class 29 is Impaired.

2.      <u>Class 30 – Allowed Insiders and Affiliates' Claims</u>

Class 30 consists of the Allowed Claims of Insiders and Affiliates, including but not limited to, SHD Real Estate LLC, SHD Vue Investments LLC, Viking Student Housing Partners LLC, GNV RE Fund 3 LLC, SDPS Real Estate Investments II LLC, CP City Place Partners LLC, Viking Property Management LLC, Viking Companies LLC, Viking Construction Company of Florida LLC, SHD Management LLC, SDPS Real Estate Investments  LLC, SDPS Real Estate Investments IV LLC, Svein Dyrkolbotn and/or related entities, Patricia A. Shively and Patricia Ann Shively Trust. In full satisfaction of the Allowed Class 30 Claims, the Holders shall receive a note for the respective Allowed Amounts with the note accruing interest at the Prime Rate with a balloon payment due at the maturity of 120 months. Class 30 is Impaired.

C.      **Equity Interests**

1.      <u>Class 31 – Equity Ownership Interests</u>

Class 31 consists of any and all ownership interests currently issued or authorized in the Debtors. On the Effective Date, all existing Interests shall be vested pursuant to the PSA.

Additionally, the Holder of Class 17 shall receive a 4.98% nonvoting interest in Reorganized CPH.

Class 31 is Impaired.

## VI.    ARTICLE VI - UNEXPIRED LEASES AND EXECUTORY CONTRACTS

### A.    Leases and Executory Contracts

To the extent Debtors rejects any executory contracts or unexpired leases prior to the Confirmation Hearing, any party asserting a Claim, pursuant to section 365 of the Bankruptcy Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. The Debtors shall have through and including the Confirmation Hearing within which to assume or reject any unexpired lease or executory contract. To the extent the Debtors does not file a motion to reject prior to the Confirmation Hearing, any such executory contract or lease will be deemed assumed with any required cure to occur over six (6) months from the Effective Date.

## VII.    ARTICLE VII - MEANS OF IMPLEMENTATION

### A.    Business Operations and Cash Flow

The Plan contemplates that the Debtors will continue to operate and manage their properties. Overall, the Debtors will support the development of the Project and, through revenue and the PSA Contributions will make any necessary Plan Payments including amounts need to cover shortfalls of the SPE related obligations. The Debtors believe the cash flow generated from operations following the restructuring of debt plus the PSA Contributions, will be sufficient to make all Plan Payments and will be sufficient to pay ordinary course expenses, including but not limited to, payroll and administrative costs.

**B.** **Funds Generated During Chapter 11**

Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtors 'cash on hand as of Confirmation will be available for payment of Administrative Expenses.

**C.** **Disbursing Agent**

The Reorganized Debtors will serve as the Disbursing Agent for all Distributions under the Plan.

**D.** **Management and Control of the Reorganized Debtors**

The operations of the Reorganized Debtors will continue to be overseen by the current officers, managers, and directors following Confirmation, who will have uninterrupted authorization to maintain and manage the day-to-day normal business operations of the Reorganized Debtors with all the powers and duties as set forth in the Debtors operating agreements.

**E.** **Other Provisions**

1. <u>Procedures For Resolving Disputed Claims</u>

a) *<u>Prosecution of Objections to Claims</u>*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, pursuant to the Consensual Plan Terms the Debtors shall have the primary responsibility to make and file objections to all Claims, other than those Claims deemed as "Allowed" under the terms of the Plan, and for proposing resolutions for Claim objections.  The Debtors/Reorganized Debtors shall have a 150-day timetable from the confirmation Effective Date in order to complete the Claims allowance/disallowance process. The

expenses of the Debtors, Reorganized Debtors, or their counsel related to the claims process shall be paid by the Debtors/Reorganized Debtors.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of the Bankruptcy Case against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan. Except as set forth in the Plan, upon Confirmation the Debtors shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b)      _Estimation of Claims_

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the

estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c)    _Cumulative Remedies_

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

d)    _Payments and Distributions on Disputed Claims_

As and when authorized by a Final Order, Disputed Claims or Interests that become "Allowed" shall be paid by the Reorganized Debtors such that the Holder of such Allowed Claim or Interest receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Interest until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Creditor or Equity Interest Holder who holds both an Allowed Claim and a Disputed Claim or Interest will not receive a distribution until such dispute is resolved by settlement or Final Order.

e)    *Allowance of Claims and Interests*

(1)    Disallowance of Claims

According to the Plan, all Claims held by entities against whom the Debtors has obtained a Final Order establishing liability for a cause of action under sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtors by that Entity are turned over to the Debtors.

(2)    Allowance of Claims

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

(3)    Chapter 5 Claims

Pursuant to the Plan Terms, on the Effective Date, the Debtors/Reorganized Debtors shall release all chapter 5 claims against the SPE, all Affiliates, and all officers and directors of the Debtors.

f)    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such

controversy is not resolved prior to the Effective Date, the Debtors interpretation of the Plan shall govern.

    2.    <u>Effect of Confirmation</u>

    *a)*    *<u>Authority to Effectuate the Plan</u>*

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. Unless otherwise noted herein, the Reorganized Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

    *b)*    *<u>Post-Confirmation Status Report</u>*

Within ninety (90) days of the entry of the Confirmation Order, the Reorganized Debtors will file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, the Post-confirmation Committee, the GUC Agent, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

## VIII.   <u>ARTICLE VIII – MISCELLANEOUS PROVISIONS</u>

    A.  **<u>Conditional Injunction</u>**.

**THE PLAN IS PREMISED UPON THE CONDITIONAL GUARANTY INJUNCTIONS CONTAINED HEREIN. THE GUARANTY INJUNCTIONS SHALL APPLY TO THE SPES, DYRKOLBOTN, SHIVELY, ANY SHIVELY TRUST AND ANY ENTITY OR AFFILIATE OWNED BY DEBTORS (THE "GUARANTOR PARTIES"). THE INJUNCTIONS ARE CRITICAL TO ALLOWING DYRKOLBOTN AND SHIVELY TO PERORM UNDER THE PSA AND TO FUND SIGNIFICANT AMOUNTS NECESSARY TO MAKE ALL PLAN PAYMENTS. THE DEBTORS ASSERT THESE CONDITIONAL INJUNCTIONS ARE BEING GIVEN AS CONSIDERATION FOR THE**

**ACCOMMODATIONS PROVIDED BY THE GUARANTOR PARTIES UNDER THE PLAN AND ARE FAIR CONSIDERATION FOR PROPERTY CONTRIBUTED AND VALUABLE SERVICES. THE DEBTORS FURTHER BELIEVE THAT UNLESS THE PLAN IS BINDING ON ALL PARTIES THROUGH CONFIRMATION AND CONSUMMATION OF THE PLAN, WHICH PROTRACTED AND COSTLY LITIGATION COULD ENSUE, DISTRIBUTIONS TO CREDITORS WOULD BE SUBSTANTIALLY DELAYED, GIVE RISE TO INDEMNITY CLAIMS, AND THE DEBTORS WOULD NOT BE ABLE TO RESTRUCTURE AND REORGANIZE AS CONTEMPLATED BY THIS PLAN. SO LONG AS THE DEBTORS AND GUARANTOR PARTIES ARE NOT IN DEFAULT OF ANY OBLIGATION UNDER THE PLAN (AND AFTER 20 DAYS NOTICE AND OPPORTUNITY TO CURE) OR ANY AGREEMENTS CONTEMPLATED BY THE PLAN, UPON CONFIRMATION OF THE PLAN, ALL PERSONS AND ENTITIES THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM, OTHER DEBT OR LIABILITY, AN INTEREST, OR OTHER RIGHT OF AN EQUITY SECURITY THAT IS IMPAIRED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE ENJOINED, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH IMPAIRED OR TERMINATED CLAIMS, DEBTS OR LIABILITIES, INTERESTS OR RIGHTS AGAINST THE GUARANTOR PARTIES: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING AGAINST THE GUARANTOR PARTIES, OR THEIR PROPERTY INTERESTS, OTHER THAN TO ENFORCE ANY RIGHT PURSUANT TO THE PLAN; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE GUARANTOR PARTIES, OR THEIR PROPERTY INTERESTS, OTHER THAN AS PERMITTED PURSUANT TO (I) ABOVE; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE GUARANTOR PARTIES OR THEIR PROPERTY INTERESTS; (IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE GUARANTOR PARTIES; AND (V) COMMENCING OR CONTINUING ANY ACTION, IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN. FROM AND AFTER THE CONFIRMATION DATE, THE CONDITIONAL INJUNCTIONS DESCRIBED HEREIN SHALL BECOME EFFECTIVE, AND ALL HOLDERS OF CLAIMS AND INTERESTS SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY OF THE ACTIONS DETAILED HEREIN FOR SO LONG AS THE REORGANIZED DEBTORS AND THE GUARANTOR PARTIES REMAIN IN COMPLIANCE WITH THE PLAN OR ANY AGREEMENTS CONTEMPLATED BY THE PLAN AND EXCEPT AS SPECIFICALLY PROVIDED FOR IN THE PLAN.**

B.    **Exculpation from Liability**

The Debtors, and its officers, directors, members, managers, managing members, and Professionals, including each member of the Committee and its retained professionals, (acting

in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided*, *however*, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtors, the Reorganized Debtors, and its respective agents have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED; *PROVIDED THAT*, THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtors shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtors members, managers or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

C.    **Police Power**

No provision of Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to section 1141 of the Bankruptcy Code.

D.    **Revocation and Withdrawal of this Plan**

The Debtors reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Debtors revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

### E.    Modification of Plan

The Debtors may seek to amend or modify this Disclosure Statement and the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtors may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

### F.    Retention of Jurisdiction

After the Effective Date, the Reorganized Debtors will be free to perform all functions assigned to them herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court.  Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtors case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after

the Effective Date may be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any adversary proceedings or contested matters brought by the Debtors, the Reorganized Debtors, or the Disbursing Agent, the Causes of Action, the proceedings then pending or thereafter brought pursuant to sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, or other proceedings calculated to generate payments to Holders of Allowed Claims;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code section 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Bankruptcy Code or the Plan;

10.     To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.     To hear and determine any action or controversy by or against the Reorganized Debtors.

## G.    Headings

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

## H.    Cramdown

The Bankruptcy Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one (1) Impaired Class of Claims. Section 1129(b)(1) of the Bankruptcy Code states:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**DEBTORS BELIEVE THAT, IF NECESSARY, THEY WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE BANKRUPTCY CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

**I.      Discharge**

As of the Effective Date and pursuant to section 1141 of the Bankruptcy Code, Debtors shall be discharged from any debt that arose before the Confirmation Date, and any debt of a kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not:

1.    A proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code;

2.    A Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or

3.    The Holder of a Claim or Interest based upon such debt has accepted the Plan.

**J.    Notices**

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

| Counsel for the Debtors: | Debtors: |
|---|---|
| R. Scott Shuker, Esquire<br>Shuker & Dorris, P.A.<br>121 S. Orange Avenue, Suite 1120<br>Orlando, Florida 32801 | c/o Svein Dyrkolbotn<br>5001 Celebration Pointe Ave., Suite 180<br>Gainesville, Florida 32608 |
| United States Trustee:<br><br>United States Trustee<br>Office of The United States Trustee<br>110 East Park Avenue, Suite 128<br>Tallahassee, Florida 32301 | |

K.    **Manner of Payment**

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganized Debtors, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtors.

L.    **Compliance with Tax Requirements**

In connection with this Plan, to the extent applicable, the Reorganized Debtors in making Distributions shall comply with all tax withholding and reporting requirements imposed by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtors may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtors, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtors to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtors the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtors to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

M.    **Transmittal of Distributions to Parties Entitled Thereto**

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise

agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtors pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors books and records.

### N.     Distribution of Unclaimed Property

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Allowed Claims in accordance with the provisions of this Plan. However, checks issued by the GUC Agent or Reorganized Debtors with respect to Allowed Claims will be null and void if not cashed within sixty days of the date of issuance and revest in the Reorganized Debtors. Requests for re-issuance of any such check shall be made in writing to the issuer, *i.e.,* the GUC Agent or Reorganized Debtors.

### O.     Transfer Taxes

Under section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.  Real Property tax shall not be subject to any documentary or other recording taxes.

**RESPECTFULLY SUBMITTED** this 6th day of September 2024.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
Mariane L. Dorris, Esq.
Florida Bar No. 173665
mdorris@shukerdorris.com
Lauren L. Stricker, Esq.
Florida Bar No. 91526
lstricker@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801
Tel: 407-337-2060
*Attorneys for the Debtors*