**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**
**www.flnb.uscourts.gov**

In re:                                                          CASE NO.: 24-10056-KKS
                                                                CASE NO.: 24-10057-KKS
**CELEBRATION POINTE HOLDINGS, LLC**            CASE NO.: 24-10058-KKS
**CELEBRATION POINTE HOLDINGS II, LLC**
**SHD-CELEBRATION POINTE, LLC**                 CHAPTER 11

        **Debtors.**                              *Joint Administration under*
                                                                *Case No. 24-10056-KKS*

_____/


**MODIFICATIONS TO JOINT SECOND AMENDED PLAN OF REORGANIZATION**
**FOR CELEBRATION POINTE HOLDINGS, LLC, *et al.***


COUNSEL FOR THE DEBTORS

R. SCOTT SHUKER, ESQ.
MARIANE L. DORRIS, ESQ.
LAUREN L. STRICKER, ESQ.
SHUKER & DORRIS, P.A.
121 S. ORANGE AVENUE, SUITE 1120
ORLANDO, FLORIDA 32801


March 11, 2025

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**
**www.flnb.uscourts.gov**

In re:

| | |
|---|---|
| CELEBRATION POINTE HOLDINGS, LLC | Case No. 24-10056-KKS |
| CELEBRATION POINTE HOLDINGS II, LLC | Case No. 24-10057-KKS |
| SHD-CELEBRATION POINTE, LLC | Case No. 24-10058-KKS |
| | Chapter 11 |
| Debtors. | *Jointly Administered under* Case No. 24-10056-KKS |

_____ /

**MODIFICATIONS TO JOINT SECOND AMENDED PLAN OF REORGANIZATION**
**FOR CELEBRATION POINTE HOLDINGS, LLC, *et al.***

**CELEBRATION POINTE HOLDINGS, LLC** ("CPH"), **CELEBRATION POINTE HOLDINGS II, LLC** ("CPH2"), and **SHD-CELEBRATION POINTE, LLC** ("SHD") (hereinafter referred to collectively as the "Debtors" or "Reorganized Debtors"– where appropriate), by and through their undersigned counsel, pursuant to 11 U.S.C. § 1127(a), hereby files the below modification, (the "Modification"), to the Debtors' Joint Second Amended Plan of Reorganization (the "Plan") (Doc. No. 198) filed on November 18, 2024. All terms not altered by the Modification shall remain as set forth in the Plan.

**II.    ARTICLE II – DEFINITIONS**

38.    **Effective Date** means a date fifteen (15) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided*, *however*, that the Effective Date shall not occur until the Debtors file the notice called for under the Plan with the Bankruptcy Court, and such notice shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the

event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the fifteenth (15th) day after the entry of the Confirmation Order provided that the notice called for under the Plan has been filed by the Debtors

## V.    ARTICLE V – TREATMENT OF CLAIMS AND INTERESTS

There are thirty one (31) Classes of Claims that are Impaired and one (1) Class of Interests that is Impaired. Treatment for these classes is as follows:

### A.    Secured Claims

1.    Class 1 – Secured Claim of U.S. Bank Trust Company, N.A.
(CPH Claim 24)

Class 1 consists of the Allowed Secured Claim of U.S. Bank based on various prepetition loan and bond documents which form the basis of several bond series issued by the CDD. The Claim as to Class 1 was filed in the amount of $8,357,742.83. The Class 1 Claim is secured by substantially all the real property owned by Debtors and each SPE.

In full satisfaction of the Allowed Class 1 Claim, the Class Holder shall retain its Liens and be paid pursuant to the draft Forbearance Agreement attached hereto as Exhibit 1. The parties are still finalizing some of the terms of the forbearance agreement and, in the event of conflict, the final executed forbearance agreement shall control.

The Bonds and related financing documents will not otherwise be modified. Debtors and Class 1 Claimants are actively working to finalize the draft agreement and will file an executed document when available.

The Allowed Class 1 Claim shall be paid from the Debtors' operational revenue and the PSA Contributions. Class 1 is Impaired.

2.       Class 2 – Secured Claim of U.S. Bank Trust Company, N.A.
(CPH2 Claim 7)

Class 2 consists of the Allowed Secured Claim of U.S. Bank based on various prepetition loan and bond documents which form the basis of several bond series issued by the CDD. The Claim as to Class 2 was filed in the amount of $4,318,914.46. The Class 2 Claim is secured by substantially all the real property owned by Debtors and each SPE.

In full satisfaction of the Allowed Class 2 Claim, the Class Holder shall retain its Liens and be paid pursuant to the draft Forbearance Agreement attached hereto as Exhibit 1.  The parties are still finalizing some of the terms of the forbearance agreement and, in the event of conflict, the final executed forbearance agreement shall control.

The Bonds and related financing documents will not otherwise be modified. Debtors and Class 2 Claimants are actively working to finalize the draft agreement and will file an executed document when available.

The Allowed Class 2 Claim shall be paid from the Debtors' operational revenue and the PSA Contributions. Class 2 is Impaired.

4.       Class 4 – Secured Claim of Mainstreet Community Bank (Loan #4385527/CPH Claim 17 and CPH Claim 2)

Class 4 consists of the Allowed Secured Claim of Mainstreet based on various loan documents. The Class 4 Claim as to Class 4 was filed in the amount of $6,904,867.19.

In full satisfaction of the Allowed Class 4 Claim, the Holder shall be paid interest only, at the non-default contract rate, from the Effective Date through September 2025 and, thereafter, the Holder shall receive monthly payments of principal and interest based on a twenty-five (25) year amortization until maturity. Additionally, semi-annual principal payments shall be due starting in April 2026, and every six (6) months thereafter. The first two such payments

shall be in the amount of $50,000 each. Thereafter, each such payment shall be in the amount of $250,000 each. All outstanding pre-petition late fees will be forgiven upon repayment without further default. All unpaid interest, at the non-default rate, accruing prior to the Effective Date shall be included in the Allowed Class 4 Claim. Holder shall be given a lien on any net sales or refinancing proceeds from the Bass Pro Shops property. The Class 4 Claim shall mature in October, 2034. Allowed Class 4 Claim shall be paid from the Debtors' funds available and the PSA Contributions. Class 4 is Impaired.

      6.      <u>Class 6 – Secured Claim of Vystar Credit Union (CPH Claim 22)</u>

Class 6 consists of the Allowed Secured Claim of Vystar Credit Union ("Vystar") based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as the 5001 Office Building. The Claim related to Class 6 was filed in the amount of $14,663,991.90.  Class 6 is Impaired. As of February 3, 2025, the amounts due pursuant to the Claim related to Class 7 is $14,304,503.18.

In full satisfaction of the Allowed Class 6 Claim, the Holder shall retain its Liens and, shall be paid in accordance with that certain Forbearance Agreement dated December 31, 2023, as amended by that certain First Amendment to Forbearance Agreement dated February 3, 2025 (collectively, the "VyStar Forbearance Agreement"), a copy of which is attached hereto as <u>Exhibit "2"</u>. The Allowed Secured Claim of Class 6 is referred to in the VyStar Forbearance Agreement as "Loan 1" and shall be paid from operational revenue of the SPE and the PSA Contributions. Class 6 is Impaired.

      7.      <u>Class 7 – Secured Claim of Vystar Credit Union (CPH Claim 6 and CPH2 Claim 5)</u>

Class 7 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property

leased to Regal Cinemas. The Claim related to Class 7 was filed in the amount of $8,911,077.32. As of February 7, 2025, the amounts due pursuant to the Claim related to Class 7 is $8,727,152.27.

In full satisfaction of the Class 7 Claim, the Holder shall retain its Liens and, shall be paid in accordance with the Vystar Forbearance Agreement. The Allowed Secured Claim of Class 7 is referred to in the Vystar Forbearance Agreement as Loan 2 and shall be paid from operational revenue of the SPE and the PSA Contributions. Class 7 is Impaired.

8.    Class 8 – Secured Claim of Vystar Credit Union (CPH Claim 7)

Class 8 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property leased to Millers Ale House. The Claim related to Class 8 was filed in the amount of $3,336,613.78. As of February 7, 2025, the amounts due pursuant to the Claim related to Class 8 is $3,250,475.41.

In full satisfaction of the Class 8 Claim, the Holder shall retain its Liens and, shall be paid in accordance with the VyStar Forbearance Agreement. The Allowed Secured Claim of Class 8 is referred to in the VyStar Forbearance Agreement as Loan 3 and shall be paid from operational revenue of the SPE and the PSA Contributions. Class 8 is Impaired.

9.    Class 9 – Secured Claim of Vystar Credit Union (CPH Claim 8 and SHD Claim 3)

Class 9 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as City Walk Phase 1. The Claim related to Class 9 was filed in the amount of

$16,138,837.46. As of February 7, 2025, the amounts due pursuant to the Claim related to Class 9 is $16,320,825.70.

In full satisfaction of the Class 9 Claim, the Holder shall retain its Liens and, shall be paid in accordance with the VyStar Forbearance Agreement. The Allowed Secured Claim of Class 9 is referred to in the VyStar Forbearance Agreement as Loan 4 and shall be paid from operational revenue of the SPE and the PSA Contributions. Class 9 is Impaired.

10.    Class 10 – Secured Claim of Vystar Credit Union (CPH2 Claim 6)

Class 10 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as the Shops at Celebration. The Claim related to Class 10 was filed in the amount of $5,520,563.40. As of February 7, 2025, the amounts due pursuant to the Claim related to Class 10 is $5,366,052.24.

In full satisfaction of the Class 10 Claim, the Holder shall retain its Liens and shall, be paid in accordance with the VyStar Forbearance Agreement. The Allowed Secured Claim of Class 10 is referred in the VyStar Forbearance Agreement as Loan 5 and shall be paid from operational revenue of the SPE and the PSA Contributions. Class 10 is Impaired.

11.    Class 11 – Secured Claims of Synartis Income Fund, LLC and Catalyst Synartis CP Master 4A-2023, LLC (CPH Claim 33 and CPH2 Claim 15)

Class 11 consists of the Secured Claims of Synartis Income Fund, LLC and Catalyst Synartis CP Master 4A-2023, LLC based on various loan documents. The Secured Claims related to Class 11 were filed in the amount of $12,100,000.00 together with all interest, fees, costs, expenses, and charges due under the various loan documents related to Class 11.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (collectively, the "Synartis Lenders"), the Synartis Lenders will have an Allowed

Secured Claim in the amount of (i) $42,782,391.66, which amount includes all principal due and owing under the loan documents for Classes 11 through 16 and accrued and unpaid interest at the contract rate and the default rate and the accrued rate component under the loan documents for Classes 11 through 16, in each case through and including March 31, 2025, plus (ii) interest accrued under all of the loan documents for Classes 11 through 16 at the contract rate and the default rate and the accrued rate component for the period from April 1, 2025 through and including the day immediately preceding the Effective Date (collectively, the "Synartis Allowed Secured Claim").  In full satisfaction of the Synartis Allowed Secured Claim, the Synartis Lenders will receive Plan Payments pursuant to a settlement agreement currently being finalized by the Synartis Lenders, the Debtors, Dyrkolbotn and Shively (the "Synartis Settlement Agreement"). The principal terms of the Synartis Settlement Agreement as to the Synartis Allowed Secured Claim under Classes 11 through 16 include, but are not limited to, the following:

> (i)    the Synartis Allowed Secured Claim and interest accrued thereon as described below are referred to, collectively, as the "Synartis Settlement Amount";

> (ii)    the Synartis Settlement Amount will be paid as described below from the Debtors' operational revenues and the PSA Contributions;

> (iii)    each of the Debtors, the SPEs listed in the Synartis Settlement Agreement, Dyrkolbotn, and Shively and her personal trust (collectively, the "Synartis Obligor Parties") shall be jointly and severally liable for all Plan Payments on the Synartis Settlement Amount due to the Synartis Lenders;

(iv)    interest on the unpaid balance of the Synartis Allowed Secured Claim will accrue commencing on the Effective Date at an annual rate equal to fourteen percent (14%) (the "Interest Rate").  Upon the occurrence of an Event of Default (as defined in the Synartis Settlement Agreement), the entire unpaid balance of the Synartis Settlement Amount shall automatically bear an annual interest rate equal to the Interest Rate plus three percent (3%);

(v)    the Synartis Obligor Parties shall make a lump sum cash payment of $2,500,000.00 to the Synartis Lenders on the Effective Date, to be applied to the Synartis Settlement Amount;

(vi)    the Synartis Obligor Parties shall make four annual cash payments of $5,625,000.00 to the Synartis Lenders on July 31, 2026, July 31, 2027, July 31, 2028, and July 31, 2029, to be applied to the Synartis Settlement Amount;

(vii)    the Synartis Obligor Parties shall pay the remaining balance of the Synartis Settlement Amount on the five (5) year anniversary of the Effective Date;

(viii)    in addition to the lump sum payments described above, the Synartis Obligor Parties shall make sixty (60) monthly payments of the Synartis Settlement Amount (the "Monthly Payments") to the Synartis Lenders, with the first Monthly Payment to be made on the Effective Date and fifty-nine (59) subsequent Monthly Payments to be made on the first day of each calendar month thereafter (the first such Monthly Payment after the

9

Effective Date to be due on May 1, 2025). The first twelve (12) Monthly Payments will be interest only and the Monthly Payments for the next forty-eight (48) months will consist of principal and interest based on a thirty (30) year amortization;

(ix)    the Synartis Obligor Parties shall be required to make mandatory prepayments of the Synartis Settlement Amount upon the occurrence of certain events as described in the Synartis Settlement Agreement;

(x)    the Synartis Obligor Parties will have the right to prepay the Synartis Settlement Amount without premium or penalty;

(xi)    the total legal fees and costs of the Synartis Lenders as of the Effective Date will be in addition to the Synartis Settlement Amount and, at the option of the Synartis Obligor Parties, can be paid in full on the Effective Date or over a five (5) year period at an annual rate of interest equal to fourteen percent (14%);

(xii)    within ten (10) days following the closing of the settlement, the applicable parties in each lawsuit filed by Synartis will execute and/or file a joint motion and stipulation to dismiss such lawsuit without prejudice in accordance with the terms of the Synartis Settlement Agreement;

(xiii)    the Synartis Settlement Agreement contains certain defaults that, if not cured by the applicable cure period, will become an Event of Default and entitle the Synartis Lenders to exercise all of their rights and remedies under the Synartis Settlement Agreement;

(xiv)   the Synartis Settlement Agreement contains agreed remedies to the Synartis Lenders upon the occurrence of an Event of Default including obtaining an immediate judgment against all of the Synartis Obligor Parties (other than the Debtors);

(xv)   the Synartis Settlement Agreement contains stipulations by the Synartis Obligor Parties to the Synartis Lenders to reaffirm the collateral for their loans and the related guaranties of Shively and her personal trust and Dyrkolbotn; and

(xvi)   the Synartis Obligor Parties are providing full and final releases in favor of the Synartis Lenders as of the Effective Date.

To the extent of any inconsistency between the language in the Plan and in the Synartis Settlement Agreement, the language in the Synartis Settlement Agreement shall control. The Synartis Lenders reserve the right to request further modifications to the language in Class 11 based on the final terms of the Synartis Settlement Agreement.  Class 11 is Impaired.

12.    <u>Class 12 – Secured Claim of Synartis Capital Management, LLC</u>
       <u>(CPH Claim 30)</u>

Class 12 consists of the Secured Claims of Synartis Capital based on various loan documents.  The Secured Claims related to Class 12 were filed in the amount of $2,500,000.00 together with all interest, fees, costs, expenses, and charges due under the various loan documents related to Class 12.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (collectively, the "Synartis Lenders"), the Synartis Lenders will have an Allowed Secured Claim in the amount of (i) $42,782,391.66, which amount includes all principal due and owing under the loan documents for Classes 11 through 16 and accrued and unpaid interest at the

contract rate and the default rate and the accrued rate component under the loan documents for Classes 11 through 16, in each case through and including March 31, 2025, plus (ii) interest accrued under all of the loan documents for Classes 11 through 16 at the contract rate and the default rate and the accrued rate component for the period from April 1, 2025 through and including the day immediately preceding the Effective Date (collectively, the "Synartis Allowed Secured Claim").  In full satisfaction of the Synartis Allowed Secured Claim, the Synartis Lenders will receive Plan Payments pursuant to a settlement agreement currently being finalized by the Synartis Lenders, the Debtors, Dyrkolbotn and Shively (the "Synartis Settlement Agreement"). The principal terms of the Synartis Settlement Agreement as to the Synartis Allowed Secured Claim under Classes 11 through 16 include, but are not limited to, the following:

(i)      the Synartis Allowed Secured Claim and interest accrued thereon as described below are referred to, collectively, as the "Synartis Settlement Amount";

(ii)     the Synartis Settlement Amount will be paid as described below from the Debtors' operational revenues and the PSA Contributions;

(iii)    each of the Debtors, the SPEs listed in the Synartis Settlement Agreement, Dyrkolbotn, and Shively and her personal trust (collectively, the "Synartis Obligor Parties") shall be jointly and severally liable for all Plan Payments on the Synartis Settlement Amount due to the Synartis Lenders;

(iv)     interest on the unpaid balance of the Synartis Allowed Secured Claim will accrue commencing on the Effective Date at an annual rate equal to fourteen percent (14%) (the "Interest Rate").  Upon the occurrence of an

Event of Default (as defined in the Synartis Settlement Agreement), the entire unpaid balance of the Synartis Settlement Amount shall automatically bear an annual interest rate equal to the Interest Rate plus three percent (3%);

(v)      the Synartis Obligor Parties shall make a lump sum cash payment of $2,500,000.00 to the Synartis Lenders on the Effective Date, to be applied to the Synartis Settlement Amount;

(vi)     the Synartis Obligor Parties shall make four annual cash payments of $5,625,000.00 to the Synartis Lenders on July 31, 2026, July 31, 2027, July 31, 2028, and July 31, 2029, to be applied to the Synartis Settlement Amount;

(vii)    the Synartis Obligor Parties shall pay the remaining balance of the Synartis Settlement Amount on the five (5) year anniversary of the Effective Date;

(viii)   in addition to the lump sum payments described above, the Synartis Obligor Parties shall make sixty (60) monthly payments of the Synartis Settlement Amount (the "Monthly Payments") to the Synartis Lenders, with the first Monthly Payment to be made on the Effective Date and fifty-nine (59) subsequent Monthly Payments to be made on the first day of each calendar month thereafter (the first such Monthly Payment after the Effective Date to be due on May 1, 2025).  The first twelve (12) Monthly Payments will be interest only and the Monthly Payments for the next forty-

eight (48) months will consist of principal and interest based on a thirty (30) year amortization;

(ix)    the Synartis Obligor Parties shall be required to make mandatory prepayments of the Synartis Settlement Amount upon the occurrence of certain events as described in the Synartis Settlement Agreement;

(x)    the Synartis Obligor Parties will have the right to prepay the Synartis Settlement Amount without premium or penalty;

(xi)    the total legal fees and costs of the Synartis Lenders as of the Effective Date will be in addition to the Synartis Settlement Amount and, at the option of the Synartis Obligor Parties, can be paid in full on the Effective Date or over a five (5) year period at an annual rate of interest equal to fourteen percent (14%);

(xii)    within ten (10) days following the closing of the settlement, the applicable parties in each lawsuit filed by Synartis will execute and/or file a joint motion and stipulation to dismiss such lawsuit without prejudice in accordance with the terms of the Synartis Settlement Agreement;

(xiii)    the Synartis Settlement Agreement contains certain defaults that, if not cured by the applicable cure period, will become an Event of Default and entitle the Synartis Lenders to exercise all of their rights and remedies under the Synartis Settlement Agreement;

(xiv)    the Synartis Settlement Agreement contains agreed remedies to the Synartis Lenders upon the occurrence of an Event of Default including

obtaining an immediate judgment against all of the Synartis Obligor Parties (other than the Debtors);

(xv)    the Synartis Settlement Agreement contains stipulations by the Synartis Obligor Parties to the Synartis Lenders to reaffirm the collateral for their loans and the related guaranties of Shively and her personal trust and Dyrkolbotn; and

(xvi)    the Synartis Obligor Parties are providing full and final releases in favor of the Synartis Lenders as of the Effective Date.

To the extent of any inconsistency between the language in the Plan and in the Synartis Settlement Agreement, the language in the Synartis Settlement Agreement shall control.  The Synartis Lenders reserve the right to request further modifications to the language in Class 12 based on the final terms of the Synartis Settlement Agreement.  Class 12 is Impaired.

13.    <u>Class 13 – Secured Claim of Synartis Capital Management, LLC (CPH Claim 32)</u>

Class 13 consists of the Secured Claims of Synartis Capital based on various loan documents.  The Secured Claims related to Class 13 were filed in the amount of $6,890,778.00 together with all interest, fees, costs, expenses, and charges due under the various loan documents related to Class 13.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (collectively, the "Synartis Lenders"), the Synartis Lenders will have an Allowed Secured Claim in the amount of (i) $42,782,391.66, which amount includes all principal due and owing under the loan documents for Classes 11 through 16 and accrued and unpaid interest at the contract rate and the default rate and the accrued rate component under the loan documents for Classes 11 through 16, in each case through and including March 31, 2025, <u>plus</u> (ii) interest

accrued under all of the loan documents for Classes 11 through 16 at the contract rate and the default rate and the accrued rate component for the period from April 1, 2025 through and including the day immediately preceding the Effective Date (collectively, the "Synartis Allowed Secured Claim"). In full satisfaction of the Synartis Allowed Secured Claim, the Synartis Lenders will receive Plan Payments pursuant to a settlement agreement currently being finalized by the Synartis Lenders, the Debtors, Dyrkolbotn and Shively (the "Synartis Settlement Agreement"). The principal terms of the Synartis Settlement Agreement as to the Synartis Allowed Secured Claim under Classes 11 through 16 include, but are not limited to, the following:

(i)      the Synartis Allowed Secured Claim and interest accrued thereon as described below are referred to, collectively, as the "Synartis Settlement Amount";

(ii)     the Synartis Settlement Amount will be paid as described below from the Debtors' operational revenues and the PSA Contributions;

(iii)    each of the Debtors, the SPEs listed in the Synartis Settlement Agreement, Dyrkolbotn, and Shively and her personal trust (collectively, the "Synartis Obligor Parties") shall be jointly and severally liable for all Plan Payments on the Synartis Settlement Amount due to the Synartis Lenders;

(iv)     interest on the unpaid balance of the Synartis Allowed Secured Claim will accrue commencing on the Effective Date at an annual rate equal to fourteen percent (14%) (the "Interest Rate"). Upon the occurrence of an Event of Default (as defined in the Synartis Settlement Agreement), the entire unpaid balance of the Synartis Settlement Amount shall automatically

bear an annual interest rate equal to the Interest Rate plus three percent (3%);

(v)      the Synartis Obligor Parties shall make a lump sum cash payment of $2,500,000.00 to the Synartis Lenders on the Effective Date, to be applied to the Synartis Settlement Amount;

(vi)     the Synartis Obligor Parties shall make four annual cash payments of $5,625,000.00 to the Synartis Lenders on July 31, 2026, July 31, 2027, July 31, 2028, and July 31, 2029, to be applied to the Synartis Settlement Amount;

(vii)    the Synartis Obligor Parties shall pay the remaining balance of the Synartis Settlement Amount on the five (5) year anniversary of the Effective Date;

(viii)   in addition to the lump sum payments described above, the Synartis Obligor Parties shall make sixty (60) monthly payments of the Synartis Settlement Amount (the "Monthly Payments") to the Synartis Lenders, with the first Monthly Payment to be made on the Effective Date and fifty-nine (59) subsequent Monthly Payments to be made on the first day of each calendar month thereafter (the first such Monthly Payment after the Effective Date to be due on May 1, 2025). The first twelve (12) Monthly Payments will be interest only and the Monthly Payments for the next forty-eight (48) months will consist of principal and interest based on a thirty (30) year amortization;

(ix)    the Synartis Obligor Parties shall be required to make mandatory prepayments of the Synartis Settlement Amount upon the occurrence of certain events as described in the Synartis Settlement Agreement;

(x)    the Synartis Obligor Parties will have the right to prepay the Synartis Settlement Amount without premium or penalty;

(xi)    the total legal fees and costs of the Synartis Lenders as of the Effective Date will be in addition to the Synartis Settlement Amount and, at the option of the Synartis Obligor Parties, can be paid in full on the Effective Date or over a five (5) year period at an annual rate of interest equal to fourteen percent (14%);

(xii)    within ten (10) days following the closing of the settlement, the applicable parties in each lawsuit filed by Synartis will execute and/or file a joint motion and stipulation to dismiss such lawsuit without prejudice in accordance with the terms of the Synartis Settlement Agreement;

(xiii)    the Synartis Settlement Agreement contains certain defaults that, if not cured by the applicable cure period, will become an Event of Default and entitle the Synartis Lenders to exercise all of their rights and remedies under the Synartis Settlement Agreement;

(xiv)    the Synartis Settlement Agreement contains agreed remedies to the Synartis Lenders upon the occurrence of an Event of Default including obtaining an immediate judgment against all of the Synartis Obligor Parties (other than the Debtors);

(xv)    the Synartis Settlement Agreement contains stipulations by the Synartis Obligor Parties to the Synartis Lenders to reaffirm the collateral for their loans and the related guaranties of Shively and her personal trust and Dyrkolbotn; and

(xvi)    the Synartis Obligor Parties are providing full and final releases in favor of the Synartis Lenders as of the Effective Date.

To the extent of any inconsistency between the language in the Plan and in the Synartis Settlement Agreement, the language in the Synartis Settlement Agreement shall control.  The Synartis Lenders reserve the right to request further modifications to the language in Class 13 based on the final terms of the Synartis Settlement Agreement.  Class 13 is Impaired.

14.    <u>Class 14 – Secured Claim of Catalyst Income Fund 2022-1A, LLC (CPH Claim 26)</u>

Class 14 consists of the Secured Claims of Catalyst Income Fund 2022-1A, LLC based on various loan documents.  The Secured Claims related to Class 14 were filed in the amount of $2,380,000.00 together with all interest, fees, costs, expenses, and charges due under the various loan documents related to Class 14.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (collectively, the "Synartis Lenders"), the Synartis Lenders will have an Allowed Secured Claim in the amount of (i) $42,782,391.66, which amount includes all principal due and owing under the loan documents for Classes 11 through 16 and accrued and unpaid interest at the contract rate and the default rate and the accrued rate component under the loan documents for Classes 11 through 16, in each case through and including March 31, 2025, <u>plus</u> (ii) interest accrued under all of the loan documents for Classes 11 through 16 at the contract rate and the default rate and the accrued rate component for the period from April 1, 2025 through and

including the day immediately preceding the Effective Date (collectively, the "Synartis Allowed Secured Claim"). In full satisfaction of the Synartis Allowed Secured Claim, the Synartis Lenders will receive Plan Payments pursuant to a settlement agreement currently being finalized by the Synartis Lenders, the Debtors, Dyrkolbotn and Shively (the "Synartis Settlement Agreement"). The principal terms of the Synartis Settlement Agreement as to the Synartis Allowed Secured Claim under Classes 11 through 16 include, but are not limited to, the following:

        (i)     the Synartis Allowed Secured Claim and interest accrued thereon as described below are referred to, collectively, as the "Synartis Settlement Amount";

        (ii)    the Synartis Settlement Amount will be paid as described below from the Debtors' operational revenues and the PSA Contributions;

        (iii)   each of the Debtors, the SPEs listed in the Synartis Settlement Agreement, Dyrkolbotn, and Shively and her personal trust (collectively, the "Synartis Obligor Parties") shall be jointly and severally liable for all Plan Payments on the Synartis Settlement Amount due to the Synartis Lenders;

        (iv)   interest on the unpaid balance of the Synartis Allowed Secured Claim will accrue commencing on the Effective Date at an annual rate equal to fourteen percent (14%) (the "Interest Rate"). Upon the occurrence of an Event of Default (as defined in the Synartis Settlement Agreement), the entire unpaid balance of the Synartis Settlement Amount shall automatically bear an annual interest rate equal to the Interest Rate plus three percent (3%);

(v)      the Synartis Obligor Parties shall make a lump sum cash payment of $2,500,000.00 to the Synartis Lenders on the Effective Date, to be applied to the Synartis Settlement Amount;

(vi)     the Synartis Obligor Parties shall make four annual cash payments of $5,625,000.00 to the Synartis Lenders on July 31, 2026, July 31, 2027, July 31, 2028, and July 31, 2029, to be applied to the Synartis Settlement Amount;

(vii)    the Synartis Obligor Parties shall pay the remaining balance of the Synartis Settlement Amount on the five (5) year anniversary of the Effective Date;

(viii)   in addition to the lump sum payments described above, the Synartis Obligor Parties shall make sixty (60) monthly payments of the Synartis Settlement Amount (the "Monthly Payments") to the Synartis Lenders, with the first Monthly Payment to be made on the Effective Date and fifty-nine (59) subsequent Monthly Payments to be made on the first day of each calendar month thereafter (the first such Monthly Payment after the Effective Date to be due on May 1, 2025).  The first twelve (12) Monthly Payments will be interest only and the Monthly Payments for the next forty-eight (48) months will consist of principal and interest based on a thirty (30) year amortization;

(ix)     the Synartis Obligor Parties shall be required to make mandatory prepayments of the Synartis Settlement Amount upon the occurrence of certain events as described in the Synartis Settlement Agreement;

(x)     the Synartis Obligor Parties will have the right to prepay the Synartis Settlement Amount without premium or penalty;

(xi)    the total legal fees and costs of the Synartis Lenders as of the Effective Date will be in addition to the Synartis Settlement Amount and, at the option of the Synartis Obligor Parties, can be paid in full on the Effective Date or over a five (5) year period at an annual rate of interest equal to fourteen percent (14%);

(xii)   within ten (10) days following the closing of the settlement, the applicable parties in each lawsuit filed by Synartis will execute and/or file a joint motion and stipulation to dismiss such lawsuit without prejudice in accordance with the terms of the Synartis Settlement Agreement;

(xiii)  the Synartis Settlement Agreement contains certain defaults that, if not cured by the applicable cure period, will become an Event of Default and entitle the Synartis Lenders to exercise all of their rights and remedies under the Synartis Settlement Agreement;

(xiv)   the Synartis Settlement Agreement contains agreed remedies to the Synartis Lenders upon the occurrence of an Event of Default including obtaining an immediate judgment against all of the Synartis Obligor Parties (other than the Debtors);

(xv)    the Synartis Settlement Agreement contains stipulations by the Synartis Obligor Parties to the Synartis Lenders to reaffirm the collateral for their loans and the related guaranties of Shively and her personal trust and Dyrkolbotn; and

(xvi)    the Synartis Obligor Parties are providing full and final releases in favor of the Synartis Lenders as of the Effective Date.

To the extent of any inconsistency between the language in the Plan and in the Synartis Settlement Agreement, the language in the Synartis Settlement Agreement shall control.  The Synartis Lenders reserve the right to request further modifications to the language in Class 14 based on the final terms of the Synartis Settlement Agreement.  Class 14 is Impaired.

15.    Class 15 – Secured Claim of Catalyst Synartis MF B Series Condo 3A-2023, LLC (CPH Claim 27)

Class 15 consists of the Secured Claims of Catalyst Synartis Condo based on various loan documents.  The Secured Claims related to Class 15 were filed in the amount of $4,935,000.00 together with all interest, fees, costs, expenses, and charges due under the various loan documents related to Class 15.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (collectively, the "Synartis Lenders"), the Synartis Lenders will have an Allowed Secured Claim in the amount of (i) $42,782,391.66, which amount includes all principal due and owing under the loan documents for Classes 11 through 16 and accrued and unpaid interest at the contract rate and the default rate and the accrued rate component under the loan documents for Classes 11 through 16, in each case through and including March 31, 2025, plus (ii) interest accrued under all of the loan documents for Classes 11 through 16 at the contract rate and the default rate and the accrued rate component for the period from April 1, 2025 through and including the day immediately preceding the Effective Date (collectively, the "Synartis Allowed Secured Claim").  In full satisfaction of the Synartis Allowed Secured Claim, the Synartis Lenders will receive Plan Payments pursuant to a settlement agreement currently being finalized by the Synartis Lenders, the Debtors, Dyrkolbotn and Shively (the "Synartis Settlement Agreement").

23

The principal terms of the Synartis Settlement Agreement as to the Synartis Allowed Secured Claim under Classes 11 through 16 include, but are not limited to, the following:

(i)      the Synartis Allowed Secured Claim and interest accrued thereon as described below are referred to, collectively, as the "Synartis Settlement Amount";

(ii)      the Synartis Settlement Amount will be paid as described below from the Debtors' operational revenues and the PSA Contributions;

(iii)      each of the Debtors, the SPEs listed in the Synartis Settlement Agreement, Dyrkolbotn, and Shively and her personal trust (collectively, the "Synartis Obligor Parties") shall be jointly and severally liable for all Plan Payments on the Synartis Settlement Amount due to the Synartis Lenders;

(iv)      interest on the unpaid balance of the Synartis Allowed Secured Claim will accrue commencing on the Effective Date at an annual rate equal to fourteen percent (14%) (the "Interest Rate").  Upon the occurrence of an Event of Default (as defined in the Synartis Settlement Agreement), the entire unpaid balance of the Synartis Settlement Amount shall automatically bear an annual interest rate equal to the Interest Rate plus three percent (3%);

(v)      the Synartis Obligor Parties shall make a lump sum cash payment of $2,500,000.00 to the Synartis Lenders on the Effective Date, to be applied to the Synartis Settlement Amount;

(vi)    the Synartis Obligor Parties shall make four annual cash payments of $5,625,000.00 to the Synartis Lenders on July 31, 2026, July 31, 2027, July 31, 2028, and July 31, 2029, to be applied to the Synartis Settlement Amount;

(vii)    the Synartis Obligor Parties shall pay the remaining balance of the Synartis Settlement Amount on the five (5) year anniversary of the Effective Date;

(viii)    in addition to the lump sum payments described above, the Synartis Obligor Parties shall make sixty (60) monthly payments of the Synartis Settlement Amount (the "Monthly Payments") to the Synartis Lenders, with the first Monthly Payment to be made on the Effective Date and fifty-nine (59) subsequent Monthly Payments to be made on the first day of each calendar month thereafter (the first such Monthly Payment after the Effective Date to be due on May 1, 2025.  The first twelve (12) Monthly Payments will be interest only and the Monthly Payments for the next forty-eight (48) months will consist of principal and interest based on a thirty (30) year amortization;

(ix)    the Synartis Obligor Parties shall be required to make mandatory prepayments of the Synartis Settlement Amount upon the occurrence of certain events as described in the Synartis Settlement Agreement;

(x)    the Synartis Obligor Parties will have the right to prepay the Synartis Settlement Amount without premium or penalty;

25

(xi)    the total legal fees and costs of the Synartis Lenders as of the Effective Date will be in addition to the Synartis Settlement Amount and, at the option of the Synartis Obligor Parties, can be paid in full on the Effective Date or over a five (5) year period at an annual rate of interest equal to fourteen percent (14%);

(xii)    within ten (10) days following the closing of the settlement, the applicable parties in each lawsuit filed by Synartis will execute and/or file a joint motion and stipulation to dismiss such lawsuit without prejudice in accordance with the terms of the Synartis Settlement Agreement;

(xiii)    the Synartis Settlement Agreement contains certain defaults that, if not cured by the applicable cure period, will become an Event of Default and entitle the Synartis Lenders to exercise all of their rights and remedies under the Synartis Settlement Agreement;

(xiv)    the Synartis Settlement Agreement contains agreed remedies to the Synartis Lenders upon the occurrence of an Event of Default including obtaining an immediate judgment against all of the Synartis Obligor Parties (other than the Debtors);

(xv)    the Synartis Settlement Agreement contains stipulations by the Synartis Obligor Parties to the Synartis Lenders to reaffirm the collateral for their loans and the related guaranties of Shively and her personal trust and Dyrkolbotn; and

(xvi)    the Synartis Obligor Parties are providing full and final releases in favor of the Synartis Lenders as of the Effective Date.

To the extent of any inconsistency between the language in the Plan and in the Synartis Settlement Agreement, the language in the Synartis Settlement Agreement shall control.  The Synartis Lenders reserve the right to request further modifications to the language in Class 15 based on the final terms of the Synartis Settlement Agreement.  Class 15 is Impaired.

16.   <u>Class 16 – Secured Claim of Catalyst Synartis MF B Series MF 2A-2022, LLC (CPH Claim 28)</u>

Class 16 consists of the Secured Claims of Catalyst Synartis B Series based on various loan documents.  The Secured Claims related to Class 16 were filed in the amount of $5,300,000.00 together with all interest, fees, costs, expenses, and charges due under the various loan documents related to Class 16.

In full satisfaction of all amounts owed to the Holders of Claims in Classes 11 through 16 (collectively, the "Synartis Lenders"), the Synartis Lenders will have an Allowed Secured Claim in the amount of (i) $42,782,391.66, which amount includes all principal due and owing under the loan documents for Classes 11 through 16 and accrued and unpaid interest at the contract rate and the default rate and the accrued rate component under the loan documents for Classes 11 through 16, in each case through and including March 31, 2025, <u>plus</u> (ii) interest accrued under all of the loan documents for Classes 11 through 16 at the contract rate and the default rate and the accrued rate component for the period from April 1, 2025 through and including the day immediately preceding the Effective Date (collectively, the "Synartis Allowed Secured Claim").  In full satisfaction of the Synartis Allowed Secured Claim, the Synartis Lenders will receive Plan Payments pursuant to a settlement agreement currently being finalized by the Synartis Lenders, the Debtors, Dyrkolbotn and Shively (the "Synartis Settlement Agreement").  The principal terms of the Synartis Settlement Agreement as to the Synartis Allowed Secured Claim under Classes 11 through 16 include, but are not limited to, the following:

(i)      the Synartis Allowed Secured Claim and interest accrued thereon as described below are referred to, collectively, as the "Synartis Settlement Amount";

(ii)     the Synartis Settlement Amount will be paid as described below from the Debtors' operational revenues and the PSA Contributions;

(iii)    each of the Debtors, the SPEs listed in the Synartis Settlement Agreement, Dyrkolbotn, and Shively and her personal trust (collectively, the "Synartis Obligor Parties") shall be jointly and severally liable for all Plan Payments on the Synartis Settlement Amount due to the Synartis Lenders;

(iv)     interest on the unpaid balance of the Synartis Allowed Secured Claim will accrue commencing on the Effective Date at an annual rate equal to fourteen percent (14%) (the "Interest Rate").  Upon the occurrence of an Event of Default (as defined in the Synartis Settlement Agreement), the entire unpaid balance of the Synartis Settlement Amount shall automatically bear an annual interest rate equal to the Interest Rate plus three percent (3%);

(v)      the Synartis Obligor Parties shall make a lump sum cash payment of $2,500,000.00 to the Synartis Lenders on the Effective Date, to be applied to the Synartis Settlement Amount;

(vi)     the Synartis Obligor Parties shall make four annual cash payments of $5,625,000.00 to the Synartis Lenders on July 31, 2026, July 31, 2027,

July 31, 2028, and July 31, 2029, to be applied to the Synartis Settlement Amount;

(vii)    the Synartis Obligor Parties shall pay the remaining balance of the Synartis Settlement Amount on the five (5) year anniversary of the Effective Date;

(viii)    in addition to the lump sum payments described above, the Synartis Obligor Parties shall make sixty (60) monthly payments of the Synartis Settlement Amount (the "Monthly Payments") to the Synartis Lenders, with the first Monthly Payment to be made on the Effective Date and fifty-nine (59) subsequent Monthly Payments to be made on the first day of each calendar month thereafter (the first such Monthly Payment after the Effective Date to be due on May 1, 2025).  The first twelve (12) Monthly Payments will be interest only and the Monthly Payments for the next forty-eight (48) months will consist of principal and interest based on a thirty (30) year amortization;

(ix)    the Synartis Obligor Parties shall be required to make mandatory prepayments of the Synartis Settlement Amount upon the occurrence of certain events as described in the Synartis Settlement Agreement;

(x)    the Synartis Obligor Parties will have the right to prepay the Synartis Settlement Amount without premium or penalty;

(xi)    the total legal fees and costs of the Synartis Lenders as of the Effective Date will be in addition to the Synartis Settlement Amount and, at the option of the Synartis Obligor Parties, can be paid in full on the

Effective Date or over a five (5) year period at an annual rate of interest equal to fourteen percent (14%);

(xii)    within ten (10) days following the closing of the settlement, the applicable parties in each lawsuit filed by Synartis will execute and/or file a joint motion and stipulation to dismiss such lawsuit without prejudice in accordance with the terms of the Synartis Settlement Agreement;

(xiii)    the Synartis Settlement Agreement contains certain defaults that, if not cured by the applicable cure period, will become an Event of Default and entitle the Synartis Lenders to exercise all of their rights and remedies under the Synartis Settlement Agreement;

(xiv)    the Synartis Settlement Agreement contains agreed remedies to the Synartis Lenders upon the occurrence of an Event of Default including obtaining an immediate judgment against all of the Synartis Obligor Parties (other than the Debtors);

(xv)    the Synartis Settlement Agreement contains stipulations by the Synartis Obligor Parties to the Synartis Lenders to reaffirm the collateral for their loans and the related guaranties of Shively and her personal trust and Dyrkolbotn; and

(xvi)    the Synartis Obligor Parties are providing full and final releases in favor of the Synartis Lenders as of the Effective Date.

To the extent of any inconsistency between the language in the Plan and in the Synartis Settlement Agreement, the language in the Synartis Settlement Agreement shall

control.  The Synartis Lenders reserve the right to request further modifications to the language in Class 16 based on the final terms of the Synartis Settlement Agreement.  Class 16 is Impaired.

17.    <u>Class 17 – Secured Claims of ARCISCAP Celebration Pointe Investment (B.V.I.) Limited (CPH Claim 15, 20, 21 and 23)</u>

Class 17 consists of the Allowed Secured Claims of ARCISCAP based on various loan documents.   The Claims related to Class 17 were filed in the amount of $44,054,216.55.

In full satisfaction of the Class 17 Claims, the Holder shall have an Allowed Claim and be paid pursuant to the executed Settlement Agreement attached hereto as <u>Exhibit 3</u> (the "Arcis Agreement").  The Plan and any Order confirming the Plan, (the "Confirmation Order") shall fully incorporate the Arcis Agreement and to the extent any provision or term of the Arcis Agreement is contrary to any provision or term of the Plan or the Confirmation Order, the Arcis Agreement shall control. The Confirmation Order shall specify that the Arcis Agreement controls the treatment of ARCIS. The source of payment for Class 17 shall be from the PSA Contributions.  Class 17 is Impaired.

21.    <u>Class 21 – Secured Claim of Kenneth R. McGurn and Linda C. McGurn</u>

Class 21 consists of the Allowed Secured Claims of McGurn based on various loan documents and pledges. The Class 21 Claim is in the amount of $8,400,000.

In full satisfaction of the Class 21 Claim, the Holder will retain its lien and be paid in full from the sale of the asset subject to the Class 21 Claim. The sale will close by September 30, 2025. The Allowed Secured Claims shall be paid from the sale noted herein. Class 21 is Impaired.

23.    <u>Class 23 – Unsecured Claim of Gainesville PropCo LLC</u>
       <u>(CPH Claim 25 and CPH2 Claim 9)</u>

Class 23 consists of the Unsecured Claims of Gainesville PropCo based on amounts owed under a purchase and sale agreement. The Claims related to Class 23 were filed in the amount of $372,529.88.

In full satisfaction of the Class 23 Claim, the Holder shall have an Allowed Unsecured Claim in Class 30. Class 23 is Impaired.

24.    <u>Class 24 – Secured Claims of FDOT's State Infrastructure Bank ("SIB")</u>
       <u>(CPH Claim 46 and 47)</u>

Class 24 consists of the Allowed Secured Claims of SIB based on various loan documents including a credit agreement, security agreement, mortgages, and pledges. The Claims related to Class 24 were filed in the amount of $24,163,491.46.

In full satisfaction of the Class 24 Claim, the Holder shall retain its liens and rights and paid pursuant to the respective contract terms related to interest, timing of payment (October), and maturity; however, the parties have agreed to the following modifications:

(i)    The first note that is due to be paid off in 2031 shall be brought current as of the Effective Date of the plan.  The Debtor is now behind on two payments on this note.  The FDOT is willing to have $900k of the $1.9M escrow be used for a catch up.  In addition, the existing PUF Funds held by the debtor can be used for this payment, and the balance must come from the Debtors/guarantors;

(ii)    The amounts currently due and owing on the second note can be capitalized and rolled into the principal on the second note;

(iii)    Beginning in 2025, the Class 24 Claim will receive interest only payments on both notes for three years on the regularly scheduled payment dates and

thereafter resume payments on the notes such that neither of the maturity dates on the loans is extended;

(iv)    It appears that interest only payments will be close to what can be anticipated to be collected in PUF Funds on an annual basis; however, if there is an excess in PUF funds, those will be applied to the principal of the first note.  If, during the three year interest only period, there is a shortfall the Debtors//Guarantors are obligated to make up the difference as part of the regularly scheduled payment;

(v)    Attorney's fees due the Class 24 Claim shall be paid as part of the bringing the first note current as of the Effective Date of the plan;

(vi)    Remaining escrow funds and the existing letter of credit shall remain in place as part of the Class 24 collateral and all PUF Funds must be escrowed in a separate account;

(vii)    PUF Funds shall begin to be collected on commercial real estate leases as part of the settlement on or before the Effective Date;

(viii)    The existing contract rates of interest will remain in place;

(ix)    SIB agrees to forgo any adverse actions against Ms. Shively as long as she remains living and the performance of the loans under this settlement remain in full compliance with the terms of the settlement;

(x)    The Debtors and Ms Shively will reaffirm the terms of the existing loan documentation with the Class 24 as further modified in the Plan; and

(xi)    As a material term to the plan and the underlying agreements, upon the Effective Date and thereafter, the Debtors shall timely perform all mandated reporting called for under the FDOT loan agreements until the loans are satisfied.

The Allowed Secured Claims shall be paid from the Debtors' funds operational revenue and the PSA Contributions. Class 24 is Impaired.

    1.    <u>Class 30 – General Allowed Unsecured Claims</u>

There are no substantive changes to this Class; however, the Class was incorrectly listed in Article V as Class 29 and the correct title should be Class 30.

**B.    Unsecured Claims.**

    2.    <u>Class 31 – Allowed Insiders and Affiliates' Claims</u>

Class 31 consists of the Allowed Claims of Insiders and Affiliates, including but not limited to, SHD Real Estate LLC, SHD Vue Investments LLC, Viking Student Housing Partners LLC, GNV RE Fund 3 LLC, SDPS Real Estate Investments II LLC, CP City Place Partners LLC, Viking Property Management LLC, Viking Companies LLC, Viking Construction Company of Florida LLC, SHD Management LLC, SDPS Real Estate Investments  LLC, SDPS Real Estate Investments IV LLC, Svein Dyrkolbotn and/or related entities, Patricia A. Shively and Patricia Ann Shively Trust. The members of this Class have executed the Plan Support Agreement (the "PSA") and amended Operating Agreement (the "OA") to reflect their treatment under the Plan.   The PSA and OA reflect the conversion and reallocation of equity amongst the parties, the funding obligations of the parties and payment of certain claims of the parties and related entities and/or affiliates, through and including the Debtors related Special Purpose Entities ("SPEs") and affiliated non-debtor entities. The agreements set forth in the PSA and the OA shall be in full satisfaction of the Class 31 Claims. All of the funding made by the Shively Parties during the pendency of these Chapter 11 Cases, which could be deemed administrative expense claims shall be included in the claims being converted to the reallocated equity interests as set forth in the PSA and the OA.   The Viking Companies and affiliates shall receive payments on the Effective Date

for amounts owed to non-insider third parties for services and goods provided and for which the Viking Companies have been accruing and for payments to the Viking Companies in satisfaction of its claims and as consideration for the reallocation of the equity as set forth in the PSA and OA. The parties treatment as set forth herein is conditioned upon confirmation of the Plan, funding of the Effective Date payments as set forth in the PSA, the Plan Model and consistent with the OA. Under the PSA and the OA, the Shively Parties shall hold 85% of the reallocated membership interests/equity, the Viking Companies/Svein Dyrkolbotn shall hold 10.5% of the reallocated membership interests/equity and ARCIS shall hold 4.5% of the reallocated membership interests/equity, subject to the terms of the Plan, the PSA, and OA.

**B.    Equity Interests.**

1.    Class 32 – Equity Ownership Interests

There are no substantive changes to this Class; however, the Class was incorrectly listed in Article V as Class 31 and the correct title should be Class 32.

**VI.    ARTICLE VI - UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

**A.    Leases and Executory Contracts**

To the extent Debtors reject any executory contracts or unexpired leases prior to the Confirmation Hearing, any party asserting a Claim, pursuant to section 365 of the Bankruptcy Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. The Debtors shall have through and including the Confirmation Hearing within which to assume or reject any unexpired lease or executory contract. To the extent the Debtors does not file a motion to reject prior to the Confirmation Hearing, any such executory contract or lease will be deemed assumed with any required cure to occur over six (6) months from the Effective Date.

**RESPECTFULLY SUBMITTED** this 11th day of March 2025.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801
Telephone: 407-337-2060
Facsimile: 407-337-2050
*Attorneys for the Debtors*