**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**
**www.flnb.uscourts.gov**

In re:                                                    CASE NO.: 24-10056-KKS
                                                          CASE NO.: 24-10057-KKS
CELEBRATION POINTE HOLDINGS, LLC          CASE NO.: 24-10058-KKS
CELEBRATION POINTE HOLDINGS II, LLC
SHD-CELEBRATION POINTE, LLC               CHAPTER 11

          Debtors.                       *Joint Administration under*
                                          *Case No. 24-10056-KKS*

_____/


**DISCLOSURE STATEMENT, FOR THE JOINT PLAN OF LIQUIDATION,**
**PURSUANT TO 11 U.S.C. § 1125 FOR CELEBRATION POINTE HOLDINGS, LLC, et al.**


COUNSEL FOR THE DEBTORS

R. SCOTT SHUKER, ESQ.
MARIANE L. DORRIS, ESQ.
LAUREN L. STRICKER, ESQ.
SHUKER & DORRIS, P.A.
121 S. ORANGE AVENUE, SUITE 1120
ORLANDO, FLORIDA 32801


January 7, 2026

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**
**www.flnb.uscourts.gov**

| | |
|---|---|
| In re: | CASE NO.: 24-10056-KKS |
| | CASE NO.: 24-10057-KKS |
| **CELEBRATION POINTE HOLDINGS, LLC** | CASE NO.: 24-10058-KKS |
| **CELEBRATION POINTE HOLDINGS II, LLC** | |
| **SHD-CELEBRATION POINTE, LLC** | CHAPTER 11 |
| **Debtors.** | *Joint Administration under* |
| | *Case No. 24-10056-KKS* |

_____/

**DISCLOSURE STATEMENT, FOR THE JOINT PLAN OF LIQUIDATION,**
**PURSUANT TO 11 U.S.C. § 1125 FOR CELEBRATION POINTE HOLDINGS, LLC et al.**

## I.    ARTICLE I - INTRODUCTION

### A.    Disclosure Statement Introduction

This Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"). This Disclosure Statement is intended to provide adequate information to enable Holders[1] of Claims in the above-captioned bankruptcy cases (the "Bankruptcy Cases") to make an informed judgment about the Joint Plan of Liquidation (hereinafter the "Plan")[2] submitted by Celebration Pointe Holdings, LLC ("CPH"), Celebration Pointe Holdings II, LLC ("CPH2"), and SHD-Celebration Pointe, LLC ("SHD") (hereinafter referred to collectively as the "Debtors" or "Liquidating Trust"– where appropriate). The Debtors are soliciting votes to accept the Plan, the overall purpose of which is

---

[1] All capitalized terms shall have the meaning ascribed in Article II of the Plan or as defined herein.

[2] In the event of any inconsistency between this Disclosure Statement and the Plan, the Plan Controls.

to provide for the restructuring of the Debtors' liabilities in a manner designed to maximize recoveries to all stakeholders while providing for the Debtors to continue as a going concern.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.**

**NO REPRESENTATION CONCERNING THE DEBTORS IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE THAT ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AND DUE TO THE COMPLEXITY OF THE DEBTORS' FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF**

**ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

**B.     Overview of Plan.**

All Claims held against the Debtors shall be classified and treated pursuant to the terms of the Plan. The Plan contains thirty-two (32) separate classes of Claims and Interests. The Effective Date is defined more specifically in the Plan, but generally means the fifteenth (15th) day after entry of the Confirmation Order, provided said order is not stayed as of the fifteenth (15th) day.

All Claims held against the Debtors shall be classified and treated pursuant to the terms of the Plan. The Plan contains thirty two (32) separate classes of Claims and Interests. The Plan provides for payment of Allowed Secured Claims in Classes 1 through 29, through either the liquidation of real estate which is ultimately controlled by Debtors or from recoveries by the Liquidating Trust, all as outlined in Article V below.  In return for releases set forth herein, the Allowed Unsecured Claims of Insiders in Class 31 shall not receive any distribution under the Plan. Allowed General Unsecured Claims[3] in Class 30 shall be entitled to a pro rata distribution from the Liquidating Trust. In addition, the Plan further provides that the respective Holders of Allowed Administrative Claims and Holders of Allowed Priority Claims will be paid in full on the Effective Date from the Shively Contribution.  Holders of Allowed Priority Tax Claims will be paid from the Shively Contribution. The Allowed Interests in Class 32 will be extinguished.

---

[3] "Allowed General Unsecured Claim" is defined in the Plan, but for clarity here, it means an Allowed General Unsecured Claim (as defined in the Plan) but which excludes Claims of Insiders and Affiliates (defined below and in the Plan).

The Plan is premised on the Shively Contribution. Through the Shively Contribution: (a) mortgage holders will receive some satisfaction of deficiency claims; (b) the Liquidating Trust will be vested with funds to pursue Causes of Action; and (c) Ms. Shively will waive substantial Claims and interests. Without the Shively Contributions, the Debtors would be forced to file a motion to dismiss the case and much of the community would likely go dark resulting in substantially lower distributions and significant job losses. Debtors believe the Plan provides the best means currently available for their emergence from chapter 11 and the best recoveries possible for Holders of Claims and Interests, and thus strongly recommend Creditors vote to accept the Plan.

### C.    Voting and Impairment of Claims and Interests.

To the extent the legal, contractual, or equitable rights with respect to any Claim asserted against the Debtors are altered, modified, or changed by treatment proposed under the Plan, such Claim is considered "Impaired," and the Holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan ("Ballot") will be mailed along with the order approving this Disclosure Statement. You should use the Ballot that will be sent to you to cast your vote for or against the Plan. You may *not* cast Ballots or vote orally or by facsimile. Whether or not you vote, you will be bound by the terms and treatment set forth in the Plan if the Bankruptcy Court confirms the Plan. The Bankruptcy Court may disallow any vote accepting or rejecting the Plan if the vote is not cast in good faith.

**THE VOTE OF EACH CREDITOR WITH AN IMPAIRED CLAIM IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE <u>RECEIVED</u> AT THE ADDRESS(ES) AND BY THE DATE SET FORTH IN THE BALLOT.**

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail below, the

Bankruptcy Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court shall schedule a Confirmation Hearing to consider whether the Debtors have complied with those requirements.

The Bankruptcy Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes called "cramdown." As described in greater detail in this Disclosure Statement, the Debtors have expressly reserved the right to seek cramdown in the event all Impaired Classes do not vote in favor of the Plan.

## II.    ARTICLE II – BACKGROUND AND EVENTS LEADING TO BANKRUPTCY

### A.    General Background

The Debtors manage, own, or participate in a large mixed-use development project in Gainesville, Florida, known as Celebration Pointe (the "Project"). As described in more detail below, the Project site is adjacent to Interstate 75 and is accessible via Archer Road and a newly constructed bridge overpass. The Project is comprised of over 2,000,000 SF of retail, restaurant, office, and residential development. CPH is the main developer of the Project and was the original owner of the real estate. Some of the real estate parcels were later transferred or assigned to CPH2. SHD is the Manager of both CPH and CPH2 and is also manager of most of the affiliated special purpose entities that have been created as sub-projects were developed (individually, a "SPE" and collectively, the "SPEs"). All three of the Debtors are co-obligors on most (if not all) of the debt obligations owed to the largest creditors.

Additionally, the Debtors share common management and, in some instances, common ownership. The Debtors operate subject to certain management and organizational documents (collectively, the "Organizational Documents") by or between themselves, other non-debtor affiliates, or the SPEs which own completed subprojects or income-producing parcels with

the Project's long-term tenants. Although SHD is the Manager of both CPH and CPH2, the day-to-day operation of the companies are conducted via a management agreement with non-debtor, Viking Companies, LLC ("Viking"). Viking provides administrative, supervisory, and management services with respect to the operations of the Project as a whole, as well as the Debtors, other non-debtor affiliates, and separate entities which own or operate the income-producing subproject parcels. In return, Viking earns a management fee as set forth in various entity operating agreements.

The Project started with a vision and 225 acres at the northwest quadrant of Interstate 75 and Archer Road (SR 24). Ideally situated in the heart of Alachua County, the Project is designed to meet the retail and entertainment needs of the growing and affluent suburban neighborhoods on the West side of Interstate 75. The Project also targets the growing demand for a walkable, upscale urban housing environment on the 160 developable acres. The Project is the only large-scale development in Alachua County featuring almost a mile of frontage along Interstate 75, providing great visibility for retailers, and class A office tenants. With 700 acres of pristine conservation area along the western boundary of the development, the Project blends an exciting urban environment with the beautiful natural setting that makes Alachua County and Gainesville such desirable places to live.

Beginning in 2008 with the assemblage of multiple parcels of land, the journey to the groundbreaking lasted until 2013, when the clearing of land began. By the next year, infrastructure, including public and private areas, was well underway. By 2015, the main road into the Project, SW 45th Street from Archer Road, SW 43rd Street and the bridge over I-75 were all under construction in preparation for the Project's first occupants. In November 2016, Bass Pro Shops opened its doors to much anticipation and fanfare. The store continues to be a strong draw

from North Florida as well as South Georgia. Development continued with the sale of a parcel of land to InfoTech who would go on to relocate their headquarters from the Florida Farm Bureau building, south of the Project, to its new, state of the art, LEED certified building in the Project. InfoTech occupied this new building in 2017.

   The next addition to the Project was the first phase of the Promenade. Anchored by Regal Cinemas and including 67,000 square feet of retail PSAce across from what is now known as Steve Spurrier Way, the Promenade tenants opened their doors beginning in April of 2018. The Promenade includes a mix of restaurants and soft goods users. From Nike to Palmetto Moon to Spurrier's Gridiron Grill and the fine dining steaks and oysters that are the hallmark of Prime & Pearl, the Promenade offers shopping and entertainment for its guests. Adding to the restaurant mix was the relocation of Miller's Ale House to the Project later in 2018. In 2019, a second office building was added, 5001 Celebration Pointe Ave and the first hotel, Hotel Indigo Gainesville-Celebration Pointe, a partnership between CPH and Peachtree Hotel Group. The addition of this Class A office and boutique hotel, designed with the history of Gainesville at the forefront, only enhanced the already burgeoning development. Additionally, The Shops at Celebration Pointe, two buildings totaling approximately 17,000 square feet of retail, was completed. Offerings included a day PSA, national jeweler, International Diamond Center, and a local restaurant operator with a new concept, Hana Sushi. This area expanded to include Dave and Busters (19,000 square feet) and another 4,000 square foot building, which is home to Escapology, an escape room concept. On the residential front, 2019 saw the completion of the first 6 units of The Vue Townhomes. As of the Petition Date, 30 of the 86 townhome units have been built, with 26 sold. The Vue also includes 9 single family detached lots, of which 2 have been built, one sold and one on the market.

In 2021, construction commenced on the 150,000 square foot Alachua County Sports & Events Center, a public-private partnership between affiliates of CPH and Alachua County. At that time, just coming out of the Pandemic, the Events Center was widely anticipated to be a great shot in the arm for the Celebration Pointe development, expected to bring significant and recurring traffic to the Project. The County contributed in excess of $30 million toward the construction of the Center, the State of Florida contributed $2.32 million and affiliates of CPH contributed the remainder of the development costs and entered into various operations and development agreements with Alachua County. The Events Center was completed and opened in 2023, in the teeth of the economic volatility of interest rates and surging inflation that has been ongoing since. City Place Apartments, comprising two buildings and 220 units, was completed in 2021. The reception was exceptional with occupancy growing to 100% within the first 12 months. The second phase of these apartments was started in 2022 and is on schedule to be completed in the fourth quarter of 2024.

B.     **Significant Developments and Events Leading to Bankruptcy Filing**

Due to the COVID-induced global economic crisis in March of 2020 and the subsequent economic challenges to businesses worldwide, the Debtors faced unavoidable development and income delays but remained steadfast in progressing developing the Project. The hardships brought on by the pandemic lasted for months. Development stalled and tenant operations were (at best) languishing. The lack of developmental progress, coupled with the negative impacts of its tenants (e.g., no customers, rent abatements, interest rate increase, curtailment requirements, etc.), severely diminished the Project's revenues and cash flows of the Debtors. Despite these hardships, to the best of its ability, the Project continued to move forward. Development continued, subprojects progressed towards completion, and transactional work

conducted by moving real estate parcels and interests into separate LLCs for those specific subprojects; however, the delay in obtaining income producing projections put greater stress on funding and lending options.

As regular development activities were able to recommence after the pandemic, the Debtors were hit with a series of interest rate increases under which prime rate almost tripled, which coincided with unprecedented inflation surges. These extraordinarily adverse economic conditions resulted in an even greater strain on the Project's already suffering cash flow problems. Unfortunately, because of the pandemic, interest rate hikes, and inflationary surges, the Project was forced to turn to alternative lending arrangements. Most of these non-traditional loans came with extremely high interest rates and fees. Resulting from the compilation of all these negative conditions, the Debtors gradually fell behind on their loan payments.

While most of the Project's lenders cooperatively worked with the Debtors on reaching forbearance or alternative payment arrangements, some integral lenders refused to negotiate in good faith and even attempted to extract commercially unreasonable terms from the Debtors. The Debtors have actively pursued avenues for debt restructuring and stakeholder negotiations; however, despite these efforts to restructure debts and negotiate with lenders, certain lenders were unwilling to restructure and indicated a desire to liquidate the Project. For the protection of all creditors and interest holders, the Debtors determined that it was in the best interests of all parties to seek reorganization through chapter 11.

### C.    Significant Developments and Events Subsequent to Debtor's Chapter 11 Filing

On March 14, 2024 (the "Petition Date"), the Debtors filed their petition for relief under chapter 11 of the Bankruptcy Code. No trustee has been appointed. The Debtors continue to operate their business and manage their properties as debtors-in-possession under sections 1107

and 1108 of the Bankruptcy Code. Following the Petition Date, the Debtors have continued to operate as debtors-in-possession under Section 1107(a) and 1108 of the Bankruptcy Code. At the commencement of the case, Debtors have also sought and obtained:

1.      Authority to jointly administer these Bankruptcy Cases (CPH ECF No. 17, CPH2 ECF No.17, and SHD ECF No. 17).

2.      Authority to maintain its prepetition bank accounts on a temporary basis (CPH ECF No. 114).

3.      On May 9, 2024, the U.S. Trustee filed a notice of not appointing a committee of unsecured creditors in these Bankruptcy Cases (CPH ECF NO. 73, CPH2 ECF No. 29, and SHD ECF No. 27).

After initial phase of the Chapter 11, Debtors engaged in negotiations with lenders and Ms. Shively in respect of a plan of reorganization under which Ms. Shively would become the 99% owner of all entities and, in return, contribute significant funds at confirmation and be responsible for future operating shortfalls until the Project became self-sustaining.   To that end, Debtors filed a Second Amended Plan of Reorganization (Doc. No. 197) on November 18, 2024 (the "Reorganization Plan").   The Reorganization Plan included 29 Classes of Secured Claims and, as Debtors moved to confirmation of such plan in May of 2025, Debtors believed all but one of the 29 classes were in support of the Reorganization Plan.

Unfortunately, Debtors learned in late April 2025, that Ms. Shively lacked the financial resources to meet the commitments set forth in the Reorganization Plan and, thus, Debtors looked to alternative options to exit Chapter 11 and, importantly, avoid the Project going dark.  At the same time, certain disputes arose between Ms. Shively and Mr. Dyrkolbotn and, ultimately, all parties agreed Debtors should engage a Chief Restructuring Officer ("CRO") to

determine the best path forward. Based upon Ms. Shively's agreement to extend a debtor-in-possession loan to fund the CRO and operating shortfalls, the Debtors sought an obtained an order approving Mr. Troy Taylor as CRO on August 25, 2025 (Doc. Non. 387). Debtors have also sought and obtained approval for several debtor-in-possession loans to fund the CRO and shortfalls through mid-February 2026. The Plan filed on January 7, 2026, reflects extensive analysis of the best path forward to preserve as much value as possible

III.   **ARTICLE III - THE PLAN**

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE DEBTORS' PLAN. ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A.   **Summary of Classes in the Plan**

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1 | Secured Claim of U.S. Bank Trust Company, N.A. (CPH). | Impaired | Entitled to vote |
| 2 | Secured Claim of U.S. Bank Trust Company, N.A. (CPH2). | Impaired | Entitled to vote |
| 3 | Secured Claim of Mainstreet Community Bank (Loan # 4350782) | Impaired | Entitled to vote |
| 4 | Secured Claim of Mainstreet Community Bank (Loan # 4385527) | Impaired | Entitled to vote |
| 5 | Secured Claim of Mainstreet Community Bank (Loan # 4376560) | Impaired | Entitled to vote |
| 6 | Secured Claim of Vystar Credit Union (CPH Claim No. 22) | Impaired | Entitled to vote |
| 7 | Secured Claim of Vystar Credit Union (CPH Claim No. 6 and CPH2 Claim No. 5) | Impaired | Entitled to vote |
| 8 | Secured Claim of Vystar Credit Union (CPH Claim No. 7) | Impaired | Entitled to vote |
| 9 | Secured Claim of Vystar Credit Union (CPH Claim No. 8 and SHD Claim No.3) | Impaired | Entitled to vote |
| 10 | Secured Claim of Vystar Credit Union | Impaired | Entitled to vote |

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| | (CPH2 Claim No. 6) | | |
| 11 | Secured Claim of Synartis Income Fund, LLC & Catalyst Synartis CP Master 4A-2023, LLC (CPH Claim No. 33 and CPH2 Claim 12) | Impaired | Entitled to vote |
| 12 | Secured Claim of Synartis Capital Management LLC (CPH Claim No. 30) | Impaired | Entitled to vote |
| 13 | Secured Claim of Synartis Capital Management LLC (CPH Claim No. 32) | Impaired | Entitled to vote |
| 14 | Secured Claim of Catalyst Income Fund 2022-1A, LLC (CPH Claim No. 26) | Impaired | Entitled to vote |
| 15 | Secured Claim of Catalyst Synartis MF B Series Condo 3A-2023, LLC (CPH Claim No. 27) | Impaired | Entitled to vote |
| 16 | Secured Claim of Catalyst Synartis MF B Series MF 2A-2022, LLC (CPH Claim No. 28) | Impaired | Entitled to vote |
| 17 | Secured Claim of ARCISCAP-Celebration Pointe Investment (B.V.I.) Limited (CPH Claim 15, 20, 21 and 23) | Impaired | Entitled to vote |
| 18 | Secured Claim of Iceberg Real Estate Investments, LLC (CPH Claim 34, CPH2 Claim 13, and SHD Claim 6) | Impaired | Entitled to vote |
| 19 | Secured Claim of James B. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust JBE dated December 28, 2009, and Neil R. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust NRE II dated December 28, 2009 (SHD Claim 1 and 2) | Impaired | Entitled to vote |
| 20 | Millennium Bank | Impaired | Entitled to vote |
| 21 | Secured Claim of Kenneth R. McGurn & Linda C. McGurn | Impaired | Entitled to vote |
| 22 | Secured Claim of Gainesville PropCo LLC (CPH2 Claim 8) | Impaired | Entitled to vote |
| 23 | Secured Claim of Gainesville PropCo LLC (CPH Claim 25 and CPH2 Claim 9) | Impaired | Entitled to vote |
| 24 | Secured Claims of FDOT's State Infrastructure Bank (CPH Claim 46 and 47) | Impaired | Entitled to vote |
| 25 | Secured Claim of Florida Credit Union | Impaired | Entitled to vote |
| 26 | Secured Claim of Barwick Banking Company | Impaired | Entitled to vote |

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 27 | Secured Claim of Johnson Controls Security Solution | Impaired | Entitled to vote |
| 28 | Secured Claim of Arcis Real Estate Secured Fund II, L.P. (CPH Claim 44) | Impaired | Entitled to vote |
| 29 | Secured Claim of State Board of Administration of Florida | Impaired | Entitled to vote |
| 30 | General Unsecured Claims | Impaired | Entitled to vote |
| 31 | Insider and Affiliate Unsecured Claims | Impaired | Entitled to vote |
| 32 | Equity Interests | Impaired | Entitled to vote |

**B.     Impairment of Claims**

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtors is altered, modified, or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the Holder of such Claim or Interest is entitled to vote in favor of or against the Plan. The characterization of each Claim or Interest as "Impaired" or "Unimpaired" is set forth below.

**C.     Determination of Allowed Amounts**

Treatment prescribed for Claims in the following sections shall in all events refer exclusively to the Allowed Amounts of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement, Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, Debtor reserves the right to seek to value (under section 506 of the Bankruptcy Code) or to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

## IV.    ARTICLE IV – ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS, U.S. TRUSTEE FEES AND CLASSIFICATION AND TREATMENT OF UNIMPAIRED CLAIMS

### A.    Administrative Expense Claims

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the Holder of the Claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Administrative Claims shall be paid from the Shively Contribution, Debtors estimate Administrative Claims to be approximately $1,000,000, after deducting pre-petition and post-petition retainers. Pursuant to the Plan Terms, nothing herein restricts the right of any party to object to any Administrative Claims.

### B.    Priority Claims

#### 1.    Allowed Priority (Non-Real Estate) Tax Claims

Except to the extent that the Holder and the Debtors have agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payment in full from the Shively Contribution. The current amount of such claims is zero.

#### 2.    Allowed Priority Claims (Non-Tax)

Except to the extent that the Holder and the Debtors have agreed or may agree to different treatment, in full satisfaction of each Priority Claim (non-tax), exclusive of Priority Tax Claims under 11 U.S.C. § 507(a)(8), each Holder of an Allowed Priority Claim shall receive payment of such Claim in full on the Effective Date. Payment will be made on the Effective Date or the date on which such Priority Claim becomes Allowed. The source of payments for

Priority Claims (non-tax) will be from the Shively Contributions. The filed amount of such claims is $127,949.36.

      **C.**      **United States Trustee Fees**

      All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course from cash on hand or the Shively Contributions.

**V.**      **ARTICLE V – CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

      There are thirty one (31) Classes of Claims that are Impaired, zero (0) Classes of Claims that are Unimpaired, and one (1) Class of Interests that is Impaired. Treatment for these classes is as follows:

      **A.**      **Secured Claims (including guaranty Claims secured directly by SPE assets).**

      1.      <u>Class 1 – Secured Claim of U.S. Bank Trust Company, N.A. (CPH Claim 24)</u>

Class 1 consists of the Allowed Secured Claim of U.S. Bank based on various prepetition loan and bond documents which form the basis of several bond series issued by the CDD. The Claim as to Class 1 was filed in the amount of $8,357,742.83. The Class 1 Claim is secured by substantially all the real property owned by Debtors and each SPE.

      In full satisfaction of the Allowed Class 1 Claim, the Claim Holder shall retain its Liens and, within thirty days of the Effective Date, either: (a) receive the respective amount of past due annual assessments (including interest at the weighted average coupon rate) from each respective Holder of an Allowed Secured Claims on real property subject to the bond debt and, thereafter, receive from each land owner the required bi-annual payments of applicable interest and principal as required under the Bond Documents and assessment proceedings, without penalties or interest

added; or (b) be permitted, as the indubitable equivalent of its Allowed Claim, to exercise all state law rights contained in the Bond Documents and assessment proceedings.  It is the intent of this Plan treatment that the amount paid in (a) shall be sufficient to  "decelerate" the applicable allocation on the respective land parcel and allow future bi-annual payments as calculated under the Bond Documents and assessment proceedings. Both options (a) and (b) shall be subject to the Bankruptcy CDD Adversary under which the Bankruptcy Court will have jurisdiction to consider the legality of the Bonds and assessments, and the Claimant's right to re-allocate and demand density true-up under applicable law and Bond Documents.

      2.    <u>Class 2 – Secured Claim of U.S. Bank Trust Company, N.A. (CPH2 Claim 7</u>

Class 2 consists of the Allowed Secured Claim of U.S. Bank based on various prepetition loan and bond documents which form the basis of several bond series issued by the CDD. The Claim as to Class 2 was filed in the amount of $4,318,914.46. The Class 2 Claim is secured by substantially all the real property owned by Debtors and each SPE.

In full satisfaction of the Allowed Class 2 Claim, the Claim Holder shall retain its Liens and, within thirty days of the Effective Date, either: (a) receive the respective amount of past due annual assessments (including interest at the weighted average coupon rate) from each respective Holder of an Allowed Secured Claims on real property subject to the bond debt and, thereafter, receive from each land owner the required bi-annual payments of applicable interest and principal as required under the Bond Documents and assessment proceedings, without penalties or interest added; or (b) be permitted, as the indubitable equivalent of its Allowed Claim, to exercise all state law rights contained in the Bond Documents and assessment proceedings.  It is the intent of this Plan treatment that the amount paid in (a) shall be sufficient to  "decelerate" the applicable allocation on the respective land parcel and allow future bi-annual payments as calculated under

the Bond Documents and assessment proceedings. Both options (a) and (b) shall be subject to the Bankruptcy CDD Adversary under which the Bankruptcy Court will have jurisdiction to consider the legality of the Bonds and assessments, and the Claimant's right to re-allocate and demand density true-up under applicable law and Bond Documents.

     3.    <u>Class 3 – Secured Claim of Mainstreet Community Bank (Loan #4350782/CPH Claim 2 and  CPH2 Claim 3)</u>

Class 3 consists of the Allowed Secure Claim of Mainstreet based on various loan documents including a note, mortgage and guarantee all related to the SPE which owns the real property leased to Bass Pro Shops.  The Claims as to Class 3 were filed in the amount of $6,278,919.21 and are secured by a mortgage on the SPE which owns the real property leased to Bass Pro Shops.

In full satisfaction of the Class 3 Claim, the Holder shall retain its lien and have its Allowed Claim paid pursuant to one of the following options (which shall be at the discretion of Mainstreet): (a) Debtors will cause the membership interest in the applicable SPE, including interests held by any Shively or Dyrkolbotn entity,  to be transferred to Mainstreet or its assigns or, at the option of Mainstreet, the Liquidating Trustee,  with repayment terms determined by Mainstreet: (b) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and claims except for those held by Mainstreet,  U.S. Bank and the POA,  to Mainstreet or its assigns for assumption of a modified mortgage amount and terms as determined by Mainstreet; or (c) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of all liens and claims except for those held by Mainstreet, U.S. Bank, and the POA  to a third party buyer, pursuant to an agreed marketing and sales plan with such sale subject to Mainstreet's right to credit bid.  In addition to options (a) through (c) noted above, Mainstreet, on the Effective Date, shall receive its share of the Shively Contribution.  Receipt of the Shively Contribution shall be in

full satisfaction of any guaranty liability of Shively, and the Holder of Class 3 shall not have a Claim in Class 30.   Mainstreet will have thirty (30) days from the Effective Date to make its election as to (a) through (c) above.   Finally, Mainstreet or its designee will agree on the allocated POA assessment on the underlying real property, and Mainstreet or its designee will be entitled to control an agreed percentage of the voting rights on the Reconstituted POA and CDD boards.

     4.   <u>Class 4 – Secured Claim of Mainstreet Community Bank (Loan #4385527/CPH Claim 17 and CPH Claim 2)</u>

Class 4 consists of the Allowed Secured Claim of Mainstreet based on various loan documents. The Class 4 Claim as to Class 4 was filed in the amount of $6,904,867.19.

In full satisfaction of the Class 4 Claim, the Holder shall retain its lien and have its Allowed Claim paid pursuant to one of the following options (which shall be at the discretion of Mainstreet): (a) Debtors will cause the membership interest in the applicable SPE, including interests held by any Shively or Dyrkolbotn entity,  to be transferred to Mainstreet or its assigns or, at the option of Mainstreet, the Liquidating Trustee,  with repayment terms determined by Mainstreet: (b) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and claims except for those held by Mainstreet,  U.S. Bank and the POA,  to Mainstreet or its assigns for assumption of a modified mortgage amount and terms as determined by Mainstreet; or (c) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of all liens and claims except for those held by Mainstreet, U.S. Bank, and the POA  to a third party buyer, pursuant to an agreed marketing and sales plan with such sale subject to Mainstreet's right to credit bid.  In addition to options (a) through (c) noted above, Mainstreet, on the Effective Date, shall receive its share of the Shively Contribution.  Receipt of the Shively Contribution shall be in full satisfaction of any guaranty liability of Shively, and the Holder of Class 4 shall not have a Claim in Class 30.   Mainstreet will have thirty (30) days from the Effective Date to make its

election as to (a) through (c) above.   Finally, Mainstreet or its designee will agree on the allocated

POA assessment on the underlying real property, and Mainstreet or its designee will be entitled to

control an agreed percentage of the voting rights on the Reconstituted POA and CDD boards.

     5.    <u>Class 5 – Secured Claim of Mainstreet Community Bank (Loan #4376560/CPH Claim 19)</u>

Class 5 consists of the Allowed Secured Claim of Mainstreet based on various loan

documents including a note and mortgage which is secured by the SPE which owns Spurrier's

Gridiron Grille. The Claim related to Class 5 was filed in the amount of $530,090.17.

In full satisfaction of the Class 5 Claim, the Holder shall retain its lien and have its Allowed

Claim paid pursuant to one of the following options (which shall be at the discretion of Mainstreet):

(a) Debtors will cause the membership interest in the applicable SPE, including interests held by

any Shively or Dyrkolbotn entity,  to be transferred to Mainstreet or its assigns or, at the option of

Mainstreet, the Liquidating Trustee,  with repayment terms determined by Mainstreet: (b) Debtors

will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and

claims except for those held by Mainstreet,  U.S. Bank and the POA,  to Mainstreet or its assigns

for assumption of a modified mortgage amount and terms as determined by Mainstreet; or (c)

Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of

all liens and claims except for those held by Mainstreet, U.S. Bank, and the POA  to a third party

buyer, pursuant to an agreed marketing and sales plan with such sale subject to Mainstreet's right

to credit bid.  In addition to options (a) through (c) noted above, Mainstreet, on the Effective Date,

shall receive its share of the Shively Contribution.  Receipt of the Shively Contribution shall be in

full satisfaction of any guaranty liability of Shively, and the Holder of Class 5 shall not have a

Claim in Class 30.   Mainstreet will have thirty (30) days from the Effective Date to make its

election as to (a) through (c) above.   Finally, Mainstreet or its designee will agree on the allocated

POA assessment on the underlying real property, and Mainstreet or its designee will be entitled to control an agreed percentage of the voting rights on the Reconstituted POA and CDD boards.

     6.    <u>Class 6 – Secured Claim of Vystar Credit Union (CPH Claim 22)</u>

Class 6 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as the 5001 Office Building. The Claim related to Class 6 was filed in the amount of $14,663,991.90.

In full satisfaction of the Class 6 Claim, the Holder shall retain its lien and have its Allowed Claim paid pursuant to one of the following options (which shall be at the discretion of Vystar): (a) Debtors will cause the membership interest in the applicable SPE, including interests held by any Shively or Dyrkolbotn entity, to be transferred to Vystar or its assigns or, at the option of Vystar, the Liquidating Trustee, with repayment terms determined by Vystar: (b) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and claims except for those held by Vystar, U.S. Bank and the POA, to Vystar or its assigns for assumption of a modified mortgage amount and terms as determined by Vystar; or (c) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of all liens and claims except for those held by Vystar, U.S. Bank, and the POA to a third party buyer, pursuant to an agreed marketing and sales plan with such sale subject to Vystar's right to credit bid. In addition to options (a) through (c) noted above, Vystar, on the Effective Date, shall receive its share of the Shively Contribution. Receipt of the Shively Contribution shall be in full satisfaction of any guaranty liability of Shively, and the Holder of Class 6 shall not have a Claim in Class 30. Vystar will have thirty (30) days from the Effective Date to make its election as to (a) through (c) above. Finally, Vystar or its designee will agree on the allocated POA assessment on the

underlying real property, and Vystar or its designee will be entitled to control an agreed percentage of the voting rights on the Reconstituted POA and CDD boards.

       7.    <u>Class 7 – Secured Claim of Vystar Credit Union (CPH Claim 6 and CPH2 Claim 5)</u>

Class 7 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property leased to Regal Cinemas. The Claim related to Class 7 was filed in the amount of $8,911,077.32.

In full satisfaction of the Class 7 Claim, the Holder shall retain its lien and have its Allowed Claim paid pursuant to one of the following options (which shall be at the discretion of Vystar): (a) Debtors will cause the membership interest in the applicable SPE, including interests held by any Shively or Dyrkolbotn entity,  to be transferred to Vystar or its assigns or, at the option of Vystar, the Liquidating Trustee,  with repayment terms determined by Vystar: (b) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and claims except for those held by Vystar,  U.S. Bank and the POA,  to Vystar or its assigns for assumption of a modified mortgage amount and terms as determined by Vystar; or (c) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of all liens and claims except for those held by Vystar, U.S. Bank, and the POA  to a third party buyer, pursuant to an agreed marketing and sales plan with such sale subject to Vystar's right to credit bid.  In addition to options (a) through (c) noted above, Vystar, on the Effective Date, shall receive its share of the Shively Contribution.  Receipt of the Shively Contribution shall be in full satisfaction of any guaranty liability of Shively, and the Holder of Class 7 shall not have a Claim in Class 30. Vystar will have thirty (30) days from the Effective Date to make its election as to (a) through (c) above.     Finally, Vystar or its designee will agree on the allocated POA assessment on the

underlying real property, and Vystar or its designee will be entitled to control an agreed percentage of the voting rights on the Reconstituted POA and CDD boards.

    8.    <u>Class 8 – Secured Claim of Vystar Credit Union (CPH Claim 7)</u>

Class 8 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property leased to Millers Ale House. The Claim related to Class 8 was filed in the amount of $3,336,613.78.

In full satisfaction of the Class 8 Claim, the Holder shall retain its lien and have its Allowed Claim paid pursuant to one of the following options (which shall be at the discretion of Vystar): (a) Debtors will cause the membership interest in the applicable SPE, including interests held by any Shively or Dyrkolbotn entity, to be transferred to Vystar or its assigns or, at the option of Vystar, the Liquidating Trustee, with repayment terms determined by Vystar: (b) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and claims except for those held by Vystar, U.S. Bank and the POA, to Vystar or its assigns for assumption of a modified mortgage amount and terms as determined by Vystar; or (c) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of all liens and claims except for those held by Vystar, U.S. Bank, and the POA to a third party buyer, pursuant to an agreed marketing and sales plan with such sale subject to Vystar's right to credit bid. In addition to options (a) through (c) noted above, Vystar, on the Effective Date, shall receive its share of the Shively Contribution. Receipt of the Shively Contribution shall be in full satisfaction of any guaranty liability of Shively, and the Holder of Class 8 shall not have a Claim in Class 30. Vystar will have thirty (30) days from the Effective Date to make its election as to (a) through (c) above. Finally, Vystar or its designee will agree on the allocated POA assessment on the

underlying real property, and Vystar or its designee will be entitled to control an agreed percentage of the voting rights on the Reconstituted POA and CDD boards.

9.    Class 9 – Secured Claim of Vystar Credit Union (CPH Claim 8 and SHD Claim 3)

Class 9 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as City Walk Phase 1. The Claim related to Class 9 was filed in the amount of $16,138,837.46.

In full satisfaction of the Class 9 Claim, the Holder shall retain its lien and have its Allowed Claim paid pursuant to one of the following options (which shall be at the discretion of Vystar): (a) Debtors will cause the membership interest in the applicable SPE, including interests held by any Shively or Dyrkolbotn entity, to be transferred to Vystar or its assigns or, at the option of Vystar, the Liquidating Trustee, with repayment terms determined by Vystar: (b) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and claims except for those held by Vystar, U.S. Bank and the POA, to Vystar or its assigns for assumption of a modified mortgage amount and terms as determined by Vystar; or (c) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of all liens and claims except for those held by Vystar, U.S. Bank, and the POA to a third party buyer, pursuant to an agreed marketing and sales plan with such sale subject to Vystar's right to credit bid. In addition to options (a) through (c) noted above, Vystar, on the Effective Date, shall receive its share of the Shively Contribution. Receipt of the Shively Contribution shall be in full satisfaction of any guaranty liability of Shively, and the Holder of Class 9 shall not have a Claim in Class 30. Vystar will have thirty (30) days from the Effective Date to make its election as to (a) through (c) above. Finally, Vystar or its designee will agree on the allocated POA assessment on the

underlying real property, and Vystar or its designee will be entitled to control an agreed percentage of the voting rights on the Reconstituted POA and CDD boards.

10.    Class 10 – Secured Claim of Vystar Credit Union (CPH2 Claim 6)

Class 10 consists of the Allowed Secured Claim of Vystar based on various loan documents including a note and mortgage which is secured by the SPE which owns the property known as the Shops at Celebration. The Claim related to Class 10 was filed in the amount of $5,520,563.40.

In full satisfaction of the Class 10 Claim, the Holder shall retain its lien and have its Allowed Claim paid pursuant to one of the following options (which shall be at the discretion of Vystar): (a) Debtors will cause the membership interest in the applicable SPE, including interests held by any Shively or Dyrkolbotn entity, to be transferred to Vystar or its assigns or, at the option of Vystar, the Liquidating Trustee, with repayment terms determined by Vystar: (b) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and claims except for those held by Vystar, U.S. Bank and the POA, to Vystar or its assigns for assumption of a modified mortgage amount and terms as determined by Vystar; or (c) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of all liens and claims except for those held by Vystar, U.S. Bank, and the POA to a third party buyer, pursuant to an agreed marketing and sales plan with such sale subject to Vystar's right to credit bid. In addition to options (a) through (c) noted above, Vystar, on the Effective Date, shall receive its share of the Shively Contribution. Receipt of the Shively Contribution shall be in full satisfaction of any guaranty liability of Shively, and the Holder of Class 10 shall not have a Claim in Class 30. Vystar will have thirty (30) days from the Effective Date to make its election as to (a) through (c) above.    Finally, Vystar or its designee will agree on the allocated POA assessment on the

underlying real property, and Vystar or its designee will be entitled to control an agreed percentage of the voting rights on the Reconstituted POA and CDD boards.

11.    Class 11 – Secured Claim of Synartis Income Fund, LLC & Catalyst Synartis CP Master 4A-2023, LLC (CPH Claim 33 and CPH2 Claim 15)

Class 11 consists of the Allowed Secured Claim of SIF based on various loan documents. The Claims related to Class 11 were filed in the amount of $12,100,000.00.

Class 11 is allegedly secured by liens on membership interests or other assets which are inferior to mortgage debt and bond debt.  The value of the property securing the Class 11 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, Class 11 is entirely unsecured and will receive the treatment in Class 30.

12.    Class 12 – Secured Claim of Synartis Capital Management LLC (CPH Claim 30)

Class 12 consists of the Allowed Secured Claim of Synartis Capital based on various loan documents. The Claim related to Class 12 was filed in the amount of $2,500,000.

Class 12 is allegedly secured by liens on membership interests or other assets which are inferior to mortgage debt and bond debt.  The value of the property securing the Class 12 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, Class 12 is entirely unsecured and will receive the treatment in Class 30.

13.    Class 13 – Secured Claim of Synartis Capital Management LLC (CPH Claim 32)

Class 13 consists of the Allowed Secured Claim of Synartis Capital based on various loan documents. The Claim related to Class 13 was filed in the amount of $6,890, 778.

Class 13 is secured by liens on membership interests or other assets which are behind both mortgage debt and bond debt. The value of the property securing the Class 13 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, the Claim is entirely unsecured and will receive the treatment set for in Class 30.

14.    Class 14 – Secured Claim of Capital Income Fund 2022-1A, LLC (CPH Claim 26)

Class 14 consists of the Allowed Secured Claim of Capital Income based on various loan documents. The Claim related to Class 14 was filed in the amount of $2,380,000.

Class 14 is secured by liens on membership interests or other assets which are behind both mortgage debt and bond debt.  The value of the property securing the Class 14 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, the Claim is entirely unsecured and will receive the treatment in Class 30.

15.    Class 15 – Secured Claim of Catalyst Synartis MF B Series Condo 3A-2023, LLC (CPH Claim 27)

Class 15 consists of the Allowed Secured Claim of Catalyst Synartis Condo based on various loan documents. The Claim related to Class 15 was filed in the amount of $4,935,000.

Class 15 is secured by liens on membership interests or other assets which are behind both mortgage debt and bond debt.  The value of the property securing the Class 15 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, the Claim is entirely unsecured and will receive the treatment in Class 30.

16.    Class 16 – Secured Claim of Catalyst Synartis MF B Series MF 2A-2022, LLC (CPH Claim 28)

Class 16 consists of the Allowed Secured Claim of Catalyst Synartis B Series based on various loan documents. The Claim related to Class 16 was filed in the amount of $5,300,000.

Class 16 is secured by liens on membership interests or other assets which are behind both mortgage debt and bond debt.  The value of the property securing the Class 16 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, the Claim is entirely unsecured and will receive the treatment in Class 30.

17.     Class 17 – Secured Claim of ARCISCAP Celebration Pointe Investment (B.V.I.) Limited (CPH Claim 15, 20, 21 and 23)

Class 17 consists of the Allowed Secured Claims of ARCISCAP based on various loan documents.  The Claims related to Class 17 were filed in the amount of $44,054,216.55.

Class 17 is secured by liens on membership interests or other assets which are behind both mortgage debt and bond debt.  The value of the property securing the Class 17 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, the Claim is entirely unsecured and will receive the treatment in Class 30.

18.     Class 18 – Secured Claim of Iceberg Real Estate Investments, LLC (CPH Claim 34, CPH2 Claim 13, and SHD Claim 6)

Class 18 consists of the Allowed Secured Claim of Iceberg based on alleged obligations owed by Debtors arising from certain SPE investments. The Claims related to Class 18 were filed in the amount of $1,050,000.

Class 18 is secured by liens on membership interests or other assets which are behind both mortgage debt and bond debt.  The value of the property securing the Class 18 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, the Claim is entirely unsecured and will receive the treatment in Class 30.

19.     Class 19 – Secured Claim of James B. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trustee JBE dated December 28, 2009, and Neil R. Euliano, as Trustee of the Neil R. Euliano Irrevocable Trust NRE II dated December 28, 2009 (SHD Claim 1 and SHD Claim 2)

Class 19 consists of the Allowed Secured Claims of the Euliano Trusts based on promissory notes and pledges executed by SHD. The Claims related to Class 19 were filed in the total amount of $1,168,840.16.

Class 19 is secured by liens on membership interests or other assets which are behind both mortgage debt and bond debt.  The value of the property securing the Class 19 Claim does not

exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, the Claim is entirely unsecured and will receive the treatment in Class 30.

20.    Class 20 – Millennium Bank

Class 20 consists of the Allowed Secured Claim of Millennium Bank.  Class 20 Holder did not file a claim but has a mortgage on real property known as P2 Parking Garage South and owned by an SPE. The current amount owed is approximately $4,500,000.

In full satisfaction of the Class 20 Secured Claim, P2 Parking Garage South shall be conveyed by SDPS VII, free and clear of the mortgage held by Millennium Bank, to the POA in return for payment to Millennium Bank from the Shively Contribution and the POA Payment. The closing shall occur on the Effective Date.

21.    Class 21 – Secured Claim of Kenneth R. McGurn and Linda C. McGurn

Class 21 consists of the Allowed Secured Claims of McGurn based on various loan documents and pledges. The Class 21 Claim is in the amount of $8,400,000.

In full satisfaction of the Class 21 Claim, the Holder shall retain its lien and have its Allowed Claim paid pursuant to one of the following options (which shall be at the discretion of McGurn): (a) Debtors will cause the membership interest in the applicable SPE, including interests held by any Shively or Dyrkolbotn entity,  to be transferred to McGurn or its assigns or, at the option of McGurn, the Liquidating Trustee,  with repayment terms determined by McGurn: (b) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and claims except for those held by McGurn,  U.S. Bank and the POA,  to McGurn or its assigns for assumption of a modified mortgage amount and terms as determined by McGurn; or (c) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of all liens and claims except for those held by McGurn, U.S. Bank, and the POA  to a third party

buyer, pursuant to an agreed marketing and sales plan with such sale subject to McGurn's right to credit bid.  In addition to options (a) through (c) noted above, McGurn, on the Effective Date, shall receive its share of the Shively Contribution.  Receipt of the Shively Contribution shall be in full satisfaction of any guaranty liability of Shively, and the Holder of Class 21 shall not have a Claim in Class 30.  McGurn will have thirty (30) days from the Effective Date to make its election as to (a) through (c) above.     Finally, McGurn or its designee will agree on the allocated POA assessment on the underlying real property, and McGurn or its designee will be entitled to control an agreed percentage of the voting rights on the Reconstituted POA and CDD boards.

22.     Class 22 – Secured Claim of Gainesville PropCo LLC (CPH2 Claim 8)

Class 22 consists of the Allowed Secured Claim of Gainesville PropCo LLC ("Gainesville PropCo") based on a prepetition escrow and purchase agreement. The Claim related to Class 22 were filed in the amount of $400,224.13.

In full satisfaction of the Class 22 Claim, the Holder shall retain its lien and contract rights and be paid pursuant to the original contract terms. Class 22 is Impaired.

23.     Class 23 – Secured Claim of Gainesville PropCo LLC (CPH Claim 25 and CPH2 Claim 9)

Class 23 consists of the Allowed Secured Claims of Gainesville PropCo based on a prepetition escrow and purchase agreement. The Claims related to Class 23 were filed in the amount of $372,529.88.

Class 23 is secured by liens on membership interests or other assets which are behind both mortgage debt and bond debt.  The value of the property securing the Class 23 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, the Claim is entirely unsecured and will receive the treatment in Class 30.

24.     Class 24 – Secured Claims of FDOT's State Infrastructure Bank (CPH Claim 46 and 47)

Class 24 consists of the Allowed Secured Claims of SIB based on various loan documents including a credit agreement, security agreement, mortgages, and pledges. The Claim is secured by certain taxes collected on sales within the CDD ("PUF Taxes"). The Claims related to Class 24 were filed in the amount of $24,163,491.46.

In full satisfaction of the Allowed Class 24 Claim, SIB will retain its lien and receive periodic payments from PFM Financial Advisors (the party that currently collects the PUF Taxes), based on collections of PUF Taxes as required under applicable documents, until the Allowed Claim is paid in full.

25.     Class 25 – Secured Claim of Florida Credit Union (CPH Claim 10)

Class 25 consists of the Allowed Secured Claim of FCU based on various loan documents including a note and mortgage secured by the SPE that owns the real property where the Hotel Indigo is located. The Claim related to Class 25 was filed in the amount of $17,512,084.66.

In full satisfaction of the Class 25 Claim, the Holder shall retain its lien and have its Allowed Claim paid pursuant to one of the following options (which shall be at the discretion of FCU): (a) Debtors will cause the membership interest in the applicable SPE, including interests held by any Shively or Dyrkolbotn entity,  to be transferred to FCU or its assigns or, at the option of FCU, the Liquidating Trustee,  with repayment terms determined by FCU: (b) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and claims except for those held by FCU,  U.S. Bank and the POA,  to FCU or its assigns for assumption of a modified mortgage amount and terms as determined by FCU; or (c) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of all liens and claims except for those held by FCU, U.S. Bank, and the POA  to a third party buyer, pursuant to

31

an agreed marketing and sales plan with such sale subject to FCU right to credit bid.  In addition to options (a) through (c) noted above, FCU, on the Effective Date, shall receive its share of the Shively Contribution.  Receipt of the Shively Contribution shall be in full satisfaction of any guaranty liability of Shively, and the Holder of Class 25 shall not have a Claim in Class 30.  FCU will have thirty (30) days from the Effective Date to make its election as to (a) through (c) above. Finally, FCU or its designee will agree on the allocated POA assessment on the underlying real property, and FCU or its designee will be entitled to control an agreed percentage of the voting rights on the reconstituted POA and CDD boards.

26.    Class 26 – Secured Claim of Barwick Banking Company

Class 26 consists of the Allowed Secured Claim of Barwick based on various loan documents including a note and security agreement. The loan relates to an obligation secured by a deposit account which serves as a backup for a letter of credit issued by Barwick in favor of the SIB.

In full satisfaction of the Class 26 Claim, the Holder shall retain its lien and have its Allowed Claim paid pursuant to one of the following options (which shall be at the discretion of Barwick): (a) Debtors will cause the membership interest in the applicable SPE, including interests held by any Shively or Dyrkolbotn entity,  to be transferred to Barwick or its assigns or, at the option of Barwick, the Liquidating Trustee,  with repayment terms determined by Barwick: (b) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of liens and claims except for those held by Barwick,  U.S. Bank and the POA,  to Barwick or its assigns for assumption of a modified mortgage amount and terms as determined by Barwick; or (c) Debtors will cause the fee simple owned by the applicable SPE to be transferred, free and clear of all liens and claims except for those held by Barwick, U.S. Bank, and the POA  to a third party

32

buyer, pursuant to an agreed marketing and sales plan with such sale subject to Barwick's right to credit bid.  In addition to options (a) through (c) noted above, Barwick, on the Effective Date, shall receive its share of the Shively Contribution.  Receipt of the Shively Contribution shall be in full satisfaction of any guaranty liability of Shively, and the Holder of Class 26 shall not have a Claim in Class 30.  Barwick will have thirty (30) days from the Effective Date to make its election as to (a) through (c) above.     Finally, Barwick or its designee will agree on the allocated POA assessment on the underlying real property, and Barwick or its designee will be entitled to control an agreed percentage of the voting rights on the reconstituted POA and CDD boards.

     27.    <u>Class 27 – Secured Claim of Johnson Controls Security Solution</u>

Class 27 consists of the Allowed Secured Claim of Johnson Controls based on a lien on certain equipment owned by Debtors.  Debtors scheduled the Class 27 Claim in the amount of $131,924.

Class 27 is secured by liens on membership interests or other assets which are behind both mortgage debt and bond debt.  The value of the property securing the Class 27 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506, the Claim is entirely unsecured and will receive the treatment in Class 30.

     28.    <u>Class 28 – Secured Claim of Arcis Real Estate Secured Fund II, L.P. (CPH Claim 44)</u>

Class 28 consists of the Allowed Secured Claim of Arcis Real Estate Secured Fund II, L.P. based on various loan documents.  The Claim related to Class 28 was filed in the amount of $853,228.76.  Claim 28 is Impaired.

Class 28 is secured by liens on membership interests or other assets which are behind both mortgage debt and bond debt.  The value of the property securing the Class 28 Claim does not exceed the respective mortgage and bond debt and, as such, under Bankruptcy Code Section 506,

the Claim is entirely unsecured and will receive the treatment in Class 30.

    29.    <u>Class 29 – Secured Claim of State Board of Administration of Florida</u>

Class 29 consists of the Allowed Secured Claim of SBAF and relates to an escrow account maintained by SBAF as collateral for the Class 24 Claim.

In full satisfaction of the Class 29 Claim, the Holder shall retain its lien with the escrow funds used pursuant to the treatment set forth for Class 24. Class 29 is Impaired.

**B.**    **Unsecured Claims.**

    1.    <u>Class 30 – General Allowed Unsecured Claims</u>

Class 30 consists of all Allowed General Unsecured Claims (as defined above and in the Plan) against the Debtors in an approximate amount of $100,000,000.00. In full satisfaction of the Allowed Class 30 Claims, each Holder of such Claims shall become a beneficiary of the Liquidating Trust. The following terms apply to Class 30:

    a.    <u>Source of Payments</u>.  Allowed Class 30 Claims shall be paid in Cash by the Liquidating Trustee from the liquidation of assets of the Debtors or Extraordinary Income derived from the sources set forth below.  Due to the uncertainties surrounding the recovery of Extraordinary Income in terms of both the amount ultimately recovered and the time required to cover such amount, it is not possible to project exactly either the aggregate amount of such payments or when they will be received by Holders of Allowed Claims.  Based on the information developed by the CRO to date, however, it is believed that the Extraordinary Income recovery process will take several years to complete. The CRO predicts that most of the Extraordinary Income will be generated from the following sources:

    i. <u>Litigation and Settlement Proceeds</u>.

To date, the CRO has identified several potential litigation targets and the CRO

continues to review documents and transactions anticipating additional targets.  The CRO has sent 2004 request to certain potential targets and is also in discussion to employ special litigation counsel in respect of actions against financial institutions or insurance related suits.   The Liquidating Trustee will continue its investigation and pursue all parties except the Related Parties, who received improper transfers and seek claims against any officers, directors, owners, or professional who directly, or indirectly, contributed to the claims and losses.

On the Effective Date, the Liquidating Trustee on behalf of the Debtors and in his own capacities under the Plan, shall receive, retain, and pursue, at the sole and absolute discretion of and for the benefit of holders of Allowed Claims, any and all Causes of Action, as that term is defined in the Plan.  Any recovery from the Causes of Action will be paid to the holders of Allowed Class 30 Claims as provided for in the Plan, less the actual costs of recovering or attempting to recover Extraordinary Income through the Causes of Action.

## ii. Existing Assets of the Estate.

In addition to, and potentially in connection with, the recovery of Extraordinary Income through litigation and attendant settlements, the Liquidating Trustee will also attempt to generate Extraordinary Income through the liquidation, through sale or otherwise, of the existing unencumbered assets of the Debtor.  It is not anticipated the sale of assets will provide a material recovery.

b.    Timing and Amount of Payments.  Payments to Holders of Allowed Class 30 Claims shall be made from time to time in Cash by the Liquidating Trustee.  There shall not be any fixed intervals or payment dates for such Payments; instead, such Payments shall be made by the Liquidating Trustee anytime: (i) the estate has at least $1,500,000 in cash; and (ii) at least $1,000,000 can be distributed.  For example, on the Effective Date, if the estate has cash equal to

$5,000,000, the amount of $3,500,000 will be distributed, pro rata, to the Holders of Allowed Class 30 Claims. Thereafter, any time the cash is at or above $2,500,000, another pro rata distribution will be made.

        c.    <u>Disputed Claims Reserve</u>. Any Claim, or portion thereof, which is to be paid in Cash under the Plan and which is challenged, shall be protected by requiring the Chapter 11 Trustee or Liquidating Trustee, as appropriate, to segregate and set aside in an escrow account a reserve sufficient to treat such Claim in the same fashion as though the objection had been denied. The reserve so segregated shall be distributed in accordance with the provisions of the Plan in the event that the objection is overruled or a dispute is resolved in favor of the claimant. In the event the disputed Claim is disallowed by Final Order of the Court, the retained Cash so segregated shall become Extraordinary Income and shall be distributed in accordance with the provisions of the Plan with the holder of the disallowed Claim being excluded in the amount of the disallowed Claim from participating on a *Pro Rata* Share basis in future payments.

        In the event of a conversion and liquidation, there would be likely no distribution to Holders of Allowed Class 30 Claims as the debt encumbering assets exceeds the value of such assets. Class 30 is Impaired.

        2.    <u>Class 31 – Allowed Insiders and Affiliates' Claims</u>

        Class 31 consists of the Allowed Claims of Insiders and Affiliates, including but not limited to, SHD Real Estate LLC, SHD Vue Investments LLC, Viking Student Housing Partners LLC, GNV RE Fund 3 LLC, SDPS Real Estate Investments II LLC, CP City Place Partners LLC, Viking Property Management LLC, Viking Companies LLC, Viking Construction Company of Florida LLC, SHD Management LLC, SDPS Real Estate Investments  LLC, SDPS Real Estate Investments IV LLC, Svein Dyrkolbotn and/or related entities, Patricia A. Shively and

Patricia Ann Shively Trust. In return for the releases described herein, the Holders of Class 31 shall receive no distribution under the Plan. Class 31 is Impaired.

### C. Equity Interests

1. <u>Class 32 – Equity Ownership Interests</u>

Class 32 consists of any and all ownership interests currently issued or authorized in the Debtors. On the Effective Date, all existing Interests be transferred to the Liquidating Trust. Class 32 is Impaired.

## VI. <u>ARTICLE VI - MEANS OF IMPLEMENTATION</u>

### A. Leases and Executory Contracts

To the extent Debtors reject any executory contracts or unexpired leases prior to the Confirmation Hearing, any party asserting a Claim, pursuant to section 365 of the Bankruptcy Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. The Debtors shall have through and including the Confirmation Hearing within which to assume or reject any unexpired lease or executory contract. To the extent the Debtors do not file a motion to assume prior to the Confirmation Hearing, any such executory contract or lease will be deemed rejected.

### B. Funds Generated During Chapter 11

Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtors 'cash on hand as of Confirmation will be available for payment of Administrative Expenses.

### C. Disbursing Agent

The Liquidating Trust will serve as the Disbursing Agent for all Distributions under the Plan.

    **D.**    **Liquidating Trust**

    A.    <u>The Liquidating Trust</u>.

The Plan provides for the creation of the Liquidating Trust, responsible for the recovery of Extraordinary Income for the benefit of unsecured creditors with Allowed Unsecured Claims. The Liquidating Trust will be vested with all the estate and have a maximum life of five (5) years unless extended pursuant to court order. The Liquidating Trust will also own 100% of the equity of Debtors and will determine how and when to terminate the existence of Debtor. Holders of Allowed Claims shall be beneficiaries of the Liquidating Trust and entitled to distributions based on the priority and timing set forth in the Plan. The Liquidating Trust will be controlled by the Liquidating Trustee.

    B.    <u>Liquidating Trustee</u>.

The Plan provides for the role of a Trustee (the "Liquidating Trustee") to control the Liquidating Trust and guide efforts to recover Extraordinary Income for the benefit of creditors with Allowed Unsecured Claims. The Liquidating Trustee shall be governed by the terms of the Plan, as described below. The Liquidating Trustee shall have the duties and responsibilities as set forth in the Plan and shall be retained, and may be terminated, as provided for in the Plan. However, the Liquidating Trustee shall have all the powers and rights of a Trustee under Chapter 7 and 11 of the Bankruptcy Code.

    a.    <u>Timing</u>. The CRO shall continue to serve the interests of the Bankruptcy Estates until the Effective Date. Upon the Effective Date, the position of CRO as it pertains to the Cases shall terminate; at the same time, the position of Liquidating Trustee shall be created.

b.      <u>Identity and Appointment</u>.  The initial Liquidating Trustee shall be determined by the CRO upon consultation with Creditors and notice of such election shall be filed with the court at least Seven (7) days prior to the Confirmation Hearing.

c.      <u>Tenure</u>.  Any Liquidating Trustee shall continue to serve in that capacity until the earlier of (1) his or her resignation (to be filed with the Court at least thirty (30) days prior to its effective date), (2) his or her inability or failure to perform the duties of Liquidating Trustee for a period of thirty (30) consecutive days or more, (3) his or her death, (4) the Termination Date, as defined in the Plan or (5) upon his/her removal via Court order after a motion and hearing for cause, including fraud or gross mismanagement.  Upon removal for any reason, the new Liquidating Trustee will be selected by the United States Trust subject to Court approval.

d.      <u>Compensation</u>.  As of the date of his or her appointment as Liquidating Trustee pursuant to the Plan, a Liquidating Trustee shall be entitled to compensation only as set forth in the Plan.  This compensation structure can be summarized as follows: (i) <u>Base Hourly Rate</u>.  The Liquidating Trustee shall be entitled to a base hourly rate of compensation equal $500 per hour.  Such compensation shall only be payable after the Office of the United States Trustee and Post Conformation Service List has received notice that compensation has been sought, with a copy of all invoices, and have had at least twenty-one (21) days to object to the fees sought.  In the event that any party objects to such fees being paid, the Liquidating Trustee shall file a fee application with the Court and no payments shall be made until approved by the Court at a properly noticed hearing.  The Liquidating Trustee shall not seek payment more frequently than every three (3) months; (ii) <u>Reimbursement of Costs</u>.  The Liquidating Trustee shall be entitled to reimbursement from the Extraordinary Income Account on a monthly basis of all reasonable out-of-pocket expenses incurred for the benefit of the Bankruptcy Estate.  All requests for

reimbursement shall be submitted to the Office of the United States Trustee for review and approval prior to payment by the Liquidating Trustee from the Extraordinary Income Account. Any disputes regarding the reasonableness of such expenses shall be resolved by the Court; (iii) Cap on Payments. The hourly compensation and the reimbursement of expenses provided for herein shall be capped based on the amount of Extraordinary Income recovered by that Liquidating Trustee after the Effective Date for the benefit of the Bankruptcy Estate (the "Excess Recovery Payments") calculated based upon the percentages set forth in Code § 326(a) as follows:

- 25% of the first $5,000 of Extraordinary Income recovered and distributed;

- 10% of Extraordinary Income recovered and distributed in excess of $5,000 but less than $50,000;

- 5% of Extraordinary Income recovered and distributed in excess of $50,000 but less than $1,000,000; and

- 3% of Extraordinary Income recovered and distributed in excess of $1,000,000.

    e.    Duties. The Liquidating Trustee shall be responsible for (1) implementing all strategies for the recovery of Extraordinary Income and handling the day-to-day management of any litigation or other activity commenced for that purpose including, without limitation, the negotiations of any settlements in connection with such litigation; (2) retaining and paying such Professionals as may be required to implement such strategies, and reviewing any requests for payment or reimbursement of expenses to any Professionals retained by Liquidating Trustee; (3) the orderly and efficient completion of the claims objection process; (4) control of the Debtors and, if needed, acting as manager; and (5) providing the parties with all information it

may request regarding Extraordinary Income recovery efforts, the fees or expenses incurred by the Liquidating Trustee or any Professionals or others retained by the Liquidating Trustee, any disbursement of funds held for the benefit of unsecured creditors with Allowed Claims which exceeds five thousand dollars ($5,000.00), and the status of the Extraordinary Income Account. Additionally, the Liquidating Trustee shall provide to the U.S. Trustee quarterly written litigation summaries which shall set forth the status of all litigation, the fees and expenses expended in connection with each piece of litigation, the anticipated recovery to be generated by each piece of litigation, and a calendar of future events in each piece of litigation.  The Liquidating Trustee shall have authority to negotiate settlements for any litigation or other action pertaining to the recovery of Extraordinary Income, but such subject to Court approval pursuant to FRBP 9019.

       f.    <u>Professionals</u>. Fees – Hourly – disclosed form of payments - Upon notice, with twenty-one (21) days to object, to the U.S. Trustee and the Post Confirmation Service List, the Liquidating Trustee may employ professionals, provided such professionals meet the requirements of Bankruptcy Code Section 327.  If there is an objection to any professional, employment will be decided by the Court after notice and hearing.  The professionals employed by the Debtors will automatically be deemed to be retained by the Liquidating Trust without the necessity for additional application.  Currently, the Liquidating Trust expects to retain: (i) Shuker & Dorris, as general counsel on an hourly basis with the same rates as set forth in the Application to Employ Shuker &Dorris; and (ii) Latham Luna as special bond counsel on an hourly basis.  The Liquidating Trust may also employ special litigation counsel on a contingent basis in respect of actions against professionals.  Compensation for professionals retained by the Liquidating Trust may be paid upon notice of requested fees and expenses (filed no more than every 60 days), with such notice providing twenty-one (21) days to object, and served along with invoices, upon the

U.S. Trustee and the Post Confirmation Service List.  In an objection is timely filed, the fee notice will be set for hearing and no amounts paid absent Court order after notice and hearing.

        C.      <u>Trust Assets</u>.

The Trust Assets shall, consist of (i) all Estate Assets, excluding assets transferred as set forth in the Plan; (ii) the Shively Contribution; and (iii) Causes of Action.  The Trust Assets will be used for all Plan Payments.

        D.      <u>Authority of the Liquidating Trust</u>.

The Liquidating Trust, through the Liquidating Trustee, shall have the full and complete power and authority to perform the following acts, in addition to any powers granted by law or conferred to it by any other provisions of the Plan; provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Trust to act as specifically authorized by any other provision of this Plan and to act in such manner as the Liquidating Trust may deem necessary or appropriate to discharge all obligations assumed by the Liquidating Trust or provided herein and to conserve and protect the Trust Assets or to confer on the Creditors the benefits intended to be conferred upon them by this Plan. The Liquidating Trust will also automatically be substituted as a party in any pending Causes of Action and have the full rights and powers of the Debtor in any such action without the requirement of obtaining further order from the Court. In addition to foregoing, the Liquidating Trust's authority shall include, but not be limited to, the ability to:

        1.      Perfect and secure the Liquidating Trust's right, title and interest to all property comprising the Trust Assets.

        2.      Reduce all Trust Assets to the Liquidating Trust's possession and hold same.

3.      Hire one or more professionals to assist in the collection and liquidation process.

4.      Release, convey or assign any right, title or interest in the Trust Assets.

5.      Deposit Estate funds, proceeds, and draw checks and make Distributions.

6.      Take such other action as the Liquidating Trust may determine to be necessary or desirable to carry out the purpose of the Plan.

7.      Commence or prosecute, for its own account or in the name of the Debtors, the Causes of Action, any lawsuit or other legal or equitable action, including filing objections to Claims, in any court of competent jurisdiction, which are necessary to carry out the terms and conditions of the Plan. The Liquidating Trustee shall also be vested with all right, powers and benefits afforded to a "trustee" under Section 704 and 1106 of the Bankruptcy Code, including specifically, the power to waive any attorney-client privilege which existed for the Debtors prior to Confirmation.

8.      Settle, compromise or adjust pursuant to the standards of Bankruptcy Rule 9019 (which shall be deemed to apply to all Post-Confirmation settlements), any disputes or controversies in favor of, or against, the Liquidating Trust, subject to review and approval by the Bankruptcy Court.

9.      Prepare and file tax returns, as mandated by applicable state, county, municipal and federal laws.

E.      Court Approval.

Although full operational control of the Liquidating Trust will be vested in the Liquidating Trustee, the Liquidating Trustee will be required to obtain Court approval for: (a) any compromise or settlement of any Causes of Action or Objection to Claim; (b) any asset sale not

specifically authorized in the Plan in excess of $10,000.00; and (c) any payment of Post-Confirmation Fees and Expenses in excess of $10,000.00. The approvals required hereunder may be obtained by the use of negative notice upon fourteen (14) days' notice to the Office of the United States Trustee, and any party who provides notice that it wishes to be notified of the actions of the Liquidating Trustee contemplated herein ("Post Confirmation Notice"). A request to receive Post Confirmation Notice shall be filed with the Court and served on the Liquidating Trustee. The Liquidating Trust via the Liquidating Trustee may retain professionals on such terms as the Liquidating Trustee deems reasonable, without Bankruptcy Court approval, except that payments to the professionals for Post-Confirmation Fees and Expenses shall be made only upon application and Court approval and no more than quarterly.

  F. <u>Operations of the Liquidating Trust</u>.

  1. The Liquidating Trustee shall have full and complete authority to perform all acts, execute all documents and make all payments and disbursements of funds directed to be done, executed, performed, paid and disbursed by the provisions of the Plan on behalf of the Liquidating Trust.

  2. The Liquidating Trustee shall prepare monthly reports regarding the distribution of Trust Assets and recoveries obtained from Causes of Action. The Liquidating Trustee shall also prepare a budget for the planned liquidation of the Trust Assets, which takes into consideration the expected expenses of liquidating the Trust Assets.

  3. The Liquidating Trustee shall keep an accounting of receipts and disbursements, which shall be open to inspection and review by the Court and creditors of the Debtor (upon reasonable notice, and without unduly interfering with the operations of the

Liquidating Trustee). The Liquidating Trustee shall provide copies of quarterly reports to creditors who request same in writing and shall be responsible for payment of all U.S. Trustee fees.

4.      No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee, his officers or directors, or any employee of the Liquidating Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Trustee under the Plan or by reason of the creation of any indebtedness by the Liquidating Trustee under this Plan for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Liquidating Trustee, its officers, directors and employees, whether in writing or otherwise, under this Plan shall be enforceable only against, and be satisfied only out of, the Trust Assets, or such part thereof as shall, under the terms of any such agreement, be liable therefor or shall be evidence only of a right of payment out of the income, proceeds and avails of the Trust Assets, as the case may be; every undertaking, contract, covenant, or agreement entered into in writing by the Liquidating Trustee shall provide expressly against the personal liability of the Liquidating Trustee.

5.      The Liquidating Trustee shall not be liable for any act he may do, or omit to do hereunder while acting in good faith and in the exercise of his best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Liquidating Trustee, shall be conclusive evidence of such good faith and best judgment. However, this paragraph shall not apply to any gross negligence or willful misconduct by the Liquidating Trustee or his agents, officers, or employees.

G.      <u>Distributions</u>.

45

a.      Order of Payments.  As of the Effective Date, all Allowed Administrative Expense and Priority Claims shall be fully satisfied and all Interests shall be extinguished, all as provided for in the Plan.  Allowed Class 30 Claims shall be paid as provided for herein.

b.      Final Payment.  Upon the occurrence of the Termination Date, the Liquidating Trustee shall, as rapidly as practical in light of any ongoing Extraordinary Income recovery activities, distribute all remaining funds in the Extraordinary Income Account as provided for in the Plan.  In the event that the amount of such Final Payment exceeds the aggregate unpaid balance of all remaining Allowed Claims, then any excess Extraordinary Income above such level shall be divided among all Holders of Allowed Claims on a *pro rata* basis.  After making the Final Payment, the Liquidating Trustee shall close the Extraordinary Income Account.

c.      Extraordinary Income.  Extraordinary Income is any funds recovered in connection with (a) any and all legal actions, or threatened legal actions, commenced pursuant to Code §§541 through 554 or pursuant to comparable provisions of the laws of any jurisdiction, whether Florida, state or foreign; (b) any and all causes of actions or threatened legal actions based on theories of fraud, embezzlement, civil theft, fraudulent misrepresentation, negligent misrepresentation, breaches of fiduciary duty, violations of federal or state Racketeer Influenced and Corrupt Organizations laws or any other business tort; (c) any and all causes of action pertaining to the securities laws of any jurisdiction; (d) any restitution claims made to the Liquidating Trustee in connection with criminal prosecutions of people having connections to Debtors; and (e) liquidation of any existing Assets of the estate including proceeds from insurance policy.  Extraordinary Income includes not only actual recoveries from legal proceedings but also any funds paid to settle such legal proceedings, whether or not any legal proceedings have been filed.  Extraordinary Income shall only be used as provided for in the Plan.  Since the Debtors are

46

no longer engaged in ordinary business operations after consummating the transfer of substantially all of its assets, all income received by the Liquidating Trustee after the Petition Date will be Extraordinary Income.

      H.        <u>Dissolution of the Liquidating Trust</u>.

      Upon making the Final Distribution under the Plan, the Liquidating Trustee shall file a final report and a final tax return and dissolve the Liquidating Trust.

      I.        <u>Procedures for Resolving Disputed Claims</u>.

      1.        <u>Prosecution of Objections to Claims</u>.

      Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Liquidating Trustee shall have the exclusive right to make and file objections to all Claims. All objections commenced prior to the Confirmation Date shall be finished by the Liquidating Trust.

      Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Effective Date.

      Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that either Debtors had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan. Except as set forth in the Plan, upon Confirmation the Liquidating Trust shall have,

retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that either Debtors had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Cases had not been commenced.

2.    Estimation of Claims.

Pursuant to the Plan, the CRO may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the CRO has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Chapter 11 Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.    Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

4.      Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Liquidating Trustee such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order.  Unless otherwise agreed to by the Liquidating Trust or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

5.      Allowance of Claims and Interests.

(i)      Disallowance of Claims.

According to the Plan, all Claims held by entities against whom the Debtors have obtained a Final Order establishing liability for a Cause of Action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Liquidating Trust by that Entity are turned over to the Liquidating Trust.  The Liquidating Trust reserves and shall have the exclusive right and authority to bring any Causes of Action before and after the Effective Date.

(ii)    <u>Allowance of Claims</u>.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

(iii)    <u>Determination of Claims.</u>

Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court on or before ninety (90) days following the Effective Date (unless such period is extended by the Bankruptcy Court) and the Confirmation Order shall include appropriate language to that effect. Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise.  If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. The determination of Claims in estimation hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution.  Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Rules and the need for prompt determination of the Disputed Claim.

(iv)    <u>Determination of Allowed Amounts</u>.

The treatment prescribed for Claims shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of the Allowed Amount of such Claim by agreement or through the entry of a Final Order. Notwithstanding Confirmation of the Plan, the Liquidating Trustee, as appropriate, shall have the right to object to any Claim for any reason authorized by applicable bankruptcy and non-bankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief. Entry of the Confirmation Order shall be deemed to be recognition that the Court expressly retains jurisdiction as to determination of all such issues pursuant to the terms of the Plan and of the Confirmation Order.

6.    <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

## VII.    <u>ARTICLE VII - CONFIRMATION</u>

### A.    **Confirmation Hearing**

Section 1128 of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing.

Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to Confirmation Hearing:

| Counsel for the Debtor: | Debtors: |
|---|---|
| R. Scott Shuker, Esquire<br>Shuker & Dorris, P.A.<br>121 S. Orange Avenue, Suite 1120<br>Orlando, Florida 32801 | c/o Troy T. Taylor<br>2457 Collins Avenue, PH2<br>Miami Beach, FL 33140 |
| United States Trustee:<br><br>United States Trustee<br>Office of The United States Trustee<br>110 East Park Avenue, Suite 128<br>Tallahassee, FL 32301 | |

**B.    Financial Information Relevant to Confirmation**

Attached as exhibits to this Disclosure Statement, and incorporated herein, are the following:

1.    A copy of the exact amount of the Shively Contribution and POA Payment is attached hereto as **Exhibit "A"[4]**; and

2.    Debtors' chapter 7 liquidation analysis (the "Liquidation Analysis") is attached hereto as **Exhibit "B"**. The Liquidation Analysis demonstrates that Creditors will receive under the Plan an amount not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7.

---

[4] Exhibit A will be filed at least seven (7) days prior to the hearing on the Disclosure Statement.

### C.    Confirmation Standards

For a plan of liquidation to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and complies with the applicable provisions of chapter 11 of the Bankruptcy Code. Section 1129 of the Bankruptcy Code also imposes requirements that at least one class of Impaired Claims accept the plan, that confirmation of the plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all the requirements enumerated in section 1129 of the Bankruptcy Code have been met. The Debtors believe that the Plan satisfies all the requirements for Confirmation.

### 1.    Best Interests Test

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each Holder of an Allowed Claim of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if Debtors were, on the Effective Date, liquidated under chapter 7 of the Bankruptcy Code. The Debtors believe that satisfaction of this test is established by the Liquidation Analysis.

To determine what Holders of Claims would receive if the Debtors were liquidated, the Bankruptcy Court must determine how the assets and properties of the Debtors would be liquidated and distributed in the context of a chapter 7 liquidation case. The Debtors' costs of liquidation under chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee and any unpaid

expenses incurred by the Debtors during the Bankruptcy Cases, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in a chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors would receive any meaningful distribution. The foregoing types of Claims arising from chapter 7 administration and such other Claims as may arise in chapter 7 or result from the pending Bankruptcy Cases would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in chapter 7 might substantially delay the date at which Creditors would receive any Payment.

The Debtors have carefully considered the probable effects of liquidation under chapter 7 on the ultimate proceeds available for distribution to Creditors, including the following:

a.    the possible costs and expenses of the chapter 7 trustee or trustees;

b.    the possible adverse effect on recoveries by Creditors under chapter 7 due to reduced sale prices for the Debtors' assets caused by the forced chapter 7 liquidation;

c.    the loss of the going-concern value of the Debtors' businesses; and

d.    the possible substantial increase in Claims, which would rank prior to or on parity with those of Unsecured Creditors.

2.    <u>Financial Feasibility</u>

The Bankruptcy Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors unless the liquidation is proposed in the Plan. Because the Plan calls for liquidating feasibility is not applicable.

3.    <u>Acceptance by Impaired Classes</u>

The Bankruptcy Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by Holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under the Plan is deemed to have accepted the Plan; solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the Holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the Holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the Holder is entitled.

4.    <u>Confirmation Without Acceptance by all Impaired Classes: "Cramdown"</u>

The Bankruptcy Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one (1) Impaired Class of Claims. Section 1129(b)(1) of the Bankruptcy Code states:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**DEBTORS BELIEVE THAT, IF NECESSARY, THEY WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE BANKRUPTCY CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

**D.    Consummation**

The Plan will be consummated, and Payments made if the Plan is Confirmed pursuant to a Final Order of the Bankruptcy Court and the Effective Date occurs. It will not be necessary for the Debtors or Liquidating Trust to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Bankruptcy Code.

## VIII.    ARTICLE VIII – MISCELLANEOUS PROVISIONS

### A.    RELEASE AND INJUNCTIONS.

(i)    Ms. Patricia Shively / Released Party

Ms. Shively is the principal member of Debtors and each SPE. Ms. Shively has contributed over $150,000,000 to the Debtors, extended over $5,000,000 in post-petition loans, and has guaranties on over $200,000,000 in obligations. Ms. Shively, in return for the releases herein, is willing to make the Shively Contribution, waive any claims against Debtors and each SPE, and

allow all membership interests to be extinguished. Without the Shively Contribution, the Plan cannot be confirmed.

In consideration of the substantial contributions made and to be made by Ms. Shively, the Plan contemplates the provision to Ms. Shively of broad third-party releases and injunctions of pursuit against Ms. Shively of claims arising out of and deriving from the business operations and financial affairs of the Debtors or any SPE. The third-party releases and injunctions will not include Claims or liabilities of Ms. Shively owing to holders of Claims against the Debtors that do not relate to or arise from transactions with the Debtors or an SPE.

(ii)    <u>Release/Injunctions</u>

The Plan is premised upon the releases contained below. Debtors assert the releases are being given as consideration for the accommodations provided by the Released Parties under the Plan and are fair consideration for, as the case may be, funds contributed or valuable services. The Debtors believe that unless the settlement is binding on all parties through confirmation of the Plan, protracted and costly litigation would ensue, distributions to Creditors would be substantially diminished and the Debtors would not be able to confirm a Plan. The Releases described in this Article VIII in the Plan shall become effective on the Effective Date, and all Holders of Claims and Interests, shall be enjoined from commencing or continuing any Released Claims against any Released Parties; provided that from and after the Confirmation Date, all such enjoined parties shall be enjoined from commencing or continuing any such claim that will become a Released Claim against each such Released Party and provided further that in the event the Bankruptcy Court determines that a Released Party has not complied with the terms of the Release, the injunction with respect to such Released Party shall be dissolved.

a. **Rule 3016(c) Declaration**. In accordance with the requirements of Rule 3016(c),

the provisions of this Article VIII operate to specifically release the Released Parties from all liabilities associated with their guarantees and business interests in the Debtors and in this case. By reason of her contribution of settlement funds and knowledge of the Debtors affairs, the contribution of Ms. Shively is critical to the successful confirmation of the Plan. The Debtors believe that without the protection of such injunctions, the Plan would fail.

Within this Section, **bold print and italics** are used to identify the exact nature of releases and to identify the parties subject to the release.

b. **General Releases by Holders of Claims or Interests**. *On the Effective Date, in consideration for the obligations of the Debtors, its managers, members, directors and officers, and Liquidating Trust under the Plan, and the cash, stock, warrants and other contracts, instruments, releases, written agreements or other documents to be entered into or delivered in connection with the Plan, and all consideration distributed under the Plan,* **all Holders of Claims and Interests** *will be deemed to forever release, waive, discontinue and discharge all existing and future claims, obligations, proceedings, suits, judgments, damages, demands, debts, rights, Causes of Action, objections to the Claims of the Released Parties that have been assigned to other Creditors of the Debtor in connection with their Release of Ms. Shively, and liabilities (other than the right to enforce Released Parties' obligations under the Plan and the contracts, instruments, releases, written agreements or other documents to be entered into or delivered in connection with the Plan) that are based in whole or in part on any act, failure to act, guaranties, omission, transaction or other occurrence taking place on or prior to the Effective Date, including without limitation any claim such Holder had, or may have against the Released Parties, and including but not limited to all claims arising/ram the business activities, loans to, or contracts with, contracts with, or the operations and  activities of the Debtors, excepting therefrom only the*

*personal obligation of or personal liability of Ms. Shively to the Holder of a Claim against the Debtors arising solely for personal or family purposes  and other personal and consumer obligations (the "Shively Excepted Liabilities").*

c. **General Releases by Holders of Claims or Interests**. *On the Effective Date, and in consideration of the contributions of Ms. Shively, and conditioned upon Ms. Shively funding the Shively Contribution, the support by Ms. Shively for approval of the Plan, and the cooperation of Ms. Shively in the transfers under the Plan,* **the Debtors and Liquidating Trust** *shall be deemed to have released, waived, and discharged Ms. Shively from any and all claims, obligations, suits, judgments, damages, rights, causes of action, and liabilities whatsoever, including without limitations any claim or cause of action pursuant to Section 542 through 554 of the Bankruptcy Code, inclusive, whether known or unknown, foreseen or unforeseen, existing or hereafter arising in law, equity, or otherwise, and based in whole or in part upon any act or omission, transaction, even, or other  occurrence taking place on or prior to the Effective Date.*

d. **Injunction Related to Releases**.

i. *Except as expressly provided in the Plan or to otherwise enforce the terms of the Plan, as of the Confirmation Date, but conditioned upon the occurrence of the Effective Date,* **all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan**, *to the fullest extent permitted by applicable law, are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or continuing in any manner any action or proceeding against the Debtors, Liquidating Trust, or its respective property, other than to enforce any right pursuant to the Plan to a distribution; (ii) enforcing, attaching, collecting or*

recovering in any manner any judgment, award, decree, or order against the Debtors or Liquidating Trust, other than as permitted pursuant to (i) above; (iii) creating, perfecting, or enforcing any lien or encumbrance against the Debtors, Liquidating Trust or its respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or Liquidating Trust; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

ii. *Except as expressly provided in the Plan or to otherwise enforce the terms of the Plan or the obligation of the Released Parties' under the Plan, as of the Confirmation Date, but conditioned upon the occurrence of the Effective Date, and the continued performance of the Released Parties' obligations under the terms of the Release, **all Persons that have held, currently hold or may hold a Claim or other debt or liability that are released, waived or discharged or in interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan**, to the fullest extent permitted by applicable law, are permanently enjoined from taking any actions against any released Person or entity or its property on account of such released claims, demands, rights, causes of action or liabilities including, without limitation: (i) commencing or continuing in any manner any action or other proceeding;(ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan; provided that any such Person may petition the Bankruptcy Court for relief from such injunction and upon a determination by the Bankruptcy*

*Court that a Released Party has not complied with the terms of the Release, the injunction with*
*respect to such Released Party shall be dissolved*

      **B.**      **Exculpation from Liability**

            The Debtors, and its officers, directors, members, managers, managing members, and Professionals, including each member of the Committee and its retained professionals, (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided*, *however*, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtors, the Reorganized Debtors, and its respective agents have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED; *PROVIDED THAT*, THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtors shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtors members, managers or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

### C.    Police Power

No provision of Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to section 1141 of the Bankruptcy Code.

### D.    Revocation and Withdrawal of this Plan

The Debtors reserve the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Debtors revoke and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

E.     **Modification of Plan**

The Debtors may seek to amend or modify this Disclosure Statement and the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtors may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

IX.     <u>**ARTICLE IX - ALTERNATIVE TO THE PLAN**</u>

If the Plan is not confirmed and consummated, the Debtors believe the most likely alternative is a liquidation of the Debtors' Assets under chapter 7 of the Bankruptcy Code. In a chapter 7 liquidation, there would be no assets to administer on behalf of unsecured creditors, and a chapter 7 trustee would likely incur significant Administrative Expenses that would be paid before any distribution to creditors. The Debtors therefore believe that liquidation of all real and personal property in a chapter 7 case would dramatically reduce the total amount available to Creditors as compared to reorganization under the Plan. In light of the foregoing, the Debtors recommend that Holders of Claims vote to accept the Plan.

**RESPECTFULLY SUBMITTED** this 7th day of January 2026.

s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
Mariane L. Dorris, Esq.
Florida Bar No. 173665
mdorris@shukerdorris.com

Lauren L. Stricker, Esq.
Florida Bar No. 91526
lstricker@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801
Tel: 407-337-2060
*Attorneys for the Debtors*