UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION
www.flnb.uscourts.gov

In re:

| | |
|---|---|
| CELEBRATION POINTE HOLDINGS, LLC | Case No. 24-10056-KKS |
| CELEBRATION POINTE HOLDINGS II, LLC | Case No. 24-10057-KKS |
| SHD-CELEBRATION POINTE HOLDINGS, LLC | Case No. 24-10058-KKS |

Chapter 11

*Joint administration under*
*Case No. 24-10056-KKS*

Debtors.

_____/

## PATRICIA SHIVELY'S MOTION TO QUASH RULE 2004 SUBPOENA AND FOR A PROTECTIVE ORDER

Patricia Shively ("**Ms. Shively**"), by and through counsel, pursuant to Fed. R. Civ. P. 45(d)(3), as made applicable here pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), files this Motion to Quash Rule 2004 Subpoena and for a Protective Order (the "**Motion**") and in support thereof states as follows:

1.      On April 1, 2026, U.S. Bank Trust Company, National Association as Indenture Trustee ("**U.S. Bank**") filed its Notice of Rule 2004 Examination [ECF No. 542] (the "**Rule 2004 Notice**") along with a Notice of Subpoena for Rule 2004 Examination [ECF No. 543] (the "**Subpoena**" and collectively with the Rule 2004 Notice, the "**Rule 2004 Exam**") seeking production of 77 different categories of documents on or before April 28, 2026 (the "**Requests**") and noticing Ms. Shively's deposition upon oral examination for May 12, 2026.

2.      On April 17, 2026, Ms. Shively served U.S. Bank with objections to the Rule 2004 Exam and the Requests ("**Objections**").  The Objections are appended hereto as Exhibits A and B respectively and incorporated herein by reference.

1

4918-7733-0086 v.1

3.      On April 27, 2026, counsel to Ms. Shively and counsel to U.S. Bank participated in a meet and confer session to attempt to resolve the issues raised in the Objections.  The meet and confer was largely unsuccessful.  However, Ms. Shively did agree to produce certain financial information subject to execution of a protective order and has provided U.S. Bank with a draft of that protective order.

4.      U.S. Bank seeks to embark on an impermissible fishing expedition under the guise of Rule 2004, which would allow U.S. Bank to skirt the stricter procedural requirements that govern discovery of contested matters.  This Court should not allow such discovery of Ms. Shively, a non-party to these proceedings.  What is relevant here is Ms. Shively's ability to fund the Second Amended Plan, not every detail that occurred in the life of the Celebration Pointe project over the last 15 years.

5.      *First*, Rule 2004 is inapplicable here.  The filing of the Joint Second Amended Plan of Liquidation for Celebration Pointe Holdings, LLC, et al. [ECF No. 547] (the "**Second Amended Plan**") initiated a contested matter, thereby barring discovery under Rule 2004 under the pending proceeding rule.

6.      *Second*, the Subpoena imposes an undue burden on Ms. Shively, who is a non-party to these proceedings.  The Requests are overbroad, not tailored with particularity, and impose a burden on Ms. Shively.  In fact, many of the Requests seeks documents the Debtors would have that U.S. Bank now seeks to have Ms. Shively search for, collect, and produce.

7.      *Finally*, many of the documents requested by U.S. bank are protected by privilege.

8.      As discussed more fully below, the Court should quash the Subpoena or alternatively enter a protective order: (i) prohibiting U.S. Bank with proceeding with discovery under Rule 2004, (ii) requiring any discovery by U.S. Bank to proceed under the discovery rules

2

4918-7733-0086 v.1

outlined in Rule 9014(c), and (iii) limiting the scope of any such discovery to treatment of U.S. Bank's claim and Ms. Shively's ability to fund the Second Amended Plan.[1]

## The Status of the Case and the Pending Contested Matters

9.      On March 14, 2024, Celebration Pointe Holdings, LLC, Celebration Pointe Holdings II, LLC and SHD Celebration Pointe Holdings, LLC (collectively the "**Debtors**") filed petitions for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), which are being jointly administered under Case No. 24-10056 (the "**Cases**").

10.      On March 2, 2026, the Debtors filed the Joint Amended Chapter 11 Plan of Liquidation for Celebration Pointe Holdings, LLC, et al. [ECF No. 493] and an Amended Disclosure Statement for the Amended Joint Plan of Liquidation, pursuant to 11 U.S.C. § 1125 for Celebration Pointe Holdings, LLC, et al. (the "**Amended Disclosure Statement**") [ECF No. 494].

11.      The Amended Disclosure Statement received several objections including an objection by U.S. Bank. *See* [ECF No. 508].

12.      On April 10, 2026, the Debtors filed the Second Amended Plan and the Second Amended Disclosure Statement for the Joint Second Amended Plan of Liquidation pursuant to 11 U.S.C. § 1125 for Celebration Pointe Holdings, LLC, et al. [ECF No. 548] (the "**Second Amended Disclosure Statement**").

13.      The Second Amended Plan initiated a contested matter, thereby precluding the Rule 2004 examination and Subpoena sought by U.S. Bank under the pending proceeding rule.

---

[1] Ms. Shively has agreed to sit for a deposition and will produce documents in advance of that deposition – but objects to doing so under Rule 2004, as explained more fully below.

4918-7733-0086 v.1

**Argument**

**I.      Rule 2004 Examinations Generally**

14.      The scope of an examination permitted by Rule 2004 may relate only "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the bankruptcy estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

15.      Based on this language in Rule 2004, some courts have emphasized the broad nature of a Rule 2004 examination and likened it to a "fishing expedition." *See, e.g., In re Gaime*, Case No. 8:18-bk-05198-RCT, 2018 WL 7199806, *3 (Bankr. M.D. Fla. Dec. 18, 2018).

16.      Despite the broad nature of a Rule 2004 examination, it is not without limits. Rule 2004 discovery cannot be used "for purposes of harassment and cannot stray into matters which are not relevant to the basic inquiry." *In re Banco Master*, Case No. 25-24568-SMG, 2026 WL 931729, *3 (Bankr. S.D. Fla. Apr. 6, 2026) (quoting *In re Washington Mutual, Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)); *In re Combs*, 668 B.R. 896, 906 (Bankr. M.D. Fla. 2025); *In re No Rust Rebar, Inc.*, Case No. 21-12188-PDR, 2022 WL 17365810, *2 (Bankr. S.D. Fla. Nov. 30, 2022). Further, "Rule 2004 discovery should not be permitted when it is being used to gain an advantage in private litigation." *In re No Rust Rebar*, 2022 WL at *2 (quoting *In re Defoor Ctr. LLC*, 634 B.R. 630, 640 (Bankr. M.D. Fla. 2021)).

17.      The party seeking an examination under Rule 2004 bears the "initial burden to demonstrate that the information sought falls within the permissible scope of Rule 2004." *In re Banco Master*, 2026 WL at *2. The request by a party for a protective order does not modify the movant's initial burden. *Id.*

18.      Moreover, courts consistently acknowledge that "[i]t is clear that Rule 2004 may

4

not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Kearney*, 590 B.R. 913, 921 (Bankr. D.N.M. 2018) (quoting *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985)).

**II.**     **The Pending Proceeding Doctrine Prohibits this 2004 Examination**

A.  The Pending Proceeding Rule and its Rationale

19.     "The pending proceeding rule states that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to Federal Rule of Bankruptcy Procedure 7026 *et seq.*, rather than by a [Rule] 2004 examination." *In re Camferdam*, 597 B.R. 170, 173-174 (Bankr. N.D. Fla. 2018) (quoting *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)) (internal quotations omitted).

20.     The rule is "grounded in preventing parties from using the broad and flexible scope of Rule 2004 to circumvent the more restrictive discovery framework that governs adversary proceedings and contested matters." *In re Banco Master*, 2026 WL at *7; *see also In re Gaime*, 2018 WL at *3 (the concern underlying the pending proceeding rule arises due to broad scope of Rule 2004, often being likened to a "fishing expedition"); *In re Enron Corp.*, 281 B.R. 836, 840-41 (Bankr. S.D.N.Y. 2002) (the purpose of the pending proceeding rule is to prevent Rule 2004 from being used "as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."). Those safeguards are significant: under Rule 2004, a witness has "no general right to representation by counsel during a deposition, and the right to object to immaterial or improper questions is limited." *In re Combs*, 668 B.R. at 906.

21.     Indeed, in the Rule 2004 Request, it is evident that U.S. Bank intends to go on a fishing expedition and circumvent the safeguards in place that would govern contested matters by seeking voluminous and disparate documents which have no relevance to the contested

confirmation issues. *See, e.g.,* [ECF No. 543] at ¶ 7 ("All Documents and Communication relating to any negotiations, settlement discussion, or other communication You have had with any lender to the Debtors or the non-Debtor Affiliates."); ¶ 59 ("All Documents relating to any Communications between You and Svein Dyrkolbotn."); ¶ 74 ("All Documents evidencing the value of real property in which You hold an interest.").

### B. Defining Contested Matters

22.     The term "contested matter" is not defined in the Bankruptcy Code. The Advisory Committee Note (1983) to Rule 9014 provides that "[w]henever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter." Collier states that all bankruptcy cases are either adversary proceedings, contested matters, or administrative matters:

> Broadly speaking, disputes that arise in bankruptcy cases can be divided into the following categories: (1) adversary proceedings, governed by Part VII of the Federal Rules of Bankruptcy Procedure; (2) administrative matters, in which there is no adversary party (for example, an unopposed motion by trustee to sell property of the estate); and (3) contested matters, which do not qualify as adversary proceedings because they are not included in the Rule 7001 list.

10A Collier on Bankruptcy ¶ 9014.01 (16th ed. 2025); *see also In re AMH Motorsports, LLC*, Case No. 6:24-bk-04428-LVV, 2025 WL 1093325, *3 (Bankr. M.D. Fla. Mar. 31, 2025) (citing to Collier approvingly).

23.     Accordingly, a contested matter is "[a]ny disputed issue that is not listed in Rule 7001[.]" *Id.*; *see also Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1326 (11th Cir. 2015) ("A contested matter is…any litigation resolving an actual dispute, other than an adversary proceedings, before the bankruptcy court") (internal quotation marks omitted); *Anthony v. Ocwen Loan Servicing, LLC (In re Anthony)*, 550 B.R. 577, 579-580 (M.D. Fla. 2016).

24.     In certain instances, the Bankruptcy Rules provide that certain motions are

6

governed by Rule 9014; however, contested matters are not limited to those instances. *Id.*, at *4 (Eleventh Circuit has held that a motion to extend the bar date to object to a discharge is a contested matter even though Rule 4004(b) does not specify it as being governed by Rule 9014) (citing *Coggin v. Coggin (In re Coggin)*, 30 F.3d 1443, 1447 (11th Cir. 1994) *abrogated on other grounds by Kontrick v. Ryan*, 540 U.S. 443 (2004)); *see also United States v. Laughlin (In re Laughlin)*, 210 B.R. 659, 661 (1st Cir. BAP 1997) (filing a motion to abate federal tax penalties initiates a contested matter).

25.     An objection is not required for a matter to be a contested matter. As the court explained in *AMH Motorsports*, no response is required for a matter to be a contested matter based on the literal language of Rule 9014. *Id.*, at *3 n.11; *see also* Rule 9014 ("No response is required unless the court orders otherwise."). If no response is required to make a matter a contested matter, that necessarily must mean that a matter may be a contested matter from the moment a motion or other filing seeking relief is filed. *AMH Motorsports*, 2025 WL at *3 n.11.

26.     The court in *AMH Motorsports* found that such an interpretation made sense "because Rule 9014's requirement that motions be served pursuant to Rule 7004 would otherwise provide no guidance on how to serve motions that are contested matters apart from instances where the rules provide they are governed by Rule 9014." *Id.*

C. Confirmation of the Second Amended Plan is a Contested Matter Due to the Nature of Relief Sought Against U.S. Bank

27.     The Second Amended Plan classifies two separate claims for U.S. Bank.

28.     Class 1 consists of an allowed secured claim by U.S. Bank with respect to Celebration Pointe Holdings, LLC based on various prepetition loan and bond documents which form the basis of several bond series issued by the Community Development District ("**CDD**").

7

Class 1 is listed as impaired.[2]

29.     Class 2 consists of an allowed secured claim by U.S. Bank with respect to Celebration Pointe Holdings II, LLC based on various prepetition loan and bond documents which form the basis of several bond series issued by the CDD. Class 2 is listed as impaired.[3]

30.     The Second Amended Plan provides a provision that allows the Debtors to confirm the plan notwithstanding rejection of the plan by all but one Impaired Classes of Claims[4] by cramming down the dissenting class holders pursuant to 11 U.S.C. § 1129(b)(1).[5]

31.     The Second Amended Plan further provides with respect to cramdown:

**DEBTORS BELIEVE THAT, IF NECESSARY, THEY WILL BE ABLE TO MEET THE STATUTORY STANDARD SET FORTH IN THE BANKRUPTCY CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF PLAN AND WILL SEEK SUCH RELIEF.[6]**

32.     The Second Amended Plan provides that for both Class 1 and 2, within 30 days of the effective day of the plan, U.S. Bank shall:

(a) receive the respective amount of past due annual assessments (including interest at the weighted average coupon rate) from each respective Holder of an Allowed Secured Claims on real property subject to the bond debt and, thereafter, receive from each land owner the required bi-annual payments of applicable interest and principal as required under the Bond Documents and assessment proceedings, without penalties or interest added; or (b) be permitted, as the indubitable equivalent of its Allowed Claim, to exercise all state law rights contained in the Bond Documents and assessment proceedings.[7]

---

[2] [ECF No. 547] at 20.

[3] *Id.*

[4] All capitalized undefined terms used herein shall have the meanings ascribed to them in either the Second Amended Plan or the Second Amended Disclosure Statement.

[5] *Id.* at 64-65.

[6] *Id.* at 64-65.

[7] *Id.* at 28-30.

8

33.     The Second Amended Plan further provides that under both options, the treatment of U.S. Bank's claim will be determined in an adversary proceeding under FRBP 7001 seeking declaratory relief as to certain provisions of the bond documents related to Class 1 and 2 and that the treatment of U.S. Bank's claims consists of disputed issues:

> Both options (a) and (b) shall be subject to the Bankruptcy CDD Adversary under which the Bankruptcy Court will have jurisdiction to consider the legality of the Bonds and assessments, and the Claimant's right to reallocate and demand density true-up under applicable law and Bond Documents. The treatment of this Class is expected to require adjudication of disputed issues concerning the legality, enforceability, allocation, and implementation of the CDD bond assessments and related rights under applicable law and the Bond Documents; however, such litigation is expected to occur post confirmation.[8]

34.     Accordingly, due to the treatment of U.S. Bank's claim in the Second Amended Plan, the filing of such plan initiated a contested matter. *See In re Synthesis Indus. Holdings 1 LLC*, Case No. 18-15993-MKN, 2019 WL 5783254, *5 (Bankr. D. Nev. Aug. 7, 2019) ("Because the Debtor sought cramdown of the dissenting classes in its proposed Chapter 11 plan, its request for plan confirmation was a contested matter governed by FRBP 9014 that required proper service under FRBP 7004."); *Rosbottom v. Schiff*, 589 B.R. 63, 70-71 (W.D. La. 2018) ("A proposed equitable subordination of an interest is normally considered an adversary proceeding *except* when the equitable subordination is contained within a proposed Chapter 11 plan. FRBP 7001(8). ***When an equitable subordination clause is contained within a proposed Chapter 11 plan its inclusion merely raises a contested matter.*** Therefore, the Disclosure Statement, proposed Plan, and related hearings in this care are properly considered 'contested matters' under FRBP 9014.") (emphasis added) (internal citations omitted); *In re Hoskins*, 262 B.R. 693, 697 (Bankr. E.D. Mich. 2001) (holding the plan itself functions as the

---

[8] *Id.* at 28-30.

initiating motion for a contested matter); [9] *see also AMH Motorsports*, 2025 WL at *4 (the key to determining whether a matter is a contested matter is "whether a dispute can be anticipated due to the nature of the relief requested").

        D. <u>U.S. Bank's Actions During these Cases Evidence that Confirmation of the Second Amended Plan is a Contested Matter</u>

35.     As discussed above, U.S. Bank objected to the Debtors' Amended Disclosure Statement.

36.     At the hearing on the conditional approval of the Second Amended Disclosure Statement on March 10, 2026, U.S. Bank's counsel made numerous statements evidencing that confirmation is a contested matter:

- U.S. Bank "will want significant discovery because of what's being proposed here" and would "need probably 150 days to flesh all this out."[10]

- The Debtors are "trying to modify the rights of bondholders in contravention of Florida law" and that "we're entitled to due process to take discovery."[11]

- The purpose of the plan "is to essentially put the bondholders on the chopping table" and acknowledging that treatment of U.S. Bank's claim is a confirmation issue.[12]

- "[W]e have issues here that are very problematic in terms of the treatment of the bondholders."[13]

---

[9] In so holding, the court noted that the debtors "ultimate objective in [filing the plan], of course, was to have the plan confirmed. The federal bankruptcy rules do not contemplate the filing by the debtor of a formal 'motion' to confirm . . . . If only implicitly, then, it is fair to say that the very act of filing a plan constitutes a request that the Court enter an order confirming it, and so the chapter 13 plan itself is a motion. Black's Law Dictionary (7th ed.1999) (A 'motion' ... [is a] 'written or oral application requesting a court to make a specified ruling or order.')." *Hoskins*, 262 B.R. at 697 (internal citations omitted).

[10] *See* Transcript of Hearing on Second Amended Disclosure Statement [ECF No. 530] (Hr'g Tr. at 22:15-20), a copy of which is attached hereto as **Exhibit C**.

[11] (Hr'g Tr. at 40:12-15).

[12] (Hr'g Tr. at 20:19-21:1).

[13] (Hr'g Tr. at 22:13-14).

10

4918-7733-0086 v.1

- ▪ "Unfortunately, [the Debtors are] trying to modify the rights of the bondholders in contravention of Florida law."[14]

- ▪ U.S. Bank is likely to object to confirmation.[15]

37.    While the Second Amended Plan was filed after this hearing, it did not change the treatment of U.S. Bank's claims. Indeed, as the Debtors disclosed in the Second Amended Disclosure Statement:

At that hearing, multiple parties in interest advised the Court that significant issues remained for confirmation. Counsel for the Debtors acknowledged on the record that many of the objections raised to the Disclosure Statement were, in substance, confirmation issues, that the bondholders were likely to be the primary objecting party, and that additional discovery would be needed to prepare for trial on those issues. Counsel for U.S. Bank likewise advised the Court that the treatment proposed for the bondholders raised significant due-process and plan-treatment concerns, and that U.S. Bank anticipated the need for substantial discovery in advance of confirmation. Other parties similarly reserved rights on issues they characterized as confirmation issues. Following that hearing, the Court denied approval of the amended Disclosure Statement, set a further disclosure hearing, a status hearing, and scheduled a day-and-a-half confirmation hearing. Accordingly, the Debtors anticipate that confirmation of the Plan will involve the adjudication of disputed issues and, if necessary, an evidentiary contested confirmation hearing.

Based on the positions stated on the record at the March 10, 2026 hearing, including the stated intent of U.S. Bank to seek substantial discovery concerning plan treatment and related issues, the Debtors anticipate that confirmation will likely be contested and may require the Bankruptcy Court to resolve disputed issues through an evidentiary hearing.[16]

38.    Where, as here, a disclosure statement objection raised plan confirmation issues, it triggers a contested matter with respect to the proposed plan. *See In re Graham*, 506 B.R. 745, 747 (Bankr. W.D. Mich. 2014) ("The parties recognized that their dispute, though raised in response to the Disclosure Statement, directly implicates plan confirmation. The Debtors,

---

[14] (Hr'g Tr. at 40:11-13).

[15] (Hr'g Tr. at 21:14-20).

[16][ECF No. 548] at pp. 12-13.

11

therefore, withdrew the Disclosure Statement on the record at the hearing, but left the Plan in place, asking the court to resolve the legal dispute underlying the Creditor's objection [to the Disclosure Statement] as part of plan confirmation, addressing this aspect of the contested matter on the papers to be submitted.").

39.     Indeed, by U.S. Bank's own admission the objections it raised to the Second Amended Disclosure Statement were confirmation issues. *See* (Hr'g Tr. 19:24-20:2; 20:22-21:1) ("the Debtors have yet to propose a Chapter 11 plan containing adequate information for creditors to determine whether to vote on the plan, much less proposing a confirmable plan" and the purpose of the plan was to "put the bondholders on the chopping table. We don't think that's appropriate. We would acknowledge that that is a confirmation issue, the treatment is a confirmation issue.").

**III.     U.S. Bank has not demonstrated good cause for a Rule 2004 exam**

40.     Further, the moving party must also demonstrate good cause for conducting discovery under Rule 2004. *In re Gaime*, 2018 WL at *2; *In re Defoor*, 634 B.R. at 638.

41.     "This burden can be satisfied by demonstrating either than the Rule 2004 discovery is needed to establish a claim, or that the denial of the discovery would cause undue hardship or injustice." *Id.*

42.     U.S. Bank seeks Rule 2004 discovery as part of its improper attempt to obtain information in a contested confirmation. U.S. Bank therefore is not seeking Rule 2004 discovery to establish a claim.

43.     Further, when the party moving for discovery under Rule 2004 has other avenues to seek discovery, denial of Rule 2004 discovery does not cause undue hardship or injustice. *In re Gaime*, 2018 WL at *3 ("As an initial matter, the Trustee has had, or will have, ample opportunity

4918-7733-0086 v.1

to conduct discovery in the Bad Faith Action. She will not suffer hardship or injustice if she is denied an additional opportunity to do the same discovery in this case.").

44.     Since U.S. Bank can seek discovery on issues related to confirmation through the Federal Rules of Civil Procedure, denying U.S. Bank Rule 2004 discovery would not cause an undue hardship or injustice.

### IV.     The Subpoena Imposes an Undue Burden on Ms. Shively

45.     "On timely motion, the court for the district where compliance is required *must quash or modify a subpoena* that…(iv) subjects a person to undue burden." Fed. R. Civ. P. 45 (d)(3)(a).[17]

46.     Further, Federal Rule of Civil Procedure 45(d)(1) requires that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

47.     "A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.F. 517, 527 (N.D. Fla. 2013) (quoting *Wiwa v. Royal Dutch Petroleum*, 392 F.3d 812, 818 (5th Cir. 2004)).

48.     To consider whether a subpoena subjects a recipient to an undue burden, courts "balance the interest served by demanding compliance with the subpoena against the interests furthered by quashing it." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1337 (11th Cir. 2020). Courts consider the following factors in making this determination:

    (1) The relevance of the requested information;
    (2) The need of the requesting party for its production;
    (3) The breadth of the request for production;
    (4) The time period covered by the subpoena;
    (5) The particularity with which the subpoena describes the requested production; and
    (6) The burden imposed on the subpoenaed party.

---

[17] Federal Rule of Civil Procedure 45 is incorporated to this proceeding by Federal Rules of Bankruptcy Procedure 2004(c) and 9016.

4918-7733-0086 v.1

*Costa v. Metro Life Ins. Co.*, Case No. 6:17-cv-714-Orl-40TBS, 2018 WL 1635642, *5 (M.D. Fla. Apr. 5, 2018). Further, the status of the recipient as a non-party is a factor to consider. *Id.* Additionally, another factor to consider is whether the requested materials are available from another, more convenient source. *Popcorned Planet, Inc. v. Lively*, Case No. 8:25-mc-28-WFJ-LSG, 2025 WL 3458601, *7 (M.D. Fla. Dec. 2, 2025).

49.     In this instance, the factors weigh against U.S. Bank. The Requests are overbroad, vague, and disproportionate to any reasonable discovery. Further, Ms. Shively is a non-party and many of the Requests are more easily available from the Debtors. As such, the court should quash the subpoena pursuant to Fed. R. Civ. P. 45 (d)(3)(a)(i).

A.     <u>The Request are facially overbroad, not tailored with particularity, and impose a burden on Ms. Shively</u>

50.     Here, the Requests are facially overbroad because they lack reasonable limits on scope, use "any and all" language, define "relating to" to encompass virtually everything, or sweep in communications with "any party" without limitation.

51.     At a minimum, the following requests are overly broad and not narrowly tailored or described with particularity:

| Req # | Request Summary | Why Overbroad |
|---|---|---|
| 4 | All docs re "any proposed sale" of Debtor assets | No transactional limit; sweeps in every appraisal ever obtained |
| 7 | All communications re negotiations with "any lender" | Potentially dozens of entities across years |
| 9 | Financial wherewithal: personal financials, Jan 2022–present | 4+ years of comprehensive personal financial disclosure from a non-party |
| 15 | Communications with "any creditor" re Plan/Contribution/distributions/releases | "Any creditor" × "any distributions or releases" = every communication about the case |
| 22 | Treatment of special assessment debt on real estate in the District | Sweeps beyond Debtor property to any property in the CDD |
| 34 | Communications with "any other party" | "Any other party" is unlimited |

14

4918-7733-0086 v.1

| Req # | Request Summary | Why Overbroad |
|---|---|---|
| | re default/inability to fund | |
| 35 | "Any analysis, projection, or forecast" of Debtors' ability to satisfy claims | Sweeps in every financial model ever prepared |
| 38 | Communications re "additional contributions" by "You or any affiliate" | "Any affiliate" × "any party" has no outer bound |
| 59 | All communications between You and Svein Dyrkolbotn | No subject-matter limitation whatsoever |
| 60 | All communications with any rep of any Dyrkolbotn company | No subject-matter limitation whatsoever |

52. These are exactly the kinds of requests that courts have found to be overly broad on their face. *See, e.g., Sheets v. Presseller*, Case No. 2:24-cv-495-JLB-KCD, 2025 WL 254939, *1 (M.D. Fla. Jan. 21, 2025) (finding that a subpoena that requested all documents over more than a ten year period with the name of an individual to be overbroad); *Hamilton v. Ogden Weber Tech. Coll.*, Case No. 1:16-cv-00048-JNP-DBP, 2017 WL 5633106, at *4 (D. Utah Nov. 21, 2017) ("The court finds Plaintiff's request seeking all communications regarding this lawsuit overbroad on its face."); *In re McClain Feed Yard, Inc.*, 661 B.R. 136, 142 (Bankr. N.D. Tex. 2024) (Rule 2004 exam requests were overly broad where they sought "[a]ll communications . . . with or referencing any of the Debtors or the Debtors' Affiliates . . . " and "communications with any party concerning any . . . transfers.").

53. Further, Ms. Shively is not a debtor in these Cases. The Subpoena served on her seeks broad categories of documents and testimony concerning personal financial information, the proposed Shively Contribution, negotiations with creditors and other parties in interest, plan-related communications, and other matters tied to the Plan. The scope of the subpoena is substantial: it includes seventy-seven (77) document requests, many of which are overlapping or duplicative.

54. The burden is particularly unreasonable because the subpoena seeks confirmation-

15

4918-7733-0086 v.1

related discovery from a non-debtor outside the procedural framework ordinarily used to manage such discovery. Such burden is exacerbated further given that Ms. Shively has made many of the financial materials at issue in the Requests available to creditors through a data room – an offer made to U.S. Bank – but which was refused.[18]

B. The Requests seek information within the possession, custody, and control of Debtors.

55.     Further, the Requests seek information that is in the Debtors' possession, on the court docket, or otherwise available from the CRO or Debtors' counsel. There is no justification for burdening a non-party to produce the Debtors' own records when U.S. Bank can obtain them from another more convenient source, directly from the Debtors.

56.     By way of example, such Requests include:

| Req # | Request Summary | Available From |
|---|---|---|
| 1 | Ownership interests in/of the Debtors and Affiliates | Schedules, SOFAs, Sec. of State filings |
| 2 | Relationships between Debtors and non-Debtor Affiliates, corporate governance | Debtor records, CRO |
| 3 | Organizational or structure charts of the Debtors | Debtor records, CRO |
| 4 | All docs re proposed sale of Debtor assets (CIM, buyer lists, LOIs, valuations) | Investment banker files, Debtor records, docket |
| 5 | All docs re proposed reorganization of the Debtors | Debtor records, CRO, docket |

---

[18] In connection with the Second Amended Plan, counsel and other advisors to Ms. Shively discussed the concept of a data room with the CRO and his counsel. Ms. Shively agreed to produce voluminous documents supporting her role as potential plan sponsor, subject to execution of non-disclosure agreements to prevent sensitive personal and financial information from becoming public and to prevent parties from using such information for purposes other than considering whether to support the Second Amended Plan. This data room was the subject of discussion at the March 10, 2026 hearing.

Ms. Shively's professionals created a data room comprised of more than 100 documents related to her financial condition. On March 19, 2026, counsel to Ms. Shively provided the proposed non-disclosure agreement to counsel to the creditor body, including U.S. Bank. Numerous creditors executed the non-disclosure agreement and have been provided access to the data room. On March 31, 2026, counsel to U.S. Bank informed counsel to Ms. Shively that U.S. Bank would not execute the non-disclosure agreement due to a prohibition on the use of documents in litigation, instead electing to serve the pending discovery.

4918-7733-0086 v.1

| Req # | Request Summary | Available From |
|---|---|---|
| 23 | Agreements between Debtors and the District (Bond Docs, Transportation Agreement) | Debtor records, District records, publicly recorded |
| 61 | Valuations of Debtors' assets | Debtor records, advisors, docket |
| 62 | Financial and valuation reports of Debtors by third parties | Debtor records, advisors |
| 63 | Solvency/valuation analyses, appraisals, opinions re Debtors | Debtor records, advisors |
| 64 | Offers or indications of interest to purchase Debtors' assets | Debtor records, investment banker |
| 65 | Financial projections for Plan feasibility | Debtor records, CRO, Disclosure Statement |
| 66 | Credit agreements, forbearance agreements, amendments, pledges, guarantees, notes | Debtor records; IT likely has its own loan docs |
| 67 | Liquidation analyses | Debtor records, Disclosure Statement, docket |
| 68 | Documents identifying assets or property of Debtors | Schedules, SOFAs, MORs |
| 69 | Documents re any interest in real estate held by Debtors | Schedules, public records |
| 73 | Documents evidencing value of real property held by Debtors | Debtor records, appraisals |
| 75 | Documents evidencing value of real estate held by Debtors' Affiliates | Affiliate records, appraisals |

57.     When seeking discovery from non-parties, "the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-2885, 2022 WL 2341963, at *5 (N.D. Fla. Apr. 26, 2022) (*quoting Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019)).   U.S. Bank has provided no explanation why it cannot obtain information from the Requests from the Debtors.

58.     Further, when such document is available from a party to the litigation, that factor weighs against requiring disclosure from the non-party. *Sea Tow Servs. Int'l, Inc. v. Hurley*, Case No. 8:26-mc-10-WFJ-AAS, 2026 WL 847877, *2 (M.D. Fla. Mar. 27, 2026); *Rossman v. EN*

17

*Eng'g, LLC*, 467 F. Supp. 3d 586, 590–91 (N.D. Ill. 2020) ("As already noted, it is beyond dispute that about half of the categories of documents demanded by the subpoena are duplicative of the discovery requests plaintiff properly served on the defendant. A non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative."); *In re Heartland Inst.*, 2011 WL 1839482, at *4 (N.D. Ill. 2011) (granting third-parties' motion to quash a subpoena because other reasonable sources existed for the plaintiff to obtain the information via document requests to the defendants in the underlying action for the same information went unanswered). Here, many of the information from the Requests are available from the Debtor. Accordingly, Ms. Shively, a non-party, should not be burdened when such information is available from a more convenient source, the Debtors, who initiated these Cases.

## V.    The Subpoena Requires Disclosure of Privileged or Other Protected Material

59.    "On timely motion, the court for the district where compliance is required *must quash or modify a subpoena* that…(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45 (d)(3)(a).

60.    A number of the Requests appear to specifically target privileged communications.

61.    By way of example, the Requests include:

| Req # | Request Summary | Privilege Implications |
|---|---|---|
| 6 | All communications relating to role as chapter 11 sponsor or funder. | Implicates legal advice regarding the plan. |
| 24 | All docs re any claims or potential claims against the Debtor | Implicates attorney-client privilege and work product. |
| 33 | All docs re tax advice or planning relating to Shively Contribution | Implicates attorney-client privilege and work product. |
| 41 | All communications re the interpretation of the Plan as relates to Shively Contribution | Implicates attorney-client privilege and work product. |
| 42-58 | All communications re "the effect of | Implicates attorney-client privilege and work |

18

4918-7733-0086 v.1

| Req # | Request Summary | Privilege Implications |
|---|---|---|
| | the Shively Contribution" on a number of legal issues and claims. | product. |

62. These requests and others are improper because they specifically target legal analyses and communications of Shively with her counsel for purposes of seeking legal advice.

63. For these reasons, the Subpoena should be quashed or, at minimum, a protective order should issue.

**WHEREFORE** Ms. Shively respectfully requests that the Court grant the Motion, quash the Subpoena or alternatively enter a protective order: (i) prohibiting U.S. Bank with proceeding with discovery under Rule 2004, (ii) requiring any discovery by U.S. Bank to proceed under the discovery rules outlined in Rule 9014(c), and (iii) limiting the scope of any such discovery to treatment of U.S. Bank's claim and Ms. Shively's ability to fund the Second Amended Plan

4918-7733-0086 v.1

## CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to N.D. Fla. Bankr. L.R. 9013-1, undersigned counsel certifies that counsel for Ms. Shively conferred with counsel for U.S. Bank regarding the relief requested in this Motion. Specifically, on April 27, 2026, I participated in a conference with counsel for U.S. Bank in an effort to resolve the issues set for in the Objections and in this Motion. These efforts were largely unsuccessful. Counsel for U.S. Bank opposes the relief sought, and the parties were unable to resolve the issues raised herein without Court intervention.

By: /s/ Dylan G. Trache
Dylan G. Trache

Respectfully submitted this 28th day of April, 2026.

NELSON MULLINS RILEY & SCARBOROUGH, LLP

By: /s/Dylan G. Trache
Dylan G. Trache (admitted *pro hac vice*)
Virginia Bar No. 45939
901 15th Street NW, Suite 1200
Washington, DC 20005
Telephone:  (202) 689-2993
Facsimile:  (202) 689-2860
Email: dylan.trache@nelsonmullins.com

*and*

Shane G. Ramsey
Florida Bar No. 26842
NELSON MULLINS RILEY & SCARBOROUGH, LLP
1222 Demonbreun Street, Suite 1700
Nashville, Tennessee 37203
Telephone: (615) 664-5355
Facsimile: (615) 664-5399
Email: shane.ramsey@nelsonmullins.com

*Counsel for Patricia Shively*

4918-7733-0086 v.1

21

## CERTIFICATE OF SERVICE

I certify that on April 28th, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Florida.

/s/ Dylan G. Trache
Dylan G. Trache

4918-7733-0086 v.1