**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

In re:

| | |
|---|---|
| CELEBRATION POINTE HOLDINGS, LLC, | Case No. 24-10056-KKS |
| CELEBRATION POINTE HOLDINGS II, LLC, | Case No. 24-10057-KKS |
| SHD-CELEBRATION POINTE, LLC, | Case No. 24-10058-KKS |
| | Chapter 11 |
| Debtors. | Joint Administration under Case No. 24-10056-KKS |

_____/

**U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE'S RESPONSE TO PATRICIA SHIVELY'S MOTION TO QUASH RULE 2004 SUBPOENA AND FOR A PROTECTIVE ORDER**

**COMES NOW**, U.S. Bank Trust Company, National Association, as Indenture Trustee (the "Indenture Trustee") and hereby responds and objects (the "Objection") to *Patricia Shively's Motion to Quash Rule 2004 Subpoena and for a Protective Order* [Docket No. 559] (the "Motion") filed by Patricia Shively ("Shively") in the above-captioned bankruptcy cases, showing the Court as follows:

**INTRODUCTION**

1. The Motion should be denied because the discovery sought is directly relevant to whether the pending chapter 11 plan should be confirmed. Shively has been intimately involved with the Debtors since their inception, contributing millions of dollars prior to and following the Petition Date. Shively now seeks to use the chapter 11 plan process to obtain a broad release, something that is wholly improper when no investigation of her pre- and post-petition involvement has been conducted.

2.      Rule 2004 broadly permits discovery related to "the debtor's acts, conduct or property" or to the "debtor's liabilities and financial condition", or to "any matter which may affect the administration of the debtor's estate", or "[i]n a … case under chapter 11 of the Code,  … to …any other matter relevant to the case or to the formulation of a plan."  Bankruptcy Rule 2004(b).

3.      The Indenture Trustee's Rule 2004 request aims to examine precisely these issues, including the formulation of the Plan.  The Requests in the Subpoena fit squarely within Rule 2004's broad scope, despite Shively's assertions that the Indenture Trustee lacks "good cause" for the Subpoena.  As the Court is aware, the Debtors and Shively, as the plan sponsor, have been attempting to confirm a plan since November 2024.  Yet, over a year and a half later, confirmation is still not possible given the Debtors' and Shively's failure to, without limitation, provide sufficient information for creditors to determine whether to vote to accept or reject the proposed Plan.  The Rule 2004 request seeks information needed by all creditors and the Court to confirm the Plan.  Accordingly, "good cause" supports the Rule 2004 Requests.

4.      Shively raises several arguments in her Motion, each of which is misplaced.  ***First***, the pending proceeding rule should not and does not prohibit the use of discovery through Rule 2004 in this case.  ***Second***, Shively argues the Rule 2004 Subpoena is burdensome, harassing, and overbroad; however, providing sufficient information to help the Court determine whether plan confirmation is appropriate outweighs these concerns.  ***Third***, Shively complains that the Rule 2004 Subpoena seeks confidential information, but as Shively is aware (because she is a signatory), there is already a protective order in place in this case that covers confidential documents.

5.      Accordingly, for these reasons and as explained further below, the Court should deny the Motion.

**BACKGROUND**

I.      **The Bond Indebtedness**

6.      The Indenture Trustee serves as indenture trustee for the Bonds[1] issued by the Celebration Pointe Community Development District No. 1, a local unit of special-purpose government existing under the Constitution and laws of the State of Florida (the "District").

7.      The District issued the Bonds to finance the acquisition, construction, installation and equipping of public infrastructure including, but not limited to, public roadways, water management and control facilities, wetland mitigation, water distribution and sewer collection facilities, electrical infrastructure, public trails, and related costs.

8.      The debt evidenced by the Bonds is secured by, without limitation, Special Assessments[2] levied under Fla. Stat. Ann. § 170.01, *et seq*. on the parcels of real estate located in the District—which Special Assessments are first liens on the real estate, co-equal with the lien of all state, county, district and municipal taxes, superior in dignity to all other liens, titles, and claims until paid, as well as Transportation Revenues[3] received from the County.

9.      The lien of the Special Assessments and assignment of Transportation Revenues (inclusive of Mitigation Credits that were to be paid) to the Indenture Trustee as Pledged Revenues

---

[1] The Special Assessment Revenue Bonds, Series 2014 ("Series 2014 Bonds"), issued pursuant to that certain Master Trust Indenture dated as of December 1, 2014 (the "Master Indenture"), as amended and supplemented pursuant to that certain First Supplemental Trust Indenture dated as the same date (together with the Master Indenture, the "Series 2014 Indenture"), the Special Assessment Revenue Bonds, Series 2017 ("Series 2017 Bonds"), issued pursuant to the Master Indenture as amended and supplemented pursuant to that certain Second Supplemental Trust Indenture dated as of May 1, 2017 (together with the Master Indenture, the "Series 2017 Indenture"), and the Special Assessment Revenue Bonds, Series 2021 ("Series 2021 Bonds," and together with the Series 2014 Bonds and Series 2017 Bonds, the "Bonds"), issued pursuant to the Master Indenture as amended and supplemented by that certain Third Supplemental Trust Indenture dated as of October 1, 2021 (the "Series 2021 Indenture," and together with the Series 2014 Indenture and Series 2017 Indenture, the "Indentures").

[2] Collectively, the 2014 Assessments, 2017 Assessments and 2021 Assessments.

[3] As to the Series 2014 Bonds and Series 2017 Bonds, only.

3

occurred in 2014, 2017, and 2021 contemporaneously with the District's issuance of each series of Bonds, as applicable, well before the Petition Date.

10.     As of the Petition Date, the Indenture Trustee holds claims, secured by the Pledged Revenues, totaling not less than $8,357,742.83 and $4,318,914.46 against Debtors Celebration Pointe Holdings, LLC and Celebration Pointe Holdings II, LLC, respectively.  Additional amounts have come due, or will come due, after the Petition Date.

**II.     The Debtors' Bankruptcy Filing**

11.     On March 14, 2024 (the "Petition Date"), the above-captioned Debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"), which are being jointly administered (the "Cases").

12.     The Debtors are operating their business and managing their financial affairs as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

13.     On January 7, 2026, after their first attempt at confirming a plan failed, the Debtors filed their Joint Plan of Liquidation [Docket No. 463] (the "Joint Plan") and Disclosure Statement [Docket No. 464].

14.     On March 2, 2026, Debtors filed their Amended Plan [Docket No. 493] (the "Amended Plan") and Amended Disclosure Statement [Docket No. 494] (the "Amended Disclosure Statement").   On March 5, 2026, the Indenture Trustee filed its objection to Debtors' Amended Disclosure Statement [Docket No. 508].

15.     On March 24, 2026, the Court entered an *Order Disapproving Amended Disclosure Statement, for the Amended Joint Plan of Liquidation, pursuant to 11 U.S.C. § 1125 for Celebration Pointe Holdings, LLC et al. [ECF No. 494] and Scheduling Status Hearings*

4

[Docket No. 532] (the "Order and Notice").  The Order and Notice set April 10, 2026 as the deadline for the Debtors to file an amended disclosure statement and plan.

16.    On April 10, 2026, the Debtors filed their *Second Amended Disclosure Statement, For The Joint Second Amended Plan of Liquidation, Pursuant to 11 U.S.C. §1125 For Celebration Pointe Holdings, LLC, et al.* [Docket No. 547] (the "Disclosure Statement") and *Second Amended Plan of Liquidation for Celebration Pointe Holdings, LLC et al.* [Docket No. 548] (the "Plan").

17.    On April 29, 2026, the Indenture Trustee filed its objection to the Debtors' Disclosure Statement [Docket No. 563].

18.    On May 13, 2026, the Court entered an *Order Conditionally Approving Disclosure Statement, Hearing to Consider Final Approval of Disclosure Statement and Confirmation of the Plan, and Fixing Time for Filing Acceptance or Rejection of Plan* [Docket No. 584] (the "Conditional Order").  In the Conditional Order, the Court scheduled a hearing on July 14, 2026 to consider and rule on final approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Hearing").  Under the Conditional Order, parties have until July 7, 2026 to provide written acceptance or rejection of the Plan and to file written objections to the Disclosure Statement or Plan.

III.    **The Shively 2004 Examination**

19.    On April 1, 2026, the Indenture Trustee filed its Notice of Rule 2004 Examination [Docket No. 542] (the "Rule 2004 Notice") and Notice of Subpoena for Rule 2004 Examination [Docket No. 543] (the "Subpoena" and together with the Rule 2004 Notice, the "Rule 2004 Exam"), seeking production of documents (the "Requests") and noticing Shively's deposition upon oral examination (the "Deposition").

20.     Creditors, Synartis Capital Management, LLC; Catalyst Synartis MF B Series MF 2A-2022, LLC; Catalyst Income Fund 2022-A1, LLC; Catalyst Synartis MF B Series Condo 3A-2023, LLC; Synartis Income Fund, LLC; and Catalyst Synartis CP Master 4A-2023, LLC (collectively, the "Synartis Creditors"), filed their Cross-Notice of Rule 2004 Examination of Shively on April 28, 2026 [Docket No. 560] (the "Cross-Notice"), reserving their right to ask questions of Shively at the Deposition.

21.     On April 17, 2026, Shively served the Indenture Trustee with her Objections to the Rule 2004 Exam (the "Objections").  Then on April 28, 2026, Shively filed the Motion.

22.     On May 7, 2026, the Indenture Trustee and Shively filed the *Joint Motion for Entry of Stipulated Protective Order* on May 7, 2026 [Docket No. 576] and on May 14, 2026, the Court entered the Confidentiality Protective Order (the "Protective Order").[4]

23.     After the Indenture Trustee agreed to the Protective Order, Shively granted the Indenture Trustee "access" to a data room of documents related to Shively's financial condition. However, the Indenture Trustee soon learned that the documents located therein could not be downloaded and fully reviewed.  Upon raising this issue with Shively's counsel, the Indenture Trustee was told that in order to actually review these documents, the Indenture Trustee would have to (i) identify which documents within the data room it would like to access, (ii) provide a list of the documents to Shively, (iii) allow Shively's counsel to review and decide which documents it would like to mark as confidential, (iv) negotiate such confidential designation, and (v) then provide Shively time to produce the documents in a fully reviewable form.

24.     On May 21, 2026, Shively produced a limited set of documents regarding her financial condition.

---

[4] In light of the executed Protective Order, any arguments made by Shively in the Motion based on the Indenture Trustee's alleged refusal to sign the Protective Order are moot and should not be considered.

## ARGUMENT

### I.    Good Cause Exists to Permit a Rule 2004 Exam of Shively

25.    "Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (citing *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del 2009)).  The party seeking authority to use Rule 2004 must establish good cause for the relief requested.  *See In re 3 King Constr. Residential LLC,* 2024 Bankr. LEXIS 1169 at *7 (Bankr. N.D. Ga. 2024) ("Whether a party has carried its burden to show cause is necessarily determined by a totality of the circumstances approach that accounts for all relevant factors.").

26.    Here, good cause exists to conduct the proposed discovery under Rule 2004.  First, the Indenture Trustee, as a secured creditor, has standing as a party-in-interest.  *See In re M4 Enterprises,* 190 B.R. 471, 474 (Bankr. N.D. Ga. 1995) ("[A] party in interest includes 'the debtors, the trustee, a creditor's committee, an equity security holder's committee, a creditor, or any indenture trustee.'") (quoting *In re Summit Corp.,* 891 F.2d 1 (1st Cir. 1989)).

27.    Second, the information sought in the Rule 2004 Exam fits well within the parameters of Bankruptcy Rule 2004(b), because it is related to the Debtors' "formulation of a plan."  The Requests in the Subpoena can be separated into three topics, all of which relate to the Plan's formulation and confirmation.  The first set of Requests are related to the value of the Debtors' and Shively's assets and Shively's ability to fund the Plan (as she is the proposed plan sponsor).  *See* Subpoena ¶¶ 1-6, 9-12, 17, 27, 30-32, 34-36, 39, 48, and 61-77.  The Subpoena also requests information regarding assets, namely causes of action, that could be recovered for the benefit of creditors but are instead being released under the Plan.  *See* Subpoena ¶¶ 15-16, 20-21, 24-25, 42, 49, and 52-56.  The final category of these requests covers the Plan's potential lack of

7

good faith and fair dealing under 11 U.S.C. § 1129(b).  *See* Subpoena ¶¶ 7-8, 13-14, 18-19, 22-23, 26-29, 33, 37-38, 40-41, 43-47, 50-51, and 57-60.

28.    Under Rule 2004, the Indenture Trustee may investigate these topics, and Shively is an appropriate examinee because, as a sponsor, insider, affiliate, and release recipient under the Plan, she possesses relevant documents and information related to each topic.

29.    Third, denying the Indenture Trustee's request for a Rule 2004 exam would cause the Indenture Trustee undue hardship or injustice, because obtaining this information in advance of the Confirmation Hearing is crucial to determining whether the Plan should be confirmed.

30.    Further, despite Shively's argument to the contrary,[5] the existence of other manners of discovery does not eliminate undue hardship on the party seeking discovery.  For example, in *ePlus, Inc. v. Katz (In re Metiom, Inc.),* the District Court for the Southern District of New York found that the Bankruptcy Court had considered and determined good cause based on the following:

> In rejecting ePlus's proposal that Metiom obtain the sought-after information through depositions of ePlus employees, for instance, the Bankruptcy Court explained that, given that "a number of people" would have to be deposed, "when you start counting up the depositions, and you take into account what [Rule] 2004 is meant to do, and the resources of the debtor's estate, I think it's actually more productive and less burdensome to all parties simply to let them have access to the information [requested in the Rule 2004 application]." (Nov. 4 Tr. at 28.)  Implicit in these remarks is the finding that, even if a Rule 2004 examination of the requested information is not strictly necessary to establish a potential claim against ePlus, a refusal to order such an examination would result in undue hardship to Metiom, if not injustice.

318 B.R. 263, 270 (S.D.N.Y. 2004).  The Indenture Trustee, as well as other creditors, have been trying for months to receive information from Shively to decide whether to support the Plan which is set for Confirmation Hearing in mid-July.  Shively has refused to provide information in her possession, custody or control related to key issues of the Plan.  Requiring the Indenture Trustee,

---

[5] Motion ¶¶ 57-58.

with only a month before the Confirmation Hearing, to seek discovery under other Federal Rules, will effectively prohibit the Indenture Trustee from receiving crucial information prior to the Confirmation Hearing.  Accordingly, "good cause" exists for the Rule 2004 Exam.

## II.    The Pending Proceeding Rule Should Not Be Applied in this Case

31.    Given that good cause exists to allow a Rule 2004 examination of Shively, the existence of the pending proceeding rule does not prohibit the use of Rule 2004.  In the Motion, Shively discusses the pending proceeding rule generally and explains why the pending Plan constitutes a contested matter.[6]  *See* Motion ¶¶19-39.  However, Shively fails to address whether the Court should allow a Rule 2004 examination in this instance.

32.    "Applying the pending proceeding rule is discretionary and not mandatory."  *In re Camferdam,* 597 B.R. 170, 174 (Bankr. N.D. Fla. 2018).  The court's discretion is particularly apparent where only a contested matter is pending, as courts have noted that "[t]he nature of the 'pending proceeding' rule changes … when the pending proceeding takes the form of a contested matter" because "[Rule] 9014 states that [the Federal Rules of Civil Procedure] shall apply 'unless the court otherwise directs.'").  *In re M4 Enterprises,* 190 B.R. 471, 476 (Bankr. N.D. Ga. 1995).  Therefore, in determining whether to permit a Rule 2004 exam in light of an alleged pending contested matter, the court must "weigh[] the facts and circumstances of each case to discretionarily determine the appropriate discovery mechanisms that will secure a just, speedy, and inexpensive determination of the overall case and proceedings."  *In re Wade,* 2014 Bankr.

---

[6] The filing of the Plan alone does not create a contested matter.  Rule 3020(b)(1) states that objections to a plan are governed by Rule 9014 such that until an objection to the Plan is filed, which has not occurred here, no contested matter exists.  *See In re Millennium Lab Holdings II, LLC,* 575 B.R. 252, 271 (Bankr. D. Del. 2017) ("An objection transforms the confirmation hearing into a contested matter.").  Further, courts have expressly stated that a rule 2004 exam is a proper pre-litigation form of discovery.  *In re Camferdam,* 597 B.R. at 174 ("One of the primary purposes of a Rule 2004 examination is as a pre-litigation device.").  Therefore, until the Indenture Trustee files an objection to confirmation of the Plan, this should not be considered a contested matter for any purpose of the pending proceeding rule.  Nevertheless, the Court does not have to determine whether the Plan constitutes a "contested matter" to find that the pending proceeding rule is inapplicable here and to permit discovery under Rule 2004.

LEXIS 5366 at *11 (Bankr. W.D. Tenn. July 31, 2014).

33.     The potentially contested nature of the Debtors' Plan supports, rather than deters, the need for a Rule 2004 examination of Shively.  Since the Debtors first filed the Joint Plan and Disclosure Statement in this case almost six (6) months ago, one of the main issues raised by numerous creditors concerns information about or held by Shively.[7]

34.     Despite Shively's arguments to the contrary, every Request made by the Indenture Trustee in the Subpoena will aid in determining whether the Plan should be confirmed.  For example, the three Requests that Shively cites to as examples of "documents which have no relevance to the contested confirmation issues" are directly related to confirmation as follows:[8]

- Request No. 7 ("All Documents and Communication relating to any negotiations, settlement discussions, or other communications You have had with any lender to the Debtors or the non-Debtor Affiliates") is relevant in determining whether the Plan has been proposed in good faith and is fair and equitable with respect to each class of creditors.

- Request No. 59 ("All Documents relating to any Communications between You and Svein Dyrkolbotn") is relevant as the Plan grants releases to both Shively and Dyrkolbotn.

- Request No. 74 ("All Documents evidencing the value of real property in which You hold an interest") is related to Shively's financial wherewithal and ability to fund the Shively Contribution (as defined in the Plan), as well as the proposed releases under the Plan. *See, e.g. In re Roman Catholic Church of the Diocese of Gallup,* 513 B.R. 761, 765 (Bankr. N.M. 2014) ("[T]he Court concludes that discovery of the financial condition of a party against whom the estate may hold a claim is within the scope of a Rule 2004 examination in proper circumstances.").

35.     A Rule 2004 examination is the proper forum to question Shively.  Other creditors agree, as demonstrated by the Synartis Creditors' Cross-Notice to examine Shively and the

---

[7] Between the filing of the initial disclosure statement and the Disclosure Statement, approximately eight creditors have filed eighteen objections to the Debtors' various disclosure statements, ten of which asserted as a basis for their objections the lack of information relating to Shively and the Shively Contribution. *See* Docket Nos. 484, 498, 500, 504, 505, 508, 509, 510, 562, and 563.

[8] *See* Motion ¶ 21.

multiple objections to the disclosure statements.  Permitting the Rule 2004 Exam whereby all creditors can, at one time, review documents and ask any questions they may have for Shively prior to the Confirmation Hearing will streamline discovery in an efficient and cost-effective manner.  If the Court were instead to apply the pending proceeding rule to these Cases, all creditors that have questions for Shively would have to participate in separate discovery processes under the Federal Rules, leading to disjointed, duplicative, and untimely discovery, particularly given that the confirmation hearing is set for July 14.

36.    Therefore, the Court should hold that a Rule 2004 examination of Shively is proper and the "pending proceeding" rule does not apply.

## III.    The Subpoena Does Not Impose an Undue Burden

37.    As the party moving to quash the Subpoena, Shively must meet a significant evidentiary burden.  *See Talentscale, Inc. v. Aery Aviation, LLC,* 802 F. Supp. 3d 1370, 1377 (N.D. Fla. 2025).  Conclusory statements that discovery is overly broad or too burdensome are not sufficient.  *See Bay Point Turtlegrass Villas Ass'n v. Lexington Ins. Co.,* 2021 U.S. Dist. LEXIS 269575, *3 (N.D. Fla. Jan. 20, 2021).

38.    This Court has broad "discretion in determining whether to grant a motion [to quash and] for a protective order."  *Presley v. Gulf Cnty. Sch. Bd.,* 2023 U.S. Dist. LEXIS 237999, *3 (N.D. Fla. 2023).  In determining whether a subpoena imposes an undue burden, courts consider: "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."  *Rose v. TMobile USA, Inc.*, Nos. 2:24-cv-473-JLB-KCD; 2:24-mc-8-JLB-KCD, 2024 U.S. Dist. LEXIS 110373, at *11–12 (M.D. Fla. June 24, 2024).  Undue burden requires parties to show more than

11

expense or difficulty.  *Id.*

39.    While Shively asserts that "the Requests are facially overbroad,"[9] she provides no basis for that assertion and identifies no actual burden that she will experience in responding to the Subpoena.  *See Arval Serv. Lease S.A. v. Clifton,* 2015 U.S. Dist. LEXIS 183645, *6 (M.D. Fla. June 23, 2015) ("A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved.").  Moreover, with respect to the Request that Shively identified as overbroad, the Indenture Trustee responds as follows:[10]

| Request # | Request Summary | Why Overbroad | Indenture Trustee's Response |
|---|---|---|---|
| 4 | All docs re "any proposed sale" of Debtor assets | No transactional limit; sweeps in every appraisal obtained | The Request is limited to a "sale *of the assets of the Debtors"* created during the Cases or within the two-year period immediately preceding the Petition Date. |
| 7 | All communications re negotiations with "any lender" | Potentially dozens of entities across years. | The Indenture Trustee agrees to modify this Request as follows: "All Documents and Communications relating to any negotiations, settlement discussions, or other communications You have had with any lender to the Debtors or the non-Debtor Affiliates, **who are being treated, either directly or indirectly, under the Plan."** |
| 9 | Financial wherewithal: personal financial, Jan 2022-present | 4+ years of comprehensive personal financial disclosure from a non-party | Shively provides no basis in support of her argument that these requests cannot cover more than a four-year period, especially when much of the four-and-a-half-year period involved these pending Cases.  Moreover, Shively, as the plan sponsor, must demonstrate her ability to maintain financial stability over time. |
| 15 | Communications with "any creditor" re Plan / Contribution / distributions / releases | "Any creditor" x "any distributions or releases" = every communication about the case | The Indenture Trustee agrees to modify this Request as follows: "**To the extent not already provided in response of another Request, a**ll Documents related to ~~any~~ Communications between You and |

---

[9] Motion ¶ 47.
[10] Motion ¶ 51.

| | | | any creditor of the Debtors, **who is receiving a distribution or other benefit under the Plan**, regarding the Shively Contribution, or any distributions or releases contemplated by the Plan. |
|---|---|---|---|
| 22 | Treatment of the special assessment debt on real estate in the District | Sweeps beyond Debtor property to any property in the CDD | This Request only asks about District property "treat[ed] under the Plan." If non-Debtor property is being dealt with under the Plan, discovery is necessary. |
| 34 | Communications with "any other party" | "Any other party" is unlimited | The phrase "any other party" is clearly limited to only those parties with whom Shively has communicated with regarding her "default, inability, or unwillingness to fund the Shively Contribution." |
| 35 | "Any analysis, projection, or forecast" of Debtors' ability to satisfy claims | Sweeps in every financial model ever prepared | This Request asks specifically about financial models that show the Debtors ability to satisfy claims "under the plan." |
| 38 | Communications re "additional contributions" by You or any affiliate" | "Any affiliate" x "any party" has no outer bound | The Request is not asking for any Communications with "any affiliate" but is only asking for specific communications about additional contributions that Shively will make directly or through one of her affiliates. |
| 59 | All communications between You and Svein Dyrkolbotn | No subject-matter limitation whatsoever | The Indenture Trustee agrees to modify this Request as follows: "All Documents relating to any Communications between You and Svein Dyrkolbotn **relating in any manner to the potential claims against You and/or Mr. Dyrkolbotn that will be released under the Plan**." |
| 60 | All communications with any rep of any Dyrkolbotn company | No subject-matter limitation whatsoever | The Indenture Trustee agrees to modify this Request as follows: "All Documents relating to any Communications between You and any representative of any company owned or controlled by Svein Dyrkolbotn including without limitation the Viking Companies, LLC, **regarding those entities' participation in the Plan in the form of either a contribution made to or benefit received from the Debtors**." |

13

40.     Therefore, the Requests in the Subpoena are particularized and narrowly tailored in breadth and time period, relevant to confirmation of the Plan and impose little burden on Shively given her role in this case and requested release.  Shively's status as an alleged non-party does not change her obligation to provide documents in response to a Rule 2004 exam.[11] *See In re Marathe,* 459 B.R. 850, 858-59 (Bankr. M.D. Fla. 2011) ("Rule 2004 of the Federal Rules of Bankruptcy Procedure specifically provides that 'any entity' may be examined by a party in interest.  The phrase 'any entity' is not limited to the debtor or its agents, but is properly extended to creditors and third parties who have had dealings with the debtor.").

41.     Additionally, Shively's argument that the Debtors may have some of the documents does not lessen her discovery obligations.   As demonstrated by the multiple hearings and objections concerning the Debtors' disclosure statements, the Debtors have continuously failed to provide sufficient information for the Indenture Trustee, and other creditors, to analyze the Debtors' and Shively's finances and ability to fund this Plan.  Therefore, the Indenture Trustee is left with no option but to seek information from other sources, as it is permitted to do under Rule 2004.  *See, e.g., In re Millennium Lab Holdings II, LLC,* 562 B.R. 614, 628 (Bankr. D. Del. 2016) (permitting the Trustee to seek additional documents from a third-party because the documents and information provided by the debtor were "in his purview … not sufficient to determine the scope of the Trustee's viable claims").

42.     Finally, with respect to Shively's alleged concerns regarding privilege and confidentiality, in light of the Protective Order, such concerns are moot and Shively's Motion

---

[11] While Shively is not a debtor, she is an insider of the Debtors, and the Debtors have proposed to use her assets to fund the Plan.  Without her participation, the Debtors cannot move forward with the Plan.  Accordingly, discovery from Shively is critical.

14

should be denied.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Indenture Trustee respectfully requests that this Court deny the relief requested in the Motion and grant such other and further relief as deemed just and equitable.

Dated:  June 3, 2026

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

/s/ *John D. Elrod*
John D. Elrod (Fla. Bar No. 615013)
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678-553-2259
Facsimile: 678-553-2269
Email: elrodj@gtlaw.com

*Counsel for U.S. Bank Trust Company,*
*National Association, as Indenture Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2026, I served or caused to be served the foregoing pleading by CM/ECF upon those parties registered to receive such electronic notifications in this case.

*/s/ John D. Elrod*
John D. Elrod

16

ACTIVE 723910768v3