UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION
www.flnb.uscourts.gov

In re:

| | |
|---|---|
| CELEBRATION POINTE HOLDINGS, LLC | Case No. 24-10056-KKS |
| CELEBRATION POINTE HOLDINGS II, LLC | Case No. 24-10057-KKS |
| SHD-CELEBRATION POINTE HOLDINGS, LLC | Case No. 24-10058-KKS |

Chapter 11

*Joint administration under*
*Case No. 24-10056-KKS*

Debtors.

_____/

**PATRICIA SHIVELY'S REPLY IN SUPPORT OF MOTION TO QUASH RULE 2004 SUBPOENA AND FOR A PROTECTIVE ORDER**

Patricia Shively ("**Ms. Shively**"), by and through counsel, files this Reply to U.S. Bank's[1]

Response ("**Response**") [Docket No. 598] to her Motion to Quash Rule 2004 Subpoena and for a

Protective Order (the "**Motion**") [ECF No. 559] stating as follows:

### I.   **Preliminary Statement**.

1.      The Response confirms what the Motion anticipated: U.S. Bank seeks to use Rule

2004 not as a pre-litigation investigative tool, but as a vehicle for confirmation discovery directed

at a scheduled, contested confirmation hearing. The Response states that the requested discovery

is "directly relevant to whether the pending chapter 11 plan should be confirmed" (Response ¶ 1)

and that obtaining it "in advance of the Confirmation Hearing is crucial" (id. ¶ 29). The

Confirmation Hearing is set for July 14, 2026, and objections to confirmation are due July 7, 2026

(Response ¶ 18). Rule 2004's broad, one-sided procedure, which lacks the proportionality limits

---

[1] Capitalized terms not defined herein have the meanings ascribed to such terms in the Motion.

1

4902-7737-1826 v.7

and reciprocal protections of Part VII of the Federal Rules of Bankruptcy Procedure, is not the proper vehicle for that discovery.

2. Shively is willing to provide relevant documents narrowly tailored to the contested factual issues relevant to the Second Amended Plan. However, the Requests, even as narrowed by the Response remain overbroad, and certain are irrelevant to those factual issues.

3. Shively has voluntarily produced to U.S. Bank 134 documents consisting of over 2000 pages which support, among other things, her ability to make the payments proposed under the Second Amended Plan. These documents were also provided to certain lenders that have executed confidentiality agreements. U.S. Bank's requests in this respect remain overbroad and are not sufficiently tailored to this inquiry.

4. The Response also rests on a factual premise that is no longer accurate and that the Response does not disclose. The Response devotes substantial attention to a purported data-room access dispute, describing a process under which U.S. Bank supposedly could not download or fully review documents (Response ¶ 23). The Response omits that, following entry of the Confidentiality Protective Order, Shively granted U.S. Bank access to review the documents in the data room (and thereafter produced bates-labeled copies of all documents separate and apart from the data room), and U.S. Bank has had that access to the data room since May 10, 2026 (with the separate production of the same documents made May 21, 2026). The burden and urgency arguments built on the data-room narrative are therefore moot.

5. It is true that the Plan contemplates a release in favor of Shively from the Debtors in return for funding the Shively Contribution (as defined in the Second Amended Plan). The Shively Contribution consists of: (i) $10 million in effective date payments; (ii) forgiveness of administrative liabilities in connection with debtor in possession financing of approximately $5

2

4902-7737-1826 v.7

million; and (iii) funds to satisfy a portion of the mortgage deficiencies of lenders who agree to the proposed settlement.  In addition, Shively is waiving general unsecured claims for pre-petition funding of more than $100 million.   It is well settled that Debtors typically grant releases to plan sponsors in similar circumstances. *See infra* at ¶ 21. The grant of a release by the Debtors is not an invitation to a broad fishing expedition into hypothetical purported claims that have not been reasonably articulated.

6.     U.S. Bank also claims that certain Requests relate to "the Plan's potential lack of good faith and fair dealing under 11 U.S.C. § 1129(b)."   Response at ¶ 27.  However, this general and conclusory statement is intended to mask the overbreadth of those requests. In fact, U.S. Bank's complaint appears to be a legal issue, not a factual issue of good faith.  U.S. Bank believes that the Second Amended Plan violates the rights of the bondholders under Florida Law.  *See* Motion at ¶ 36 (citing statements made at a prior hearing).  This is a legal issue for the Court to consider at confirmation, not a factual issue of good faith.

7.     Shively is not alone in resisting U.S. Bank's Rule 2004 campaign. Every other party served with a Rule 2004 subpoena in these Cases—including Millennium Bank, Main Street Bank, and Mr. Dyrkolbotn—have filed a substantively identical motion to quash. See [Docket Nos. 574, 606, 614]. That uniform resistance confirms that the subpoenas are facially overbroad and were not, as U.S. Bank contends, "particularized and narrowly tailored" (Response ¶ 40).

8.     Shively does not seek to avoid legitimate inquiry related to confirmation of the Second Amended Plan. She objects to U.S. Bank's chosen procedure, to the breadth and intrusiveness of the Requests, and to the absence of adequate privilege and confidentiality protections, and she has already produced documents concerning her financial condition (Response ¶ 24). Shively respectfully requests that the Court quash the Subpoena or, in the

4902-7737-1826 v.7

alternative, enter a protective order channeling any examination into proportional, reciprocal confirmation discovery, subject to the limitations set forth below.

9.      The accompanying Declaration of Darin L. Buchalter, Chief Executive Officer of Delta Consulting Group, Shively's financial advisor (the "Declaration"), supplies the evidentiary record U.S. Bank contends is missing and is incorporated herein by reference.

## II.      Argument.

### A.      U.S. Bank Seeks To Use Rule 2004 To Conduct Confirmation Discovery.

10.     U.S. Bank concedes that every category of its Requests is aimed at confirmation. It describes the three topics of the Subpoena as (i) Shively's assets and ability to fund the Plan, (ii) causes of action that are "being released under the Plan," and (iii) "the Plan's potential lack of good faith and fair dealing under 11 U.S.C. § 1129(b)" (Response ¶ 27). Each is a confirmation issue, to be litigated at the Confirmation Hearing set for July 14, 2026.

11.     The pending-proceeding principle exists to prevent precisely this use of Rule 2004. Once a matter is, or is about to become, a contested matter, discovery should proceed under Part VII of the Federal Rules of Bankruptcy Procedure, made applicable through Rule 9014, rather than through the broad and unilateral procedure of Rule 2004. U.S. Bank's own authority recognizes that "[a]n objection transforms the confirmation hearing into a contested matter." *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 271 (Bankr. D. Del. 2017) (cited at Response ¶ 31 n.6). U.S. Bank has objected to every disclosure statement the Debtors have filed (Response ¶¶ 14, 17), and its objection to confirmation is due July 7, 2026. The transformation U.S. Bank describes is not hypothetical; the confirmation hearing has been scheduled for July 14, 2026.

12.     U.S. Bank's contrary argument elevates form over substance. It contends that, because it has not yet filed its objection to confirmation, no contested matter exists and Rule 2004

4

therefore remains available (Response ¶ 31 & n.6). But U.S. Bank should not be permitted to serve a seventy-seven-request subpoena during the brief window before it files the confirmation objection it has already signaled, precisely in order to obtain confirmation discovery free of the proportionality and reciprocity that Part VII would impose. The Court should look to the substance of the discovery sought, not the timing label U.S. Bank has assigned to it.

13.     Courts applying the pending-proceeding principle have refused to permit a creditor to wield Rule 2004 to gather discovery for its own litigation objectives. *See In re Cambridge Analytica LLC*, 600 B.R. 750, 753 (Bankr. S.D.N.Y. 2019) (denying a Rule 2004 motion where the movant sought to use its status as a creditor to obtain discovery for use in outside litigation, and warning that allowing it would "set a very troubling precedent"); *In re Enron Corp.,* 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("the availability of Rule 2004 as a discovery tool is not unlimited," and may not be used to abuse or harass). That is precisely what U.S. Bank attempts here: it seeks to use its status as a creditor to obtain, through Rule 2004, the discovery it will need for the contested confirmation it has promised to litigate.

14.     U.S. Bank's reliance on *In re Camferdam*, 597 B.R. 170 (Bankr. N.D. Fla. 2018), underscores the point. Camferdam describes a Rule 2004 examination as "one of the primary purposes" of which "is as a pre-litigation device" (id. at 174, quoted at Response ¶ 31 n.6). This is not a pre-litigation posture. Confirmation is not merely pending; it is scheduled for an evidentiary hearing on a date certain, on a plan to which U.S. Bank has consistently objected.

15.     Application of the pending-proceeding rule is discretionary, and that discretion is exercised by "weigh[ing] the facts and circumstances of each case to discretionarily determine the appropriate discovery mechanisms that will secure a just, speedy, and inexpensive determination of the overall case and proceedings." *In re Wade*, 2014 Bankr. LEXIS 5366, at *11 (Bankr. W.D.

4902-7737-1826 v.7

Tenn. July 31, 2014) (cited at Response ¶ 32); see also *In re M4 Enters.*, 190 B.R. 471, 476 (Bankr. N.D. Ga. 1995) (cited at Response ¶ 32). Here, those factors favor channeling discovery into Part VII: the parties are already engaged in discovery in these Cases, Part VII discovery is mutual and proportional, and a single coordinated process will be more orderly than a unilateral Rule 2004 dragnet pressed on the eve of confirmation.

16.     Even U.S. Bank's lead authority confirms that the pending-proceeding rule should apply here. The indenture trustee relies on *In re M4 Enters.*, 190 B.R. at 475, for the proposition that a court retains discretion to permit a Rule 2004 examination while a contested matter is pending. But even crediting that discretion, it does not permit using Rule 2004 to take discovery into the very matter that is pending in place of the ordinary discovery process. The contested matter here is the central event of these Cases: confirmation of the Plan, set for July 14, 2026, with objections due July 7, 2026. The discovery the indenture trustee seeks is directed squarely at that contested matter, not at some collateral aspect of an unrelated transaction. *M4*'s discretion therefore counsels application of the pending-proceeding rule, not its avoidance.

17.     U.S. Bank's reliance on *In re Washington Mutual, Inc.*, 408 B.R. 45 (Bankr. D. Del. 2009), is similarly misplaced. The court there permitted a Rule 2004 examination precisely because the discovery sought would not yield evidence relating to the bank's pending adversary proceeding. Here the opposite is true: by U.S. Bank's own description, every category of requested discovery is "directly relevant to whether the pending chapter 11 plan should be confirmed." Response ¶ 1. *Washington Mutual* thus supports channeling this discovery into the confirmation process under Part VII of the Federal Rules of Bankruptcy Procedure, not a one-sided Rule 2004 examination.

**B.      The Requests Remain Overbroad.**

6

18.     U.S. Bank, as the party seeking to use Rule 2004, bears the burden of establishing good cause, determined "by a totality of the circumstances approach that accounts for all relevant factors." *In re 3 King Constr. Residential LLC*, 2024 Bankr. LEXIS 1169, at *7 (Bankr. N.D. Ga. 2024) (cited at Response ¶ 25). Whatever good cause might support some targeted inquiry, it does not support the sweeping, largely unbounded discovery the Subpoena demands.

19.     The breadth of the Subpoena is confirmed by the reaction it provoked. Millennium Bank and Main Street Bank have filed motions to quash separate subpoenas issued by U.S. Bank, as has Mr. Dyrkolbotn. [ECF Nos. 574, 606, 614]. Each of these motions raises similar points. U.S. Bank is constantly issuing overbroad and burdensome discovery in these cases which serves mostly to increase costs to all parties. A set of requests that every recipient independently identifies as overbroad is not "particularized and narrowly tailored" (Response ¶ 40).

20.     U.S. Bank's own concessions confirm the overbreadth. In responding to the Motion, the indenture trustee agreed to narrow Requests 7, 15, 59, and 60 (Response ¶ 39), thereby acknowledging that the Subpoena, as served, swept too broadly. Those concessions are partial and do not cure the problem. Request 9, for example, still demands comprehensive personal financial records of a non-party spanning January 2022 to the present, untethered to the amount of the contribution actually at issue (Response ¶ 39). And the third category of Requests, said to bear on "good faith and fair dealing under 11 U.S.C. § 1129(b)" (Response ¶ 27), is not tied to any particularized issue and sweeps in communications and documents wholesale. Good cause does not authorize a fishing expedition into the entirety of a non-party's financial and personal affairs.

21.     Nor does good cause support the second category of Requests, which targets "causes of action … being released under the Plan" (Response ¶ 27). The Second Amended Plan's release of Shively is the ordinary consideration extended to a plan sponsor in exchange for funding

7

a reorganization, not a license for open-ended inquiry into hypothetical claims U.S. Bank has never articulated. Courts in this District routinely approve such protections for non-debtors whose contributions fund a plan. *See In re Transit Group, Inc.*, 286 B.R. 811, 818–19 (Bankr. M.D. Fla. 2002) (approving a release for the plan's principal funder, which had extended more than $16 million in postpetition financing and subordinated a $90 million unsecured claim, as "both fair and necessary to the continuation of the debtor's reorganization process"); *In re Marshall Creek Retail Investors, LLC*, 2015 WL 3485996, at *4–5 (Bankr. M.D. Fla. May 18, 2015) (approving a plan injunction protecting the guarantor-members whose capital contribution was "the centerpiece of the reorganization"); *In re Cent. Fla. Civil, LLC*, 649 B.R. 77, 83–86 (Bankr. M.D. Fla. 2023) (approving a performance-conditioned plan injunction for a Subchapter V debtor's principals based on their funding contribution). Whether the Second Amended Plan's release of Shively is appropriate is a confirmation question governed by these standards; it is not a basis for compelling a non-party to disgorge years of communications and financial records in advance of that hearing. The indenture trustee is not a creditor of Shively, and no party has articulated any claim the estate holds against her. The Court should not permit a fishing expedition into hypothetical estate claims under the pretext of the Plan's release.

22.     The burden of justifying this discovery rests on U.S. Bank, and it "carries particular significance where discovery is sought from a non-party." *Wendy's Netherlands B.V. v. Levy*, 2026 U.S. Dist. LEXIS 116765, at *9 (S.D. Fla. May 27, 2026) (report and recommendation). In *Netherlands*, the court confronted facts close to these: a litigant sought sweeping, multi-year financial discovery from a non-party spouse whose finances the opposing party had placed at issue through a defense. The court held that placing finances at issue did not entitle the requester to "unlimited discovery into all aspects of" the non-party's "personal finances," and that Rule 26

8

does not permit compelling a non-party to disclose "years of private financial records absent a particularized showing" connecting them to the matter in dispute. Id. at *12–13, *17–18. Shively's potential sponsorship of the Second Amended Plan placed her ability to fund the contribution at issue; it did not open her entire multi-year financial life to a non-party dragnet.

C.      **Arval is Inapposite; the Subpoena is Facially Overbroad; and the Burden on Shively as a Non-Party is Established by Evidence.**

23.      A subpoena to a non-party must be quashed or modified where it imposes an undue burden, Fed. R. Civ. P. 45(d)(3)(A)(iv), and the burden of demonstrating undue burden rests on the movant. *See Eastwood Enters., LLC v. Farha*, No. 8:07-cv-1940-T-33EAJ, 2010 WL 11508180, at *4–5 (M.D. Fla. Apr. 26, 2010). That burden cannot be carried by conclusory assertion; the showing must be evidentiary. *See Tire Stickers, LLC v. Scuderia Automobile*, No. 6:19-mc-2-Orl-41LRH, 2020 WL 13597421, at *5 (M.D. Fla. Sept. 18, 2020) ("Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome."); *Century Commc'ns of Fla., Inc. v. Bright House Networks, LLC*, No. 09-81108-CIV, 2010 WL 11597661, at *2 (S.D. Fla. Aug. 2, 2010) (rejecting as "merely conclusory" an undue-burden assertion that the movants failed to support "by affidavit or otherwise").

24.      U.S. Bank's threshold premise—that Shively bears a significant evidentiary burden to quash the Subpoena—rests entirely on *Talentscale, Inc. v. Aery Aviation*, LLC, 802 F. Supp. 3d 1370, 1377 (N.D. Fla. 2025). *Talentscale* does not support that proposition. It arose under Rule 69(a)(2) of the Federal Rules of Civil Procedure, governing post-judgment discovery in aid of execution, and holds that such discovery is construed broadly because the satisfaction of judgments is important to the legal system. The court resolved the dispute on Rule 69(a)(2)'s breadth and the judgment debtor's lack of standing to challenge a subpoena directed to a non-party, not by

9

imposing any heightened evidentiary standard on a motion to quash, and the decision neither concerns Rule 2004 nor articulates the burden U.S. Bank attributes to it. In any event, Shively submits herewith the Declaration of Darin L. Buchalter quantifying the burden the Subpoena imposes, satisfying the affidavit-or-evidentiary-proof standard set by the very authorities U.S. Bank cites. See *Arval; Rose*, *infra*.

25.     U.S. Bank's demand for an evidentiary showing rests on *Arval Serv. Lease S.A. v. Clifton*, 2015 U.S. Dist. LEXIS 183645 (M.D. Fla. June 23, 2015) (quoted at Response ¶ 39). *Arval* is distinguishable in every respect that matters. It did not involve Rule 2004, a document subpoena, or a non-party. The movants there were party-plaintiffs, self-described "multinational companies" with operations "in over twenty-five countries," that had selected the forum by filing suit and then sought a protective order over the place and manner of their own corporate representatives' depositions, insisting on video-conference in lieu of in-person attendance. Id. at *1–2, *7–8. The only hardship asserted was the travel expense of two executives, which the court explained is "an ordinary, normally necessary cost of litigation" for a plaintiff who "has selected the forum." Id. at *6–7 (citation omitted). It was in that context—a facially implausible claim of inconvenience by forum-selecting corporate plaintiffs over deposition logistics—that the court invoked the requirement of "an affidavit or other evidentiary proof of the time or expense involved." *Id*. at *6 (quoting *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc*., No. 08-212-KHV, 2008 WL 2309011, at *5 (D. Kan. June 3, 2008)). Even then, the *Arval* court granted the motion in part. Id. at *8–9.

26.     This dispute is nothing like *Arval*. Shively is an individual non-party who selected no forum. She does not contest the place or manner of a deposition; she contests the propriety and the scope of the discovery itself: a seventy-seven-request Rule 2004 subpoena that U.S. Bank presses on the eve of a contested confirmation hearing, demanding years of comprehensive

10

4902-7737-1826 v.7

personal financial records and "all communications" with sweeping categories of persons. The defects the Motion identifies—including the improper procedural vehicle, the absence of good cause for the breadth sought, and facial overbreadth—are apparent from the face of the Subpoena and present questions of law; they are not claims of compliance expense that require an affidavit to perceive. *Arval*'s evidentiary-proof requirement addresses assertions of undue expense or inconvenience; it does not insulate a facially overbroad subpoena from challenge, and it does not relieve U.S. Bank of its own threshold burden to establish good cause for the examination it seeks. See *In re 3 King Constr. Residential LLC*, 2024 Bankr. LEXIS 1169, at *7 (Bankr. N.D. Ga. 2024) (cited at Response ¶ 25).

27.     The burden is heightened because Shively is a non-party. While Rule 2004 reaches "any entity," see *In re Marathe*, 459 B.R. 850, 858–59 (Bankr. M.D. Fla. 2011) (cited at Response ¶ 40), a Rule 2004 subpoena to a non-party is enforced through Federal Rule of Bankruptcy Procedure 9016, which incorporates Federal Rule of Civil Procedure 45. Rule 45 independently protects a non-party against undue burden and authorizes the Court to shift the cost of compliance. *Marathe* confirms that a non-party may be examined; it does not strip the non-party of Rule 45's protections.

28.     The authorities on which U.S. Bank relies confirm that Rule 2004 examinations of non-parties are cabined, not unlimited. In *In re Roman Catholic Church of the Diocese of Gallup*, 513 B.R. 761, 765 (Bankr. D.N.M. 2014)—U.S. Bank's own lead authority for the relevance of a non-party's financial condition—the court permitted the examination only as limited to the diocese's publicly posted financial information and its insurance coverage; it did not authorize a comprehensive financial inquiry. Likewise, *Marathe*, 459 B.R. 850, 858–59 (Bankr. M.D. Fla. 2011), involved a non-debtor who co-owned the very real property at issue in the estate—a direct

11

and concrete nexus absent here, where U.S. Bank seeks more than four years of comprehensive personal financial records from a non-party whose connection to the estate is a fixed, defined plan contribution. These cases model the narrow tailoring Shively requests; they do not support the Subpoena's breadth.

29.    U.S. Bank's characterization of its Requests as "particularized and narrowly tailored" (Response ¶ 40) cannot be squared with the controlling authority. In *Wendy's Netherlands B.V. v. Levy*, the court declined to dismiss a non-party's objections as "boilerplate" because they were specific, directed to each request, and explained the basis for each, including the objecting party's non-party status. 2026 U.S. Dist. LEXIS 116765, at *10–11 (S.D. Fla. May 27, 2026). It reaffirmed that "the status of a person as a non-party is a factor that weighs against disclosure," id. at *9 (quoting *Fadalla v. Life Auto. Prods., Inc*., 258 F.R.D. 501, 504 (M.D. Fla. 2007)). Shively's objections, like the non-party's in *Netherlands*, are specific and request-by-request, and her non-party status weighs against the wholesale disclosure the Subpoena demands.

30.    In any event, any evidentiary gap is now cured. The accompanying Declaration of Darin L. Buchalter[2]  sets out, with specificity, the volume of materials implicated, the breadth of the "all communications" Requests, the multi-year sweep of personal financial records, and the hours, personnel, and expense of collection and review that compliance would impose on a non-party. (Declaration ¶¶ 4–9.) That is precisely the "specific information demonstrating how the request is overly burdensome" that *Tire Stickers* requires, and the particularized, evidentiary showing whose absence was fatal to the movants in *Century Communications* and *Eastwood*. U.S. Bank cannot dismiss that record as conclusory.

31.    Measured against the factors U.S. Bank itself invokes, *see Rose v. T-Mobile USA,*

---

[2] Because the Court has issued a notice of non-evidentiary hearing, Ms. Shively offers the declaration as an example of the evidence she would adduce at any scheduled evidentiary hearing.

4902-7737-1826 v.7

*Inc.*, 2024 U.S. Dist. LEXIS 110373, at *11–12 (M.D. Fla. June 24, 2024) (cited at Response ¶ 38), and the proportionality limits of Federal Rule of Civil Procedure 26(b)(1) (applicable through Rules 9014 and 7026), several Requests remain disproportionate even as narrowed. The *Netherlands* court, confronting a comparable multi-year financial sweep, narrowed the subpoena's temporal scope to a defined period tied to the matter in dispute. 2026 U.S. Dist. LEXIS 116765, at *18. The same limitation is warranted here: Request 9's demand for personal financial records from January 2022 to the present should, at most, be narrowed to the period reasonably related to the contribution. *See also In re Marks*, 2022 Bankr. LEXIS 3590 (Bankr. S.D. Ohio Dec. 13, 2022) (declining to compel a Rule 2004 examination of a non-debtor where the information sought was cumulative of discovery already obtained).

### D. Shively Has Produced Financial Information Thereby Mooting the Response's Burden and Urgency Arguments.

32. The Response's account of the data-room dispute (Response ¶ 23) is incomplete in a material respect. Following entry of the Confidentiality Protective Order, Shively granted the U.S. Bank full access to review the documents in the data room, and U.S. Bank has had that access since May 10, 2026 (Declaration ¶ 11). The Response, filed June 3, 2026, does not disclose this.

33. In fact, Shively has produced to U.S. Bank voluminous documents supporting her ability to fund the payments required under the Second Amended Plan. These documents include: (i) documents describing her personal and real property assets; (ii) documents related to her bank and investment accounts, including recent statements for all accounts; (iii) documents related to her interest in Tower Hill Insurance and related entities; (iv) documents setting forth her ownership in various entities, including the Debtors and related entities; (v) documents related to legal obligations; and (vi) various other relevant documents.   U.S. Bank describes this as a "limited set of documents" yet it is in fact a broad release of financial information consisting of over 2000

13

pages of documents.

34.    With access granted and confidentiality addressed by the Protective Order, U.S. Bank's claim that it will be prejudiced absent immediate Rule 2004 relief fails. Shively produced documents concerning her financial condition on May 21, 2026 (Response ¶ 24), and stands ready to produce additional responsive, non-privileged documents on a reasonable schedule in advance of the Confirmation Hearing. The materials to which Shively has provided access, and which she stands ready to supplement, concern her financial condition and ability to fund the Plan—the matters genuinely at issue. The undue burden quantified in the Declaration arises not from that targeted production, but from the Subpoena's remaining Requests, which demand "all communications" with sweeping categories of persons untethered to any confirmation issue. U.S. Bank's confidentiality objections are moot in light of the Protective Order to which it is a signatory; the only remaining confidentiality issue is the appropriate tier of protection for Shively's sensitive personal financial information.

> **E**.    **In the Alternative, Any Examination Must Be Limited in Scope and Manner and Must Protect Privilege.**

35.    If the Court permits any examination under Rule 2004, it should be subject to protections the Subpoena presently lacks. First, the Court should require a privilege-log protocol and should exclude from production materials protected by the attorney-client privilege and the work-product doctrine, including communications subject to a common-interest privilege shared with the Debtors as co-proponents of the Plan, materials relating to Shively's litigation in *Shively v. Koss Olinger & Co., LLC*, and any mediation- or settlement-privileged communications. The Requests directed at causes of action "being released under the Plan" (Response ¶ 27), including the modified Requests 59 and 60 concerning Mr. Dyrkolbotn, directly implicate these protections. Courts in this Circuit routinely require even a non-party to produce a privilege log once a privilege

14

claim is disputed. *See Wendy's Netherlands B.V. v. Levy*, 2026 U.S. Dist. LEXIS 116765, at \*23 & n.4 (S.D. Fla. May 27, 2026) (requiring a non-party to produce a privilege log under Fed. R. Civ. P. 45(e)(2)).

36. Second, the Court should designate Shively's personal financial information as "Attorneys' Eyes Only" under the Protective Order.

37. Third, any deposition should be limited to a single, coordinated session, with all examining parties participating at one time and subject to a reasonable time limit not to exceed seven (7) hours. U.S. Bank itself emphasizes the efficiency of a single coordinated examination and notes the Synartis Creditors' cross-notice (Response ¶ 35). That efficiency is best achieved by one coordinated deposition, not by serial or open-ended examinations of a non-party.

**CONCLUSION**

Shively respectfully requests that the Court (a) grant the Motion and quash the Subpoena; or (b) in the alternative, enter a protective order that (i) defers any examination to confirmation discovery conducted under Part VII of the Federal Rules of Bankruptcy Procedure on a coordinated schedule; (ii) narrows the Requests consistent with this Reply; (iii) limits the temporal scope of the financial Requests to the period reasonably related to the contribution at issue; (iv) requires a privilege-log protocol and excludes privileged materials; (v) designates Shively's personal financial information as Attorneys' Eyes Only; (vi) limits any examination to a single coordinated deposition not to exceed seven (7) hours; and (vii) grants such other and further relief as the Court deems just and proper.

15

Respectfully submitted this 9th day of June, 2026.

NELSON MULLINS RILEY & SCARBOROUGH, LLP

Shane G. Ramsey
Florida Bar No. 26842
NELSON MULLINS RILEY & SCARBOROUGH, LLP
1222 Demonbreun Street, Suite 1700
Nashville, Tennessee 37203
Telephone: (615) 664-5355
Facsimile: (615) 664-5399
Email: shane.ramsey@nelsonmullins.com

*and*

/s/ Dylan G. Trache
Dylan G. Trache (admitted *pro hac vice*)
Virginia Bar No. 45939
901 15th Street NW, Suite 1200
Washington, DC 20005
Telephone:  (202) 689-2993
Facsimile:  (202) 689-2860
Email: dylan.trache@nelsonmullins.com

*Counsel for Patricia Shively*

16

4902-7737-1826 v.7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of *Patricia Shively's Reply in Support of Motion to Quash Rule 2004 Subpoena and for a Protective Order* and *Declaration in Support of Motion to Quash Rule 2004 Subpoena and for a Protective Order* were served as set forth below:

☒ **Served via Notice of Electronic Filing (NEF):**  The undersigned verifies that the foregoing document was served via NEF on **June 9, 2026** to the below-listed person(s) and entities:

John Christopher Allerding on behalf of Creditor Cupkovic Architecture, LLC
john.allerding@thompsonhine.com, ecfdocket@thompsonhine.com

Noel R. Boeke on behalf of Creditor Frankel Media Group LLC
noel.boeke@hklaw.com, danielle.decker@hklaw.com;hapi@hklaw.com

John Blair Boyd on behalf of Creditor Florida Credit Union
bk@svllaw.com, blairb@svllaw.com

Scott Wallace Cichon on behalf of Creditor Celebration Pointe Community Development District #1   Scott.Cichon@CobbCole.com, Bonnie.Rubino@CobbCole.com

Christopher Roy Clark on behalf of Creditor CP PH2 Holdings, LLC
crclark@stearnsweaver.com, aruddock@stearnsweaver.com

John D. Elrod on behalf of Creditor U.S. Bank, N.A., as Indenture Trustee
elrodj@gtlaw.com, fieldss@gtlaw.com;john-elrod-0217@ecf.pacerpro.com

Lara Roeske Fernandez on behalf of Interested Party Kenneth R. McGurn and Linda C. McGurn
lfernandez@trenam.com, mwoods@trenam.com; mmosbach@trenam.com; mspivak@trenam.com; lfernandez@ecf.courtdrive.com; mwoods@ecf.courtdrive.com; mmosbach@ecf.courtdrive.com

Daniel Raymond Fogarty on behalf of Creditor Catalyst Income Fund 2022-A1, LLC
dfogarty.ecf@srbp.com

Michael C Foster on behalf of Interested Party Ad Hoc Member Committee of GNV RE CP FUND, LLC   michael@youngfoster.com

Matthew Blake Hale on behalf of Creditor Catalyst Income Fund 2022-A1, LLC
mhale.ecf@srbp.com

Kenneth D. Herron, Jr on behalf of Interested Party Svein Dyrkolbotn   chip@herronhilllaw.com

Suzanne Hill on behalf of Creditor Florida Department of Transportation
shill@rumberger.com, shillsecy@rumberger.com;docketingorlando@rumberger.com

Zachary P Hyman on behalf of Creditor ICEBERG CAPITAL PARTNERS, III, LLC

17

4902-7737-1826 v.7

zach@millenniallaw.com, veronica@millenniallaw.com, jessica@millenniallaw.com, zach@ecf.courtdrive.com, veronicaleon@ecf.courtdrive.com
Jason Zachary Jones on behalf of Interested Party Ad Hoc Member Committee of GNV RE CP FUND, LLC jjones@joneslawpa.com

James Hayden Kepner, Jr on behalf of Creditor Jon Guven  hkepner@swlawfirm.com

Inez M Markovich on behalf of Creditor PFM Financial Advisors LLC
imarkovich@mccarter.com

Paul Nicholas Mascia on behalf of Creditor Arcis Real Estate Secured Fund II, L.P.
pmascia@nardellalaw.com, klynch@nardellalaw.com; msayne@nardellalaw.com; ibennett@nardellalaw.com

Conor McLaughlin on behalf of U.S. Trustee United States Trustee
conor.mclaughlin@usdoj.gov

Ryan J. Mittauer on behalf of Creditor DLP Bank, fka Community State Bank
rmittauer@thelilesfirm.com, aperry@thelilesfirm.com

Jose Moreno on behalf of Creditor EDA Consultants Inc
jimoreno@bellsouth.net, ruizcalderondr64903@notify.bestcase.com

Michael Anthony Nardella on behalf of Creditor Arcis Real Estate Secured Fund II, L.P.
mnardella@nardellalaw.com, klynch@nardellalaw.com;msayne@nardellalaw.com

David E. Peterson on behalf of Creditor MAINSTREET BANK
david.peterson@lowndes-law.com

Justin Plean on behalf of Creditor Barwick Banking Company
qpwbbkpacer@qpwblaw.com

Charles A. Postler on behalf of Creditor Catalyst Income Fund 2022-A1, LLC
cpostler.ecf@srbp.com, cpostler@srbp.com

Leanne McKnight Prendergast on behalf of Creditor Gainesville PropCo, LLC
leanne.prendergast@pierferd.com, tcopeland@smithhulsey.com

Michael Stephen Provenzale on behalf of Creditor MAINSTREET BANK
michael.provenzale@lowndes-law.com, anne.fisher@lowndes-law.com; litcontrol@lowndes-law.com

Nicholas V. Pulignano, Jr on behalf of Interested Party Alachua County Tax Collector
nvp@marksgray.com

Lauren Marie Reynolds on behalf of Creditor James B. Euliano, Trustee, and Neil R. Euliano,

18

4902-7737-1826 v.7

Trustee lreynolds@whww.com, scolgan@whww.com; mbretana@whww.com; mbretana@ecf.courtdrive.com

Bradley M. Saxton on behalf of Creditor James B. Euliano, Trustee, and Neil R. Euliano, Trustee bsaxton@whww.com, scolgan@whww.com; mbretana@whww.com; mbretana@ecf.courtdrive.com

Robert Scott Shuker on behalf of Debtor Celebration Pointe Holdings II, LLC rshuker@shukerdorris.com, mfranklin@shukerdorris.com; bkry@shukerdorris.com; atillman@shukerdorris.com; lstricker@shukerdorris.com

Steven Jon Solomon on behalf of Interested Party Birge & Held Asset Management, LLC steven.solomon@gray-robinson.com, Ana.Marmanillo@gray-robinson.com; Jodi.Payne@gray-robinson.com

Sharon T. Sperling on behalf of Creditor Jon Guven  sharon@sharonsperling.com, share.sharonsperling@gmail.com; info@sharonsperling.com;6702@notices.nextchapterbk.com

Mark E Steiner on behalf of Interested Party TRUIST BANK MES@lgplaw.com, pm@lgplaw.com

Lauren Stricker on behalf of Debtor Celebration Pointe Holdings II, LLC lstricker@shukerdorris.com, rshuker@shukerdorris.com; mfranklin@shukerdorris.com; lstricker@shukerdorris.com; mdorris@shukerdorris.com; atillman@shukerdorris.com; wtownsend@shukerdorris.com

Jesse Ellsworth Summers, Jr on behalf of Creditor Vystar Credit Union esummers@burr.com, sguest@burr.com

James Timko on behalf of Creditor ARCISCAP CELEBRATION POINTE INVESTMENT (B.V.I.) LIMITED jtimko@deanmead.com, mgodek@deanmead.com

United States Trustee USTPRegion21.TL.ECF@usdoj.gov

Jeffrey Wayne Warren on behalf of Interested Party Millennium Bank jwarren@bushross.com, bankruptcy.eservice@bushross.com; jwarren@ecf.courtdrive.com

Richard Scott Williams on behalf of Creditor Florida Department of Transportation swilliams@rumberger.com

J. Robert Williamson on behalf of Creditor Jon Guven rwilliamson@swlawfirm.com

David C Willis on behalf of Creditor Florida Department of Transportation dwillis@rumberger.com, dwillissecy@rumberger.com; docketingorlando@rumberger.com

19

4902-7737-1826 v.7

Lisa Wolgast on behalf of Creditor PHG Gainesville CP, LLC
lisa.wolgast@btlaw.com, talia.wagner@btlaw.com; LOFarrell@btlaw.com;
marisa.howell@btlaw.com; marisa.howell@btlaw.com; marisa.howell@btlaw.com

☐　**Served by U.S. Mail:**  On **　(date)　**, the undersigned served the person(s) and/or entities listed below via first class mail, postage prepaid, at the addresses listed below or on the attached mailing matrix obtained from the Court's case management system:

　☐ Names and addresses of Parties served:

　OR

　☐ See attached mailing matrix.

☐　**Served by Personal Delivery, Overnight Mail, Facsimile Transmission or Email:**  On **　(date)　**, the undersigned served each person or entity listed below via the means noted for each:

**Name**　　　　　　　　　　　　　　　　**Manner of Service**

　　　I declare under penalty of perjury that the foregoing is true and correct.

June 9, 2026　　　　　　　　　NELSON MULLINS RILEY & SCARBOROUGH, LLP

　　　　　　　　　　　　　　　Shane G. Ramsey
　　　　　　　　　　　　　　　Florida Bar No. 26842
　　　　　　　　　　　　　　　NELSON MULLINS RILEY & SCARBOROUGH, LLP
　　　　　　　　　　　　　　　1222 Demonbreun Street, Suite 1700
　　　　　　　　　　　　　　　Nashville, Tennessee 37203
　　　　　　　　　　　　　　　Telephone: (615) 664-5355
　　　　　　　　　　　　　　　Facsimile: (615) 664-5399
　　　　　　　　　　　　　　　Email: shane.ramsey@nelsonmullins.com

　　　　　　　　　　　　　　　*and*

　　　　　　　　　　　　　　　/s/ Dylan G. Trache
　　　　　　　　　　　　　　　Dylan G. Trache (admitted *pro hac vice*)
　　　　　　　　　　　　　　　Virginia Bar No. 45939
　　　　　　　　　　　　　　　901 15th Street NW, Suite 1200
　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　Telephone:  (202) 689-2993
　　　　　　　　　　　　　　　Facsimile:  (202) 689-2860
　　　　　　　　　　　　　　　Email: dylan.trache@nelsonmullins.com

　　　　　　　　　　　　　　　*Counsel for Patricia Shively*

4902-7737-1826 v.7